F5cWburC

| 1 | UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK |
|---|---|
| 2 | ------------------------------x |
| 3 | UNITED STATES OF AMERICA, |
| 4 | v.                              15 Cr. 73 (RMB) |
| 5 | |
| 6 | EVGENY BURYAKOV, |
| | Defendant. |
| 7 | |
| | ------------------------------x |
| 8 | |
| | New York, N.Y. |
| 9 | May 12, 2015 |
| | 12:00 p.m. |
| 10 | |
| 11 | Before: |
| 12 | HON. RICHARD M. BERMAN, |
| 13 | District Judge |
| 14 | |
| | APPEARANCES |
| 15 | |
| | PREET BHARARA |
| 16 | United States Attorney for the
Southern District of New York |
| 17 | ADAM FEE
ANNA M. SKOTKO |
| 18 | P. IAN McGINLEY
Assistant United States Attorneys |
| 19 | |
| | WHITE & CASE LLP |
| 20 | Attorneys for Defendant
SCOTT E. HERSHMAN |
| 21 | |
| 22 | ALSO PRESENT:  Yana Agoureev, Interpreter (Russian) |
| 23 | |
| 24 | |
| 25 | |

F5cWburC

1          THE COURT:  We have an interpreter present, as we have

2     had in the past.  It's my understanding that she's here as

3     standby because Mr. Buryakov is able to understand English.  Is

4     that right?

5          THE DEFENDANT:  Yes.  Yes, sir.

6          THE COURT:  O.K.  First off, we need to, at least in

7     my mind, clear up a little confusion.  In reviewing the docket,

8     Mr. Hershman, I find your notice of appearance and also a

9     notice of appearance for Kimberly Haviv of your firm, but we

10    had Mr. Naftalis in this case, and I don't recall seeing any

11    substitution of counsel.

12         MR. HERSHMAN:  Yes.  We have that for you, your Honor.

13         THE COURT:  That would be helpful.  I'll take a look

14    at that.  If you could just for the record tell us,

15    Mr. Hershman, who is in and who is out and as of what date.

16         MR. HERSHMAN:  Sure, your Honor.  White & Case is in.

17    Latham & Watkins is out.

18         THE COURT:  As of?

19         MR. HERSHMAN:  As of April 30, I believe, 29th or

20    30th.

21         THE COURT:  And this has been filed, the document you

22    just handed to me?

23         MR. HERSHMAN:  No.  It will be.  It was just signed.

24         THE COURT:  I see.  You want it to be so ordered.

25         Any objection from the government?

1     MR. FEE:  No objection, your Honor.  Latham & Watkins

2  has represented to us that they are no longer in the case.

3     THE COURT:  The record can reflect that I'm signing

4  the substitution of counsel, and we're happy to file it for you

5  on the docket if that's O.K. with you.

6     MR. HERSHMAN:  Thanks, your Honor.

7     THE COURT:  Now to the business at hand, we have an

8  exchange of correspondence between the government and White &

9  Case, Mr. Hershman, and the government has raised the issue of

10 whether or not we need a Curcio hearing.

11    I'll ask you in a minute, Mr. Fee, to speak for

12 yourself instead of me summarizing it, but my understanding is

13 that you believe that such a hearing is necessary, and indeed

14 you've suggested questions that need to be asked, because it's

15 your opinion or belief, or whatever it is, that Mr. Buryakov's

16 legal fees are being paid by a third party and which may

17 present a conflict of interest, potential or actual, I suppose,

18 depending what the facts show.  Is that a fair statement of

19 your position?

20    MR. FEE:  It is, your Honor, and just to put a finer

21 point on it, Mr. Hershman has confirmed both in a conversation

22 over the phone and in his submission that there is someone

23 other than the defendant paying the legal fees here, and we

24 cited the authorities in our submission, your Honor.  It is the

25 government's view that it is required to at least --

1          THE COURT:  Make an inquiry.

2          MR. FEE:  Correct, your Honor, and then perhaps go

3    further.

4          THE COURT:  Mr. Fee's referred to the letter from

5    White & Case.  In fact, in that letter, which is dated May 10,

6    the government's original letter was May 7, Mr. Hershman says

7    that there is no conflict, "no conflict is created simply

8    because the third party is paying Mr. Buryakov's legal fees.

9    In particular, we can confirm," meaning, I guess, White & Case,

10   "that the third party here is not involved in this case and is

11   not related to any codefendant.  So that is confirmation that

12   there is a third-party payor of legal fees and I think I do

13   need to inquire further.

14         Mr. Hershman, do you want to be heard?

15         MR. HERSHMAN:  Your Honor, we're in receipt of your

16   Honor's memo endorsement.  As I understand it, our position is

17   your Honor can take note of who the third party is *in camera*

18   and we're happy to share the engagement letter with you, which

19   I've brought, which Mr. Buryakov has signed previously,

20   retaining White & Case and it does reference who is paying the

21   fees and that third party, in fact, and clearly, as Mr. Fee

22   mentioned, we were totally up front with the fact that the

23   third party is paying the fees.

24         THE COURT:  Right.  And I think as I responded to you,

25   I like to keep as much of the proceeding public as possible,

F5cWburC

including who the payor is, so I would ask you at this time who

that is and then because it may implicate the attorney-client

relationship or privilege, I would look at the retainer

agreement, but that I would do *in camera*, if that's O.K. with

you.

MR. HERSHMAN:  O.K., sure, your Honor.  So the party

responsible for the fees is VEB, the bank, Vnesheconombank,

otherwise known as VEB.  I think it's easier to refer to it as

VEB.

THE COURT:  When you say the bank, is that

Mr. Buryakov's employer?

MR. HERSHMAN:  Yes, your Honor.

THE COURT:  Is that a private or publicly owned

entity?

MR. HERSHMAN:  It is a bank that is owned by the

state, by Russia.

THE COURT:  In a another case that I have had where a

third party, particularly in that case a government, was paying

for the legal representation, I did and I imagine I will here,

too, go forward with a Curcio hearing.  But I would like a

chance first to review that.  Is it a lengthy document?

MR. HERSHMAN:  No, your Honor.  It's two pages.

THE COURT:  Hand a copy of that up and I'll take a

couple of minutes to take a look and see what that suggests.

Just give me a couple of minutes.  I'll be back out.

1      (Pause)

2      THE COURT:  A couple of things, which I think I'll

3  hear from Mr. Hershman about.  First of all, just as a general

4  matter, reading this letter, it doesn't strike me that there's

5  anything here that's of a privileged nature, and I don't really

6  understand why we couldn't put this on the docket, but I'm

7  happy to hear from you, Mr. Hershman, on that matter.  That's

8  No. 1.  And No. 2 is that this letter agreement references a

9  separate agreement between White & Case and the bank, and I

10  would need to see that, too, in order to understand fully, I

11  think, and perform the inquiry that I'm obliged to perform,

12  largely on Mr. Buryakov's behalf.  Any problem with either of

13  those two issues?

14      MR. HERSHMAN:  Your Honor, I have no problem obtaining

15  the letter that VEB signed with the firm.  It needs to be

16  translated, I think, for the Court because it's entirely in

17  Russian.

18      THE COURT:  No doubt about that.

19      MR. HERSHMAN:  We're happy to do that and provide that

20  to you right away.

21      THE COURT:  O.K.

22      MR. HERSHMAN:  With respect to putting the retainer

23  agreement in the file, it is fairly straightforward and I agree

24  with you that it's totally straightforward and done that way,

25  obviously, so that it's clear and concise, and if your Honor's

F5cWburC

1  view is it doesn't contain any privileged information, it

2  certainly doesn't speak to any of the facts related to the

3  case.

4       THE COURT:  Right.  It's really your call, or

5  Mr. Buryakov's.

6       MR. HERSHMAN:  I'd like to talk with him about it.

7  Originally, we were of the view that who is paying the fees is

8  not something we would want made public, but since it's now

9  public, that's really the only provision in the letter.

10      THE COURT:  That's pretty common, in my experience,

11 that we do publicize that.  I don't think I'm going to go

12 forward, but there is one question and maybe you want to answer

13 it on our next conference as opposed to today.  There are some

14 issues that are raised in the letter and I don't mind quoting

15 it since we all now agree that this is going to be public

16 anyway.  Maybe you could tell me what this means.  It's been a

17 while since I've been at a large firm and did a retainer

18 agreement.  There's one issue here.  You provide that "as a

19 condition of the firm undertaking this matter" -- that is to

20 say, White & Case -- "it should be understood that the firm may

21 continue to represent or undertake to represent existing or new

22 clients even if those clients' interests are directly adverse

23 to yours in matters substantially unrelated to this engagement,

24 regardless of their magnitude and importance."

25           Certainly, of course, I understand what you're driving

1  at, but this is sort of a modern concept, I guess, to how one

2  deals with conflicts. I don't really get what that means here.

3  It's pretty broad and sweeping. It says that your firm can

4  take clients in matters that are directly adverse to those of

5  Mr. Buryakov, regardless of their magnitude and importance.

6  That's a pretty sweeping statement. What does that mean in

7  this context?

8          MR. HERSHMAN: Provided substantially unrelated to

9  this engagement.

10          THE COURT: O.K., sure. But one could posit, for

11  example, I'm not saying it's happening here, that a firm gets a

12  huge retainer arrangement with a client whose interests are

13  adverse to Mr. Buryakov and the question one might pose then

14  is, does that directly or indirectly impact on one's

15  representation of Mr. Buryakov, even though they're unrelated

16  matters. The amount of money could be so great, some huge

17  deal, for example, that it's possible that it could influence

18  an attorney who is a partner in that firm, subtly or unsubtly.

19  Is that what it means?

20          MR. HERSHMAN: Essentially, it's standard language,

21  your Honor.

22          THE COURT: I think it's become fairly standard, but

23  still, when you read it, it's pretty sweeping, is what I'm

24  trying to say. I will make sure Mr. Buryakov understands it at

25  the appropriate time, which I don't think is going to be today,

1    because I do want to see that second agreement, but just tell

2    us what that means and how that's explained to the client who

3    may have a lawyer whose firm represents someone whose interests

4    are directly adverse to his.

5                MR. HERSHMAN:  In the first instance, I don't think,

6    it's not intended to suggest that something else would

7    influence our defense of Mr. Buryakov and our allegiance to him

8    and his defense.  That's No. 1 and most important.

9                THE COURT:  No. 2, is there any such representation

10   now?

11               MR. HERSHMAN:  Not to my knowledge.

12               THE COURT:  All right.

13               MR. HERSHMAN:  And as I mentioned, your Honor, this is

14   a big law firm with offices around the world.

15               THE COURT:  I'm very familiar with the firm.

16               MR. HERSHMAN:  As a standard paragraph in firms of

17   this size, in engagement letters, and I think you'd find it in

18   most large firms, there is a clear representation to the client

19   that there may be matters where the firm or someone in the firm

20   is representing an entity or person who may be directly adverse

21   to you but not in connection with this engagement, and we put

22   the client on notice and discuss with them whether that's O.K.

23   so that there's no future issue for either Mr. Buryakov, in

24   this case, or the other client, and in order to assure the

25   Court that there's continued representation without a conflict

F5cWburC

1    problem getting in the way.  And so I think that's really the

2    intent and purpose of the clause.

3         THE COURT:  Then there's a provision in here that says

4    that when the tasks, essentially, I'm summarizing the next

5    paragraph, when the tasks for which you're retained are

6    essentially completed, then the attorney-client relationship is

7    over, unless you get re-retained, if I understand it correctly.

8    Is that right?

9         MR. HERSHMAN:  Yes.

10        THE COURT:  And do you and Mr. Buryakov understand how

11   many tasks you are retained to do?  Because that would also be

12   problematic if the tasks ended just short of some critical

13   process in the case and all of a sudden he would be without

14   your services.

15        MR. HERSHMAN:  Yes.

16        THE COURT:  What is that designed to do?

17        MR. HERSHMAN:  Our intention is to represent

18   Mr. Buryakov and to see through to its completion this matter.

19        THE COURT:  In the district court.

20        MR. HERSHMAN:  In the district court and then by

21   agreement, if necessary, any further proceeding.

22        THE COURT:  All right.  For today, I think we've

23   accomplished what we need to.

24        Mr. Fee, did you want to say anything?

25        MR. FEE:  Just one point, your Honor.  It's clear that

1    there's more of a record that the Court wants to have developed

2    here, if I could suggest one additional point of inquiry that's

3    part of what the Court is doing with respect to the retainer

4    agreements.  It does seem appropriate at some point for

5    Mr. Hershman to have to respond to a question about apart from

6    written agreements, what, if any, instructions or directions

7    has he, as counsel, received from this third-party payor with

8    respect to this representation, just to fully develop the

9    record, given that, with respect to the allegations in this

10   case, Mr. Buryakov is accused of essentially using his

11   employment with VEB as a cover.  There are certainly, as you

12   could imagine, hypotheticals where their interests -- namely,

13   VEB and Mr. Buryakov -- would diverge, so we would ask that the

14   Court, if it deems it appropriate, put that question to

15   Mr. Hershman.

16          THE COURT:  The prior case that I'm talking about

17   where this kind of situation came up was U.S. v. Aafia

18   Siddiqui, and you will recall in that case the government of

19   Pakistan retained lawyers to represent Dr. Siddiqui.  So in

20   addition to the Curcio questions, in that case, the lawyers

21   submitted letters, to further your thought, which assured the

22   Court that there was nothing else, so to speak, and that his or

23   her -- now there's a her too, by the way.  There's Kimberly

24   Haviv.

25          MR. HERSHMAN:  That's an associate in my office and

F5cWburC

1    that may change too, your Honor.  We'll have additional

2    associates and kind of a team.

3              THE COURT:  O.K.  There is some relevance because

4    there are some matters that are confidential, etc., and some

5    that would require clearance, actually, for even the attorneys

6    to see.  Christine could make available to you the letters we

7    got from a whole series of counsel assuring the client but also

8    assuring the Court in the first instance that no matter what

9    the payor said or urged or proposed, your loyalties, White &

10   Case's loyalties, would be solely to Mr. Buryakov, and that's

11   really the short-form version.  I think you could think of

12   probably a better way and maybe you could meet and confer with

13   Mr. Fee and see what he's suggesting as well and see if you're

14   comfortable with that.  But I would like to have that even

15   before I ask Mr. Buryakov questions to make sure that you as

16   counsel have his interests, I'm sure you do, but I want to make

17   sure in writing that you absolutely do have Mr. Buryakov's

18   interests solely at heart and in hand and that you would not be

19   influenced by the payor and I think it's fair to say these

20   other retentions that your firm might undertake would not sway

21   you in any way not to give your fullest attention and best

22   representation to Mr. Buryakov.

23              The question would be how long it would take to get an

24   English language copy of the agreement.  By the way, do you

25   speak Russian?

1          MR. HERSHMAN:  No, your Honor.  I'm learning.

2          THE COURT:  But you must have a copy of that

3    agreement?

4          MR. HERSHMAN:  It will take us very little time.

5          THE COURT:  Let me take a look at that and let me give

6    you a date.  I could see you Monday, the 18th, at 11, if that

7    works.  Or if that's not convenient, I'm happy to come up with

8    another date.  Does that work for both sides?

9          MR. FEE:  It certainly works for the government, your

10   Honor.

11         MR. HERSHMAN:  We'll make that work, your Honor.

12         THE COURT:  And in the interim, if you meet and confer

13   or after you do, if you could, and if you want to look at

14   what's happened in the past, obviously the situations are not

15   identical, but the lawyers in that case went out of their way

16   to assure me and, in that case, Dr. Siddiqui that they were

17   devoted entirely to her best interests in representing her,

18   irrespective of who was paying the legal fees.

19         MR. HERSHMAN:  I would like to look at that, your

20   Honor.

21         THE COURT:  I think we have some sample language.  If

22   you could get me that other agreement today or tomorrow, that

23   would be helpful and, if you could, work on such a letter,

24   let's say, by Friday, if that works for you.

25         MR. HERSHMAN:  Yes.

F5cWburC

1          THE COURT:  And then we'll resume on Monday, May 18,

2     at 11 a.m.  Anything else?

3          MR. HERSHMAN:  I have some other things, Judge.

4          THE COURT:  Sure.

5          MR. HERSHMAN:  Sorry.

6          THE COURT:  No.  No problem.

7          MR. HERSHMAN:  While we're here, if your Honor doesn't

8     mind.

9          THE COURT:  Yes.

10          MR. HERSHMAN:  Some of these are housekeeping and some

11     of these I've been in contact with the government on, and

12     they've been very responsive and helpful, so we appreciate it,

13     but nonetheless there still remain issues for us, and one of

14     them in particular may be important for the Court to maybe step

15     in or at least give us some advice.  The first and most

16     important is Mr. Buryakov, obviously, is participating in his

17     defense and has been reviewing material that's been made

18     available to him at the MCC.  That, however, has posed a

19     logistical problem of sorts for a number of reasons.  First,

20     the amount of material is vast, and more than the usual, I

21     would say, in terms of its quantity, and as a result the

22     limited time that is given to Mr. Buryakov to review that

23     material is insufficient for that purpose, and we've requested,

24     through the appropriate channels, to expand or extend the

25     amount of time that he has access to computers to review that

F5cWburC

material, but to no avail.  I know that there are some inmates
at the MCC who are issued iPads with the materials so that they
can review them essentially all day, but in speaking with the
government, they prefer that that material not be introduced
into the MCC.  So that restricts by necessity Mr. Buryakov's
access.

THE COURT:  I see.

MR. HERSHMAN:  We've requested that he be given
additional time.  He hasn't been.  It's been impeding his
ability to review the material.  That's No. 1.

THE COURT:  Did you, in that connection, speak with
Adam Johnson, who is the counsel over there?

MR. HERSHMAN:  I think the government may have done
that, your Honor, and this even predates the switch from
Latham, but it's a continuing issue.

THE COURT:  Mr. Fee, you will talk to him again.

MR. FEE:  Yes, your Honor.  And to give a slightly
more fulsome update, we have been in contact with counsel at
the MCC where Mr. Buryakov is being held.  They have forwarded
the requests, which we conveyed to Mr. Buryakov, to have
expanded access to the law library.  There's also one other
suggestion that Mr. Johnson recently made to me which might
address this issue to some extent.

THE COURT:  Mr. Johnson from the MCC?

MR. FEE:  Correct.  Adam Johnson.

F5cWburC

          1      Essentially, large-volume material, hard drives, can

          2   only be reviewed in the law library.  This might be a bit in

          3   the weeds.  There are time limits on how much time an inmate

          4   spends at the law library.

          5      THE COURT:  Right.  I get that.

          6      MR. FEE:  We have been told recently if we give some

          7   of these materials on compact disks, those go to his floor,

          8   Mr. Buryakov's floor, and he has unlimited time.  We are in the

          9   process of putting as much as we can onto disks.  It's likely

          10   to be everything but large-scale surveillance videos or large

          11   audio cuts, so we will do that.  My understanding from the MCC

          12   is that Mr. Buryakov will have unlimited access to that.

          13      THE COURT:  That would meet most of the problem, so to

          14   speak.

          15      MR. FEE:  There would be some that could not be put on

          16   disk but hopefully would go a long way.

          17      THE COURT:  That's very helpful.

          18      Did you have anything else?

          19      MR. FEE:  No, nothing further on that point, your

          20   Honor.

          21      THE COURT:  That sounds like a good solution.

          22      MR. HERSHMAN:  It sounds like a great solution, to a

          23   degree, your Honor, yes.  And forgive me.  I agree, it sort of

          24   gets into the weeds here, but it's sort of important to

          25   Mr. Buryakov.

1          THE COURT:  No.  I've been there before.

2          MR. HERSHMAN:  Perhaps the largest, the bulk of data,

3   if you will, is the video surveillance, which is quite

4   important, for obvious reasons.  And that's what won't be

5   available in the unit.  Right?

6          THE COURT:  Right.

7          MR. HERSHMAN:  And that requires additional time in

8   the library still; if we can continue to work with the

9   government, I'm happy to do that.  They've been responsive to

10  date, it just hasn't happened.  I understand we're talking

11  about different aspects of the government, but still the person

12  who is being disadvantaged is Mr. Buryakov, and we want to

13  change that.  So at least we still need some additional time in

14  the library with respect to the video surveillance, and that

15  brings up point two.  Item 13 on the letter from the

16  government, dated March 16, 2015, to Latham, which contained a

17  disclosure by the government up to that date in time, was video

18  surveillance footage taken from August 24, '13, through, I

19  believe, November 29, 2014.  That material has not been

20  provided to Mr. Buryakov at all.  It's been provided, I think,

21  to Latham and now in turn to us on hard drives.  It's a huge

22  amount of material, as Mr. Fee said, but Mr. Buryakov hasn't

23  been able to see that at all.  So we need that item No. 13.

24          Then lastly, this is a continuing issue that I've been

25  working with the government on and I think even as recently as

F5cWburC

yesterday Mr. Fee said maybe this will be remedied today, but we provided the government with three hard drives to receive approximately five terabytes of additional data that has not yet been produced.  I'm hoping that on that data, there will be files and personal effects, personal photographs and things relating to Mr. Buryakov's life, his wife, his children, and so forth, which he would like access to and he would like returned also or to have a copy returned to his family, so we would like to work with the government with respect to that, but that material still is outstanding and I just wanted the Court to be aware that there's a ridiculously huge amount of material still to be produced here.  We're working diligently to effect a transition in as orderly and quickly a fashion as possible.

THE COURT:  In the scheme of things, it's still relatively early in the case.

MR. HERSHMAN:  I appreciate that.  And I appreciate the cooperation as well, your Honor.  It's a little frustrating when this has been going on for a little while.

On the housekeeping measures, I think that covers the housekeeping issues.

THE COURT:  Before you move to the next category, my approach is always to have the meet and confer, resolve as much as possible, and usually meeting and conferring between the government and defense can get that done, procedurally and discoverywise, so I would urge you to continue.  If I have to

1  step in, I'm happy to do it.

2        MR. FEE:  Your Honor, I can address those points

3  briefly if the Court requires, just to close the issue.  He

4  should have copies of the video surveillance.  We will make

5  sure he has those.  They will have to be in the law library, as

6  well as a list we provided that identifies the relevant events

7  on that video.  Mr. Hershman referenced a large amount of data

8  that we will make available today for pickup by counsel.  That

9  will substantially complete discovery.  What that data is is

10  the stuff taken off of the computers and phones that were

11  seized from Mr. Buryakov's home and office at the time of his

12  arrest.  The Court has dealt with that type of material before.

13        THE COURT:  Yes.

14        MR. FEE:  It is a lot.

15        THE COURT:  O.K.

16        MR. HERSHMAN:  I'll continue to confer with the

17  government with respect to the personal issues, the photographs

18  and the like.

19        THE COURT:  O.K.

20        MR. HERSHMAN:  Your Honor, just switching gears now

21  from the housekeeping measures.

22        THE COURT:  O.K.

23        MR. HERSHMAN:  As we get into the case, it's becoming

24  apparent that there is a motion to dismiss the indictment that

25  is prime and I wanted to advise your Honor of our intention

F5cWburC

1    likely to move to dismiss.  We're preparing the motion now and

2    are doing so as expeditiously as possible, and if your Honor

3    wants to set a date for that motion today, we can suggest a

4    date by which we would be ready.  It may make sense to wait

5    until Monday, the 18th, to do that, as we move further along in

6    our review of the evidence provided and what is to come today

7    from the government.

8             THE COURT:  Right.

9             MR. HERSHMAN:  But I did want to raise that and also,

10   along the same lines, the concept of a bill of particulars.  I

11   don't think that under Rule 7 there's been a bill of

12   particulars in this case, but there may be a very solid ground

13   for requesting one, and since the time has officially elapsed

14   but the rule provides for the Court to allow for a bill of

15   particulars at a later date, we would be seeking permission to

16   put forth a bill of particulars to the government.  And I

17   believe that that is all that I had.

18            THE COURT:  Here's what I think.  There's no need to

19   set a timetable yet for the motion practice or for discussion.

20   By the way, if, as, and when we get to the motion to dismiss

21   and there's an application for a bill of particulars, that

22   could be in the same document.  We do need to get beyond these

23   threshold issues first, and I'll just ask you to think about

24   this, because I don't know the answer myself.  On this issue

25   coming back to conflict or potential conflict, I would like

F5cWburC

1    both the government and the defense to think about what it

2    means in the conflict sense that the fee is being paid by

3    Mr. Buryakov's employer; the employer is owned, I take it, 100

4    percent by Russia, so essentially the fee is being paid by

5    Russia, and what does that mean in the context of the charges

6    in this case.  I think we have to be careful in analyzing the

7    potential for conflict those facts and maybe others as well.

8    There's nothing to do about it at this time except that you may

9    want to, Mr. Hershman, address that in your correspondence with

10   me, which I hope to have by Friday.  I think that's it, unless

11   there's a need to deal with speedy trial or whether there's an

12   application or an issue.

13        MR. FEE:  Yes, your Honor.  There is an application.

14   The government asks that the Court exclude time in the interest

15   of justice under the Speedy Trial Act through our next

16   appearance before the Court on May 18, so that the defense may

17   obtain and review discovery and, of course, present information

18   to the Court relevant to the potential conflict issues.

19        THE COURT:  I'm going to find under 18, United States

20   Code, Section 3161 that the request for adjournment joined in

21   by both sides to Monday, in any event, the 18th of May, at 11,

22   is appropriate and warrants exclusion of the adjourned time

23   from speedy trial calculations.  I further find that the

24   exclusion is designed to prevent any possible miscarriage of

25   justice, to facilitate these proceedings.  One way it would do

F5cWburC

1    that is it would allow me to review this second, separate

2    agreement that's referred to in the April 24, 2015, retainer

3    agreement, and also to hear from counsel.

4            By the way, Mr. Fee, if the defense sends that letter,

5    which I anticipate it will, by Friday, and you wanted to make a

6    response, you would be free to do that.

7            MR. FEE:  Thank you, your Honor.

8            THE COURT:  It would also guarantee effective

9    representation of and preparation by counsel for both parties,

10   and thus the need for exclusion and the ends of justice

11   outweigh the interests of the public and the defendant in a

12   speedy trial, pursuant to 18 U.S.C. Section 3161(h)(7)(A) and

13   (B).

14           Those are the issues that I had for today, and unless

15   there's anything further, I'll see you on Monday.

16           MR. HERSHMAN:  Thank you, your Honor.

17           MR. FEE:  Thank you, your Honor.

18           THE COURT:  Thanks a lot.  Nice to see you all.

19           Mr. Hershman, if you could make that submission by

20   noon on Friday, that would help us.

21           MR. HERSHMAN:  Sure, your Honor.

22           THE COURT:  Thanks a lot.

23           (Adjourned)

24

25