## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>EVGENY BURYAKOV,<br><br>Defendant. | 15 CR. 73 (RMB) |

## DEFENDANT EVGENY BURYAKOV'S MEMORANDUM OF LAW
## IN SUPPORT OF  MOTION TO DISMISS THE INDICTMENT
## AND MOTION FOR BILL OF PARTICULARS

Scott Hershman
Daniel Levin
Owen C. Pell
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York   10036
(212) 819-8200

*Attorneys for Defendant Evgeny Buryakov*

June 11, 2015

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................. 1

    A.   Procedural History ........................................................................................ 1

    B.   Mr. Buryakov's Position at Vnesheconombank ("VEB") ............................. 2

    C.   The Voluminous Discovery Provided by the Government ............................ 3

ARGUMENT ..................................................................................................................... 4

   I.   THE INDICTMENT FAILS TO STATE A CRIMINAL OFFENSE BY MR.
      BURYAKOV AS A MATTER OF LAW ........................................................ 4

    A.   The Indictment Fails to Negate the Section 951(d) Exceptions and Must be Dismissed 5

    B.   Section 951(d)(2) Categorically Exempts From Registration Foreign Officials In the
       United States With Notice to the Government .............................................. 6

    C.   Any Ambiguity in Section 951 Must Be Construed In Favor of the Defendant .......... 14

  II.   THE INDICTMENT SHOULD BE DISMISSED BECAUSE APPLYING § 951 TO MR.
      BURYAKOV WOULD DEPRIVE HIM OF FAIR WARNING UNDER THE DUE
      PROCESS CLAUSE ...................................................................................... 15

  III.   THE INDICTMENT SHOULD BE DISMISSED BECAUSE 18 U.S.C. § 951 IS
      UNCONSTITUTIONALLY VAGUE AS APPLIED ...................................... 17

  IV.   IF THE CASE IS NOT DISMISSED, THE GOVERNMENT SHOULD PROVIDE A
      BILL OF PARTICULARS TO RECTIFY THE BROAD, GENERAL ALLEGATIONS
      OF THE INDICTMENT AND THE VOLUMINIOUS DISCOVERY PROVIDED ....... 19

CONCLUSION .................................................................................................................. 24

Americas 90589884

# TABLE OF AUTHORITIES

## CASES

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) .................................................................14, 15, 17

*Chatin v. Coombe*, 186 F.3d 82 (2d Cir. 1999)..................................................................18

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ................................3

*Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*, 660 F.3d 612 (2d Cir. 2011) ............19

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ....................................................18

*Farid v. Ellen*, 593 F.3d 233 (2d Cir. 2010) ....................................................................19

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006) ................................................................19

*FCC v. AT&T, Inc.*, 131 S. Ct. 1177 (2011) ......................................................................8

*Kato v. Ishihara*, 360 F.3d 106 (2d Cir. 2004) ................................................................10

*Kolender v. Lawson*, 461 U.S. 352 (1983)........................................................................18

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ..............................................3

*Liparatoa v. United States*, 471 U.S. 419 (1985)..............................................................14

*Marks v. United States*, 430 U.S. 188 (1977) ..................................................................15

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009)....................................................................10

*McBoyle v. United States*, 283 U.S. 25 (1931) ................................................................15

*O'Connell Mach. Co. v. M.V. Americana*, 734 F.2d 115 (2d Cir. 1984) ..........................10

*Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350 (2012)................................................11

*S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411 (2d Cir. 1983)..............................10

*Samantar v. Yousuf*, 560 U.S. 305 (2010)........................................................................10

*Skilling v. United States*, 561 U.S. 358 (2010) ................................................................17

*Smith v. City of Jackson*, 544 U.S. 228 (2005) ................................................................10

*United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012)................................................4, 11

*United States v. Ali*, 561 F. Supp. 2d 265 (E.D.N.Y. 2008) ............................................14

ii

*United States v. Alvarez*, 506 F. Supp. 2d 1285 (S.D. Fla. 2007)....................................................16

*United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011)............................................................16

*United States v. Aquino*, 555 F.3d 124 (3d Cir. 2008).................................................................16

*United States v. Bidawid*, No. 2:07-cr-20389, Dkt. No. 3 (M.D. Mich. 2007)...............................6

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000)...........................................passim

*United States v. Bodmer*, 342 F. Supp. 2d 176 (S.D.N.Y. 2004)....................................................15

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) .....................................................20, 24

*United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999)..............................................................17

*United States v. Chung*, 659 F.3d 815 (9th Cir. 2011)................................................................16

*United States v. Darwish*, No. 1:09-cr-0015-RDB, Dkt. No. 3 (D. Md. 2009) ...............................6

*United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005)..............................................................16

*United States v. Dumeisi*, No. 1:03-cr-00664, Dkt. No. 42 (N.D. Ill. 2003) ...................................6

*United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010)........................................................16, 19

*United States v. Esquenazi*, 752 F.3d 912 (11th Cir. 2014).........................................................9

*United States v. Fishenko*, No. 1:12-cr-00626, Dkt. No. 1 (E.D.N.Y. 2012) ..................................17

*United States v. Hamama*, No. 2:08-cr-20314, Dkt. No. 3 (E.D. Mich. 2008)................................16

*United States v. Heicklen*, 858 F. Supp. 2d 256 (S.D.N.Y. 2012) ..................................................4

*United States v. Hernandez-Fundora*, 58 F.3d 802 (2d Cir. 1995) .................................................3

*United States v. Hing Shair Chan,* 680 F. Supp. 521 (E.D.N.Y. 1988).............................................3

*United States v. Huang*, No. 3:06-cr-00102, Dkt. No. 1 (D. Conn. 2006).....................................16

*United States v. Lanier*, 520 U.S. 259 (1997).........................................................................15

*United States v. Latchin*, 554 F.3d 709 (7th Cir. 2009).............................................................16

*United States v. Lindauer,* 2004 WL 2813168 (S.D.N.Y. Dec. 6, 2004) ........................................19

*United States v. Matthews*, 787 F.2d 38 (2d Cir. 1986)..........................................................15, 17

*United States v. Myers et al.*, No. 1:09-cr-00150, Dkt. No. 12 (D.D.C. 2009)................................17

iii

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ....................................................20

*United States v. Nicholson*, 2010 WL 1641167 (D. Or. Apr. 21, 2010) .........................................16

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2007)....................................................................5, 14

*United States v. Shaaban*, 252 Fed. Appx. 744 (7th Cir. 2007).........................................................16

*United States v. Sudarshan et al.*, No. 1:07-cr-00051, Dkt. No. 1 (D.D.C. 2007) ...........................17

*United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980).................................................19

*United States v. Turner*, No. 1:13-cr-00572 (N.D. Ill. 2013) ........................................................16

*United States v. Yates*, No. 13-7451, Slip Op. (Feb. 25, 2015) (Ginsberg, J.)................................14

## STATUTES AND RULES

8 U.S.C. § 1101.....................................................................................................................9, 12

15 U.S.C. § 78dd-1 ......................................................................................................................9

18 U.S.C. § 951 ................................................................................................................. passim

28 U.S.C. § 1603 ........................................................................................................................10

40 Stat. 217 (1917)......................................................................................................................13

98 Stat. 1837 (1984).....................................................................................................................13

28 C.F.R. § 73 ................................................................................................................... passim

Americas 90589884

## PRELIMINARY STATEMENT

This motion presents a narrow legal issue.  Is a representative of a foreign sovereign agency, who enters the United States on a visa sought by that agency and granted by the United States, an "officially and publicly acknowledged and sponsored official" within the meaning of 18 U.S.C. § 951(d)(2) and therefore exempt from the registration requirement of 18 U.S.C. § 951(a).  Because Mr. Buryakov falls within the statutory exemption to registration Indictment No. 15 CR. 73 (RMB) (the "Indictment") must be dismissed.  (Point I, below).  Moreover, any attempt to apply Section 951 in this case would violate due process due to the lack of any notice that this statute could be so applied.  (Points II and III, below).

If the case is not dismissed, the Government should provide a bill of particulars.  The Indictment is framed in the most general terms, a problem compounded by the Government producing vast amounts of data, including what appears to be over 5,000 hours of video and over 1,500 hours of audio data collected over 2½ years.  The Government must delineate the evidence showing Mr. Buryakov violating the law, because otherwise the burden of proof effectively shifts to Mr. Buryakov to prove that every act in which he engaged over at least 2½ years was an innocent act.  That is not a burden that may be imposed on a defendant.  (Point IV, below).

## BACKGROUND

### A.    Procedural History

The Indictment charges Mr. Buryakov with two counts:  (i) failing to notify the Attorney General of his status as an agent of a foreign government under 18 U.S.C. § 951 (Count Two); and (ii) conspiring to violate Section 951 (Count One).  The Indictment also charges two other individuals, Igor Sporyshev and Victor Podobnyy, with conspiracy to violate Section 951 under Count One and aiding and abetting Mr. Buryakov as an unregistered agent of a foreign government under Count Two.  Sporyshev and Podobnyy were allowed to return to Russia

1

because they "were protected by diplomatic immunity from arrest and prosecution while in the United States."[1]  Mr. Buryakov, meanwhile, was arrested on January 26, arraigned, denied bail and has since been incarcerated at the MCC.

### B.    Mr. Buryakov's Position at Vnesheconombank ("VEB")

The Indictment alleges that Mr. Buryakov is an employee of "a Russian bank," but also alleges that "he entered and remained in the United States as a private Russian citizen." Indictment, ¶ 3.  That Russian bank is VEB, which is the Russian Bank for Development and Foreign Economic Affairs.  Under Russian law (of which this Court may under Rule 26.1 take judicial notice), VEB is wholly-owned by the Russian state.[2]  Indeed, the U.S. Government website describes VEB as a Russian state agency:

> VEB is a Russian state-owned financial institution that acts as a development bank and payment agent for the Russian government.  It was formed June 8, 2007, pursuant to Russian federal law and is the legal successor to Vnesheconombank of the USSR, which was a specialized Russian state bank.  VEB's supervisory board is chaired by the Russian prime minister, and the chairman of the bank is appointed by the Russian president.  VEB acts as an agent for the Russian Government for the purposes of accounting, servicing, and repaying the sovereign debts of the former USSR and Russia; accounting, servicing, and repaying government loans issued by the former USSR and Russia to foreign borrowers; collecting debts from legal entities of Russia and municipal governments; providing and executing state guarantees of Russia and monitoring projects implemented by Russia with involvement of international financial institutions.[3]

---

[1]  See U.S. Dept. of Justice, Press Release (January 26, 2015), http://www.justice.gov/usao-sdny/pr/attorney-general-manhattan-us-attorney-and-fbi-announce-charges-against-russian-spy.

[2]  See Declaration of Scott Hershman, dated June 11, 2015 ("Hershman Decl."), ¶ 2–3, Ex. A & B (Russian Federal Law No. 82-FZ, Article 3 (May 17, 2007) (Russian law establishing VEB and English translation).

[3]  See Department of the Treasury, Announcement of Treasury Sanctions on Entities Within the Financial Services and Energy Sectors of Russia, Against Arms or Related Materiel Entities, and those Undermining Ukraine's Sovereignty,  Press Center—Press Releases (July 16, 2014),

2

Americas 90589884

The Court may also take notice of the legal fact that to comply with U.S. law, VEB filed on behalf of Mr. Buryakov a petition for, and was granted, an L-1A work visa from the U.S. Government that was conditioned on Mr. Buryakov entering the United States expressly to work as VEB's Deputy Representative.[4]

### C. The Voluminous Discovery Provided by the Government

On May 4 and 12, 2015, the Government delivered data in three broad categories:

- **Surveillance Videos:**  The Government produced 8 terabytes ("TB"—with 1TB equal to a trillion bytes of data) of video data potentially comprising over 5,000 hours collected over more than 2½ years.  It is not clear whether this data can be indexed, or even efficiently searched to ignore scenes when nothing is happening.  In addition, this video data appears to have no sound.

- **Wiretap Recordings:**  The Government produced what is estimated to be over 1,500 hours of wiretap data, much of which will be in Russian.

- **Miscellaneous Electronic Data/Media:**  The Government produced 3 USB hard drives consisting of over 5TB of compressed data (which when un-compressed could become almost 15TB).  It is unclear what types of data are on these drives, and how many custodians may be revealed once this material is indexed.  This data could comprise over one million pages.

Hershman Decl., ¶¶ 6–8.  In response to a request for specific details regarding the "dozens" of alleged meetings involving Mr. Buryakov or the alleged economic intelligence information gathered and passed by him in furtherance of the alleged conspiracy, the Government only would refer Defendant to the Complaint in this action.  Hershman Decl., ¶¶ 9–11.

---

http://www.treasury.gov/press-center/press-releases/Pages/jl2572.aspx , ("Treasury Department Announcement")..

[4]  Hershman Decl. ¶ 4–5, Exs. C & D (visa applications and visas).  This Court may take judicial notice of Russian law as to VEB under Fed. R. Crim. Pro. 26.1.  United States v. Hernandez-Fundora, 58 F.3d 802, 811-12 (2d Cir. 1995) (court may take judicial notice of legislative enactments); United States v. Hing Shair Chan, 680 F. Supp. 521, 524 (E.D.N.Y. 1988) (court may take judicial notice of foreign law under Rule 26.1).  Similarly, the legal fact of the visa application filing, which was required by law, and of the Government's issuance of a visa under U.S. law, also are subject to judicial notice.  Cf. Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

<center>3</center>

**ARGUMENT**

This Court should dismiss the Indictment for two reasons. *First*, Counts One and Two fail to state an offense as a matter of law. The Indictment alleges that Mr. Buryakov was an employee of a Russian bank—VEB, a Russian state-owned agency. It is a matter of public record that Mr. Buryakov was present in the United States with notice to and authorization by the U.S. Government, which granted him a visa to work as an official at a Russian state-owned agency. Accordingly, on the face of the Indictment – which relates only to registration – Mr. Buryakov was a foreign government official falling squarely into an exception to registration under Section 951 with respect to "officially and publicly acknowledged and sponsored official[s] or representative[s] of a foreign government." 18 U.S.C. § 951(d)(2). The plain text, implementing regulations, Government testimony to Congress, and prosecution history relating to Section 951(d)(2) demonstrate that the provision covers Mr. Buryakov. (Point I, below).

*Second*, the Indictment should be dismissed because applying Section 951 to Mr. Buryakov would mark an unexpected application of the statute—namely, the first time it has ever been enforced as it is here. Thus, Mr. Buryakov had no way of anticipating his criminal liability, and was deprived of fair notice under the Due Process Clause. (Point II, below). Applying Section 951 to Mr. Buryakov also would render the law unconstitutionally vague as applied, because there would be no meaningful standards to guide application of Section 951 to other foreign officials like Mr. Buryakov. (Point III, below).

**I.    THE INDICTMENT FAILS TO STATE A CRIMINAL OFFENSE BY MR. BURYAKOV AS A MATTER OF LAW**

When an indictment "fails to allege a crime within the terms of the applicable statute," it can be dismissed at the pre-trial stage as a matter of law. *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *United States v. Heicklen*, 858 F. Supp. 2d 256, 263 (S.D.N.Y. 2012).

4

Thus, if an indictment "fails to allege the essential facts constituting the offense charged," dismissal is required. *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2007).

The Indictment hinges on Section 951. Section 951(a) requires all those who are not "a diplomatic or consular officer or attaché" and who "act[] in the United States as an agent of a foreign government" to notify the Government of his or her presence in the United States. 18 U.S.C. § 951(a). But, Section 951(d) then creates an express exception to registration by defining the term "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official, ***except that such term does not include ... any officially and publicly acknowledged and sponsored official or representative*** of a foreign government." 18 U.S.C. § 951(d)(2) (emphasis added). As shown below, the Indictment ignores this exception entirely, and otherwise ignores that Mr. Buryakov falls squarely within its terms, and so cannot survive.

### A.     The Indictment Fails To Negate The Section 951(D) Exceptions And Must Be Dismissed

The Indictment does not state an offense because it does not state facts establishing an element of the crime, namely, that the statutory exception to registration under Section 951(d) does not apply to Mr. Buryakov. Rather, the Indictment alleges that Mr. Buryakov was an employee of VEB, an agency of the Russian government, during the entire time period in question. Indictment, ¶ 3. Moreover, it is undeniable that the U.S. Government—on the petition of VEB, a Russian state agency—granted Mr. Buryakov a visa to work in the United States at VEB. These facts bring Section 951(d)(2) into play for purposes of the Indictment.

Significantly, however, unlike other Section 951 prosecutions, this Indictment never then ***negates*** the statutory exception of Section 951(d)(2) by alleging that "[a]t no time material to this Indictment was [defendant] . . . an officially and publicly acknowledged and sponsored official

<div align="center">5</div>

or representative of a foreign government." *See, e.g.*, *United States v. Dumeisi*, No. 1:03-cr-00664, Dkt. No. 42, at ¶ 2 (Indictment) (N.D. Ill. Oct. 30, 2003) (including allegations that the defendant not meet any of the statutory exceptions under Section 951(d)); *United States v. Bidawid*, No. 2:07-cr-20389, Dkt. No. 3, at ¶ 5 (Indictment) (M.D. Mich. Nov. 19, 2007) (same); *United States v. Darwish*, No. 1:09-cr-0015-RDB, Dkt. No. 3, at ¶ 5 (Indictment) (D. Md. Jan. 1, 2009) (same).[5]   That omission is fatal here because the Government has failed to negate an exception that shapes the statutory definition of who must register under Section 951.  *See* 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 125 (4th ed. 2008) (An indictment must "negate statutory exceptions" when "the exception is so incorporated in the language of the statute that the elements of the offense cannot be accurately described if the exception is omitted.").

### B. Section 951(d)(2) Categorically Exempts From Registration Foreign Officials In the United States With Notice to the Government

As noted above, Section 951(a) creates a general registration requirement, but Section 951(d)(2) then exempts publicly acknowledged and sponsored officials from Section 951(a). The Government's implementing regulation confirms that someone like Mr. Buryakov, who is "officially sponsored" by a foreign government, need not register as long as their status is known to *any* U.S. Government agency:

> When used in 18 U.S.C. 951(d)(2) and/or (3), the term officially and publicly acknowledged and sponsored means that the person described therein . . . is a visitor, officially sponsored by a foreign government, whose *status is known* and

---

[5] The Government in these cases, none of which involved defendants openly working for foreign government agencies, recognized that these exceptions are definitional, and therefore, their inapplicability must be established in the indictment, or, at the very least, not directly contradicted by the remaining allegations in the indictment.  Here, where Mr. Buryakov was admitted to the country to work for a Russian state agency, the absence of any negating allegation in the Indictment is therefore telling.

6

> whose v*isit is authorized by an agency of the United States Government* . . . .

28 C.F.R. § 73.1(e) (emphasis added).   The plain language of Section 951(d)(2) and its

implementing regulation establishes that the exemption for publicly acknowledged foreign

officials is neither qualified <u>nor</u> conduct-specific.  If a person is a publicly acknowledged foreign

official, that person need not further notify the U.S. Government under Section 951.

The legislative history surrounding Section 951(d)(2) confirms this.   In the Senate

hearings on the 1984 Amendments to Section 951 that added the notification exception for

publicly acknowledged foreign officials, the Government ***defended*** the Section 951(d)

exemption when specifically asked about foreign spies using jobs in the United States for foreign

government entities (like news media) as a cover.   Thus, Senator Denton asked the DOJ:

> Some have suggested that diplomats, foreign government officials and print and
> broadcast media personnel be exempted from S. 1959's coverage [the
> Congressional bill section corresponding to Section 951(d)(2)].   However, aren't
> these the positions that are most usually used by the communist bloc countries as
> cover for their intelligence agents?

The DOJ responded by defending the Section 951(d)(2) exemption:

> *Even extensive communist bloc use of diplomatic, media or other "covers" for*
> *their intelligence operatives does not in our opinion destroy the utility or*
> *desirability of exempting such categories of personnel* from the provisions of S.
> 1959 for several reasons.   First, diplomatic privileges and immunities (P&I)
> benefit the United States in foreign countries.   Second, even diplomats with P& I
> can be disciplined through the persona non grata mechanism if the infractions are
> deemed serious enough, and this is more efficient then [sic] the statutory proposal.

*Communist Bloc Intelligence Gathering Activities on Capitol Hill: Hearing on S. 1959 and 1963*

*Before the Subcomm. on Security & Terrorism of the Senate Judiciary Comm.* ("*Senate*

*Hearing*"), 97th Cong., 2d Sess., at 55 (1982) (emphasis added).   In deciding to add the

exemption for foreign officials, Congress knew that it was exempting individuals who might use

their publicly acknowledged positions as a cover.   But, Congress nonetheless confirmed that

once a foreign official is exempted from notification under Section 951(d)(2), no further

<center>7</center>

notification is required.

Finally, the prosecution history of Section 951 strongly supports dismissal.  As discussed below in Point II, this case is a significant departure from how Section 951 has been used. Indeed, the United States appears never to have prosecuted an individual working openly for a foreign state-owned agency.  *See* Point II, *infra* at 15.  Accordingly, no matter how analyzed, if Mr. Buryakov was an "official of a foreign government" within the meaning of Section 951(d)(2) then he was not required to submit further notification under Section 951.

<div style="margin-left:2em">

1.   **Mr. Buryakov is an "Official" of a "Foreign Government" Under Section 951(d)(2)**

a.   <u>As an Employee of a Russian State Agency, Mr. Buryakov Falls Within the Plain Meaning of "Official" of a "Foreign Government" Under Section 951(d)(2)</u>

</div>

The implementing regulations for Section 951(d) define "foreign government" to include any "agency" to which a sovereign delegates de facto or de jure authority.  28 C.F.R. § 73.1(b).[6] Foreign government "agents" means all those "acting as representatives of, or on behalf of, a foreign government or official."  28 C.F.R. § 73.1(a).  Although "official . . . of a foreign government" is not then defined in Section 951(d)(2), the common usage and definition of "official" shows, including in the context of these regulations, is that it includes government employees tasked with carrying out state business.  *See* Black's Law Dictionary (10th ed. 2014) ("official" is "a person . . . appointed to carry out some portion of a government's sovereign powers"); American Heritage Dictionary (5th ed. 2014) ("official" is "[o]ne who holds an office or position, especially one who acts in a subordinate capacity for an institution such as a corporation or governmental agency"); Webster's New Third International Dictionary, 1567

---

[6] There can be no issue, including based on the U.S. Government's own position as publicized on a Government website, that VEB is a foreign government agency.

Americas 90589884

(1981) ("official" is "a person authorized to act for a government . . . esp. in administering or directing in a subordinate capacity"). *See generally FCC v. AT&T, Inc.*, 131 S. Ct. 1177, 1182 (2011) ("When a statute does not define a term, we typically 'give the phrase its ordinary meaning.'") (citation omitted).

Here, the U.S. Government describes VEB as "state-owned" and as "an agent for the Russian Government" whose board is chaired by Russia's prime minister.[7]  Thus, as a VEB representative, Mr. Buryakov was carrying-out business for a Russian state agency – i.e., acting as a representative of an entity tasked with foreign sovereign powers.   This brought Mr. Buryakov squarely within Section 951(d).    Indeed, Mr. Buryakov was VEB's Deputy Representative, and, as a matter of law, the L-1A visa granted to him by the U.S. Government is used for executives or managers,[8] further confirming that Mr. Buryakov entered this country as a representative of a foreign government agency, making him a foreign government official.

Treating Mr. Buryakov as anything other than a "foreign official" also would diverge from other statutes that define "foreign official" as including those working for foreign state agencies.   For example, the Foreign Corrupt Practices Act ("FCPA") uses the phrase, "foreign official," and defines that term to include employees of foreign governments.  15 U.S.C. § 78dd-1(f)(1)(A) (a "foreign official" means "any officer or *employee* of a foreign government or any department, agency, or instrumentality") (emphasis added); *see also United States v. Esquenazi*, 752 F.3d 912, 925 (11th Cir. 2014) (employees of a state-owned corporation are "foreign officials" under the FCPA when the corporation "performs a function the controlling government

---

[7] See Treasury Department Announcement, supra at 2 ( http://www.treasury.gov/press-center/press-releases/Pages/jl2572.aspx).

[8] See 8 U.S.C. § 1101(a)(15)(L) (regarding visas for those entering the United States to work as executives or managers for corporate or other entities).

Americas 90589884

treats as its own").  Given that Congress used virtually identical language in Section 951(d)(2), which was added in 1984, soon after the FCPA (in 1977), it is assumed that Congress intended for it to carry a similar meaning.  *See Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes").

The Foreign Sovereign Immunities Act ("FSIA") and state official immunity under federal common law yield similar conclusions.  VEB, as a wholly-owned but separate legal entity from the Russian Federation, is a foreign state agency that is presumptively immune from U.S. jurisdiction in civil actions under the FSIA.  28 U.S.C. § 1603(a)-(b), 1604; *O'Connell Mach. Co. v. M.V. Americana*, 734 F.2d 115, 116–17 (2d Cir. 1984) (shipping line qualified as an agency or instrumentality of the Republic of Italy, where a majority of its shares were owned by a public financial entity); *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 415 (2d Cir. 1983) ("a state-owned and state-controlled trading company" . . .  expressly qualifies as an 'agency or instrumentality' of the state").  Here, the U.S. Government itself describes VEB as the Russian development bank, tasked with servicing and repaying Russian sovereign debts, providing guarantees on behalf of Russia, and "monitoring projects implemented by Russia," all quintessential governmental functions.[9]  *See Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004).

Given VEB's status, Mr. Buryakov, as a Deputy Representative of VEB, qualifies as an official or representative of a foreign state, who normally would be immune from civil suit under federal common law for actions within the scope of his employment.  *Samantar v. Yousuf*, 560

---

[9] See Treasury Department Announcement, supra at 2( http://www.treasury.gov/press-center/press-releases/Pages/jl2572.aspx).

10

Americas 90589884

U.S. 305 (2010); *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) ("the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for 'acts performed in his official capacity'").   As such, Mr. Buryakov is an official of a foreign government within the meaning of Section 951(d)(2).

  b. <u>The Structure of Section 951 Shows that "Official" Refers to Individuals Like Mr. Buryakov Who Carry Out State Business</u>

  Beyond the plain meaning of Section 951(d)(2), the statutory context within which the provision appears further supports its encompassing foreign officials like Mr. Buryakov.  *See Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1357 (2012) ("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"); *Aleynikov*, 676 F.3d at 80-81 ("a statutory phrase 'gathers meaning from the words around it'" and "paired phrase[s]" should be interpreted in light of one another).

  Section 951(d)(2) follows a separate statutory exemption for a narrower class of foreign persons—namely, diplomats and consular officers located in the United States with notice to the State Department.  *See id.* § 951(d)(1).  Section 951(d)(2) then precedes a statutory exemption for a wider class of foreign persons—namely, "any . . . member of the staff of, or employee of" the individuals described in Subsection (1) or (2).  *Id.* § 951(d)(3).  Therefore, Section 951(d)(2) reaches a class of foreign officials and representatives who—like Mr. Buryakov as VEB's Deputy Representative—do not, on the one hand, qualify as diplomats or consular officers (under Section 951(d)(1)), but who, on the other hand, occupy more senior roles than staffers (under Section 951(d)(3)).[10]

---

[10] Significantly, these distinctions are recognized in the visa classifications used for foreign government officials.   "A" class visas are used for accredited foreign diplomatic officials and their immediate families, or foreign political leaders.  "G" class visas are used for accredited

Americas 90589884

This reading is confirmed by the implementing regulations, which focus on any "officially sponsored visitor" being acknowledged by any federal agency:

> When used in 18 U.S.C. 951(d)(2) and/or (3), the term officially and publicly acknowledged and sponsored means that the person described therein [1] has filed with the Secretary of State a fully-executed notification of status with a foreign government; or [2] is a visitor, officially sponsored by a foreign government, whose status is known and whose visit is authorized by an agency of the United States Government; or [3] is an official of a foreign government on a temporary visit to the United States, for the purpose of conducting official business internal to the affairs of that foreign government; or [4] where an agent of a foreign government is acting pursuant to the requirements of a Treaty, Executive Agreement, Memorandum of Understanding, or other understanding to which the United States or an agency of the United States is a party and which instrument specifically establishes another mechanism for notification of visits by agents and the terms of such visits.

28 C.F.R. § 73.1(e) (bracketed numbers added).  Mr. Buryakov was sponsored for a visa by a Russian government agency—VEB—and then acted as a visa-authorized representative of that foreign agency in the United States.

The statute and regulations thus render the allegation in the Indictment that Mr. Buryakov "entered and remained in the United States as a private Russian citizen" (Indictment, ¶ 3) as nothing more than a *non sequitur* because every foreign government official is a "private citizen" of their country.  But what is relevant under Section 951(d) is whether they are authorized by the U.S. Government to enter the United States not simply as visitors or tourists, but as persons authorized to work in some recognized governmental capacity which activates Section 951(d).

      c.    The U.S. Government Told Congress that Section 951(d)(2) Was Meant to Cover Employees of State-Owned Enterprises Who, like Mr. Buryakov, Carry Out Official Business

When Section 951 was first enacted in 1917, it only included a carve-out for individuals

---

officials and employees of international organizations.   "L" class visas are then used for corporate or other entities, including foreign government agencies and instrumentalities.  See 8 U.S.C. § 1101(a)(15)(A), (G) and (L).

who were "diplomatic or consular officer[s] or attache[s]." Act of June 15, 1917, 40 Stat. 217, 226 (1917).   Anyone else who "act[ed] in the United States as an agent of the foreign government" had to provide a "notification to the Secretary of State."   *Id.*   When Congress amended the law in 1984, it made several changes, including adding the exemptions now codified at Sections 951(d)(1)–(d)(4).   *See* Pub. L. No. 98-473, 98 Stat. 1837, 2164 (1984).

In urging these amendments to Congress, the Government testified to its desire to exempt from Section 951 registration those foreign employees already known to the U.S. Government. For example, in terms that cover Mr. Buryakov, the State Department explained that those in the United States "on business on behalf of foreign governments, people engaged in legitimate representation of foreign governments in commercial activities," and those "foreign government officials who come to the United States on official business and are therefore known to the United States government" should be exempt from registration requirements.   *Senate Hearing*, at 27-28, 31, 38 (1982) (Ass't Legal Adviser Jeffrey Smith).

## 2.   Mr. Buryakov Was Publicly Acknowledged by the U.S. Government

A foreign state official is "publicly acknowledged" if his or her "visit is authorized by *an agency* of the United States Government."   28 C.F.R. § 73.1(e) (emphasis added).   After VEB officially sponsored Mr. Buryakov's visa application, the Department of Homeland Security issued a visa for Mr. Buryakov authorizing his work for VEB in the United States.   In the Senate hearings, it was made clear that actual notification to and knowledge of any U.S. Government agency of a foreign state official in the United States satisfied Section 951(d)(2):

> We have taken the position in the past, Mr. Chairman, that, where there is *actual notification and knowledge* of the activities of an agent of a foreign power within the United States, *within any department*, and not necessarily limited to State, that for practical purposes of enforcing the act, *that is notification to the Government*.

Senate Hearing, at 27 (testimony of DOJ Chief of Internal Security) (emphasis added).   Thus,

Americas 90589884

once the Government issued an L-1A work visa to Mr. Buryakov to work at VEB—the Russian government agency that sponsored him—in New York, he became "officially and publicly acknowledged" under Section 951(d)(2) and was exempt from further registration under Section 951. Accordingly, the Indictment on its face does not state a violation of Section 951.[11]

### C.     Any Ambiguity in Section 951 Must Be Construed In Favor of the Defendant

Finally, to the extent the term "publicly acknowledged and sponsored officials" is ambiguous, that ambiguity "should be resolved in favor of lenity." *United States v. Yates*, No. 13-7451, Slip Op. at 18-20 (Feb. 25, 2015) (Ginsberg, J.) (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)) (internal quotations omitted). "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparatoa v. United States*, 471 U.S. 419, 427 (1985). Here, Section 951 carries criminal penalties, and therefore, to the extent that there is any doubt as to whether the exception for publicly acknowledged foreign officials applies to Mr. Buryakov, that ambiguity should be resolved in favor of Mr. Buryakov by holding that registration was not required.

---

[11] The implementing regulation for Section 951 requires only that the notification provide the agent's name, address, identity of either the foreign government or foreign official for whom the agent is acting, and a "brief description" of the agent's activities for the foreign government. 28 C.F.R. § 73.3(a). Critically, a foreign state agent need not identify the purpose of his activities, such that both counts of the Indictment must fail. *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (dismissing an indictment for failure to "charge a violation of a known legal duty"); *United States v. Ali*, 561 F. Supp. 2d 265, 267 (E.D.N.Y. 2008) ("[S]ince the conduct allegedly underlying the conspiracy was not a crime, no § 371 conspiracy to commit that conduct can exist either."). Finally, on its face, the Indictment appears to charge Mr. Sporyshev and Mr. Podobnyy, and not Mr. Buryakov, with aiding and abetting a violation of Section 951. Indictment, ¶ 8. However, the language of the Indictment could be interpreted as charging Mr. Buryakov with aiding and abetting under 18 U.S.C. § 2. If the Indictment does, in fact, charge Mr. Buryakov with aiding and abetting a violation of Section 951, then this charge also must be dismissed because the Indictment fails to allege any principal that Mr. Buryakov is alleged to have aided and abetted.

14

## II.   THE INDICTMENT SHOULD BE DISMISSED BECAUSE APPLYING § 951 TO MR. BURYAKOV WOULD DEPRIVE HIM OF FAIR WARNING UNDER THE DUE PROCESS CLAUSE

The Due Process Clause ensures that "that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964).  As Justice Holmes said, every person deserves "fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931).  Fair warning is deprived "not only from vague statutory language but also from unforeseeable and retroactive judicial expansion of narrow and precise statutory language."  *Bouie*, 378 U.S. at 352. Accordingly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997); *see, e.g.*, *Marks v. United States*, 430 U.S. 188 (1977) (refusing to retroactively apply judicially-created pornography standard because it would "impose criminal liability for conduct not punishable" previously); *Bouie*, 378 U.S. at 362 (refusing to retroactively apply judicial construction of a criminal trespass statute); *United States v. Matthews*, 787 F.2d 38, 49 (2d Cir. 1986) (remanding with instructions to dismiss because government's "expansive[]" theory of criminal liability lacked any precedent); *United States v. Bodmer*, 342 F. Supp. 2d 176, 189 (S.D.N.Y. 2004) (dismissing part of indictment because "[n]either the statute standing alone, nor any judicial interpretation, made it reasonably clear to [defendant] that his alleged conduct . . . could result in a criminal penalty").

Here, the Indictment represents a clear break with the U.S. Government's prior use of Section 951—namely, the first time the statute ever, in its current form, has been applied to a foreign government representative openly working as such in the United States.  Indeed, since the Section 951(d)(2) exemption was added, no reported case has been brought against a foreign

15

governmental official who has held himself out as such.  Instead, prior indictments have charged **_privately_** employed individuals surreptitiously working for foreign governments.

Thus, unlike Mr. Buryakov, in prior cases the defendant had **_not_** been sponsored by a foreign government agency that revealed to the U.S. Government that the defendant was in the United States as a foreign state agent.  *See, e.g.*, *United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011) (chemical engineer, secretly helping Iranian entities); *United States v. Chung*, 659 F.3d 815 (9th Cir. 2011) (Boeing engineer, secretly providing technological information to China); *United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010) (private business owner, secretly helping the Venezuelan government); *United States v. Latchin*, 554 F.3d 709 (7th Cir. 2009) (airport counter agent, secretly working for the Iraqi Intelligence Service); *United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) (local newspaper publisher secretly providing information to the Iraqi Mission to the U.N.); *United States v. Turner*, No. 1:13-cr-00572, Dkt. No. 38 (Indictment) (N.D. Ill. Aug. 27, 2013)  (private U.S. citizens, secretly working for Zimbabwe); *United States v. Hamama*, No. 2:08-cr-20314, Dkt. No. 3 (Indictment) (E.D. Mich. Nov. 24, 2008) (naturalized citizen from Iraq seeking employment as a translator in U.S. Army, secretly sending information to Iraqi Intelligence Service); *United States v. Alvarez***,** 506 F. Supp. 2d 1285 (S.D. Fla. 2007) (local university professor, secretly informing Cuban government); *United States v. Shaaban*, 252 Fed. Appx. 744 (7th Cir. 2007) (Indiana civilian, secretly attempting to sell CIA agent names to Iraqi Intelligence Service); *United States v. Aquino*, 555 F.3d 124 (3d Cir. 2008) (Philippine national on tourist visa, secretly receiving classified U.S. intelligence information); *United States v. Nicholson*, 2010 WL 1641167 (D. Or. Apr. 21, 2010) (father and son, private U.S. defendants, secretly conferring with Russian agents); *United States v. Huang*, No. 3:06-cr-00102, Dkt. No. 1 (Indictment) (D. Conn. Apr. 12, 2006) (owner of export business,

<center>16</center>

secretly transferring telecommunications systems to Iraq by way of Chinese entities); *United States v. Sudarshan et al.*, No. 1:07-cr-00051, Dkt. No. 1 (Indictment) (D.D.C.  Mar. 7, 2007) (owner and operators of exporting business, selling aircraft to government of India); *United States v. Fishenko*, No. 1:12-cr-00626, Dkt. No. 1 (Indictment) (E.D.N.Y. Sept. 28, 2012) (owners and operators of exporting business, secretly selling military craft to Russia); *United States v. Myers et al.*, No. 1:09-cr-00150, Dkt. No. 12 (Indictment)  (D.D.C. June 5, 2009) (American government employee and banker, conspiring to provide classified documents to Cuba).  Defendant is aware of no published decision involving a prosecution by the United States against a defendant like Mr. Buryakov.

The glaring absence of any precedent for the theory of prosecution here shows the fair notice problem.  *See United States v. Brennan*, 183 F.3d 139, 149–50 (2d Cir. 1999) (case was "seriously problematic" when the "government has pointed to no precedent for criminal liability" for the type of conduct charged); *Matthews*, 787 F.2d at 49 (a "person of ordinary intelligence" would not have known "his contemplated conduct [was] forbidden" given testimony from lawyers, experts and professors "asserting the lack of any precedent for the Government's theory of liability").  Moreover, the undisputed facts underscore why applying Section 951 to Mr. Buryakov would be "unexpected and indefensible."  *Bouie*, 378 U.S. at 354.  VEB and Mr. Buryakov followed U.S. legal requirements.  Nothing in the Indictment shows Mr. Buryakov attempting to avoid notifying the U.S. Government of his presence at VEB on behalf of a Russian agency.  As such, the Indictment should be dismissed because nothing would have placed Mr. Buryakov on notice that he also needed to comply with Section 951(a).

## III.   THE INDICTMENT SHOULD BE DISMISSED BECAUSE 18 U.S.C. § 951 IS UNCONSTITUTIONALLY VAGUE AS APPLIED

The Indictment also should be dismissed because applying Section 951 to Mr. Buryakov

17

would render the law void-for-vagueness.  A statute is unconstitutionally vague under the Due Process Clause when it fails to put an ordinary person on notice of what is prohibited, or allows for arbitrary enforcement by the Government (or both).  *See Skilling v. United States*, 561 U.S. 358, 402-03 (2010) ("To satisfy due process, a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement."); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (same); *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010) (statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" (internal quotation marks and citation omitted)).  Here, both results would occur were Section 951(a) applied to Mr. Buryakov.

As to notice, were Section 951(a) extended to Mr. Buryakov, the result would be that at least *some* employees of foreign governments working in the United States, who are known to and present with authorization from the U.S. Government, would nonetheless now be obligated to provide additional notice to the U.S. Government.  In other words, there suddenly would be a class of persons who, like Mr. Buryakov, appear to fit within Section 951(d)(2) (and a category in 28 C.F.R. § 73.1(e)), but are nonetheless now subject to Section 951(a).  The problem is, no one would know on which side of the line he or she fell.  Indeed, if *all* U.S. Government-authorized foreign governmental employees now must register under Section 951(a), then Section 951(d)(2) is effectively a dead-letter (a result also not favored as a matter of statutory interpretation).  To the extent Section 951(d)(2) provides an exemption to some class of people, who is in that class and how will they know it?  There would be no way to answer these questions, because there is no textual anchor in the statute to explain *why* Section 951(d)(2) does not apply to Mr. Buryakov.  This is the very sort of deprivation of fair notice that the Due

<center>18</center>

Process Clause forecloses.  *See Chatin v. Coombe*, 186 F.3d 82, 89 (2d Cir. 1999).[12]

Similarly, should Section 951(a) impose criminal liability on Mr. Buryakov, the Government would have a free hand to arbitrarily enforce the statute to similarly-situated persons.  There are potentially thousands of individuals in the United States like Mr. Buryakov: persons openly working in representative capacities for foreign government agencies and instrumentalities, but in non-consular, non-diplomatic posts.   These persons all would be "agents" of a foreign government under Section 951(a), and if Section 951(d)(2) does not provide them with a safe-harbor, they would be vulnerable to prosecution for failing to register.  The Government could pick and choose whom to arrest and prosecute, based on arbitrary criteria such as nationality or country of origin.  Such uncabined discretion is one of the dangers that the vagueness doctrine prevents.  *See Farrell v. Burke*, 449 F.3d 470, 492–94 (2d Cir. 2006) (law must "provid[e] sufficiently clear standards to eliminate the risk of arbitrary enforcement").  That doctrine demands that Section 951 not be applied to Mr. Buryakov here.  *See Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 622 (2d Cir. 2011) (law was unconstitutional as applied because its "vagueness authorize[d] arbitrary enforcement"); *Farid v. Ellen*, 593 F.3d 233, 243-44 (2d Cir. 2010) (prison rule was unconstitutionally vague because it "failed adequately to cabin the discretion of prison officials").

## IV.   IF THE CASE IS NOT DISMISSED, THE GOVERNMENT SHOULD PROVIDE

---

[12] Mr. Buryakov is not bringing a void-for-vagueness challenge to Section 951 of the type that has been rejected by several federal courts.  See United States v. Duran, 596 F.3d 1283 (11th Cir. 2010); United States v. Truong Dinh Hung, 629 F.2d 908 (4th Cir. 1980); United States v. Lindauer, 2004 WL 2813168, at *4 (S.D.N.Y. Dec. 6, 2004).  The defendants in those cases argued that the terms "agent" or "acting as a foreign agent" in Section 951(a) were too vague to provide notice about what conduct triggers the notification requirement.  Mr. Buryakov, however, contends that should Section 951(a) apply to him without the exemption under Section 951(d)(2), that would raise vagueness problems as the law is applied to *foreign governmental employees* like Mr. Buryakov, who would have no notice of when they must or must not register.

Americas 90589884

**A BILL OF PARTICULARS TO RECTIFY THE BROAD, GENERAL ALLEGATIONS OF THE INDICTMENT AND THE VOLUMINIOUS DISCOVERY PROVIDED**

A bill of particulars under Fed. R. Crim. Pro. 7(f) should be granted when the information requested is necessary to allow the defense to prepare its case adequately or to avoid prejudicial surprise.  1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 130, n.4 (4th ed. 2008).  Here, in response to a request for additional details beyond the Indictment, the Government would do no more than refer Defendant to its Complaint.

A seminal case in this District is Judge Sand's decision in *United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000).  That decision raised issues similar to those presented here, in that the indictment there—which alleged over 144 overt acts—was nonetheless framed in broad, general terms, covered significant periods of time, and involved allegations of multiple unspecified instances of potentially relevant conduct.  In ordering the Government to provide a bill of particulars the court recognized that a defendant must be provided with sufficient detail to adequately prepare his defense regarding the facts and circumstances upon which the Government will rely at trial, and to avoid prejudicial surprise at trial.  *Id.* at 235.  This case is analogous to *Bin Laden* in significant respects.

**Volume of Data:**  In *Bin Laden*, the Government produced "hundreds of thousands of pages of documents, dozens of audio and video tapes, transcripts and translations of these materials, hundreds of crime scene and other photographs," and other materials.  92 F. Supp. 2d at 232 n. 14.  But that volume, by itself, may not provide the required notice to the defendant when there is no way for counsel to determine what material may be offered in evidence.  *Id.* at 234.  Other cases in which voluminous discovery yielded a bill of particulars involved a production of 200,000 pages of material (*United States v. Nachamie*, 91 F. Supp. 2d 565, 571–72 (S.D.N.Y. 2000)), and 4,000 documents (*United States v. Bortnovsky*, 820 F.2d 572, 575 (2d

20

Cir. 1987)).  This case eclipses those precedents.  Here, the Government has produced what appears to be over 5,000 hours of video spanning over 2½ years, 1,500 hours of audio tapes (presumably, mostly in Russian), and miscellaneous electronic data that could include over one million pages of documents, photos, and other data.  Hershman Decl., ¶¶ 6–8.

**Relevant Period:**  In *Bin Laden*, the "breadth and duration of the criminal conduct with which the alleged conspirators are accused in similarly widespread."  92 F. Supp. 2d at 234. Here, the Government asserts that at least 48 "meetings" over at least 2½ years occurred between Mr. Buryakov and another alleged conspirator (who were neighbors and friends), and travel by Mr Buryakov "to a foreign country" over a six-month period, comprised the overt acts. Indictment, ¶¶ 7(a)-(b); Complaint, ¶¶ 18 (meetings over at least 2½ years), 56 (noting two trips to another country).  Absent identification of which and how many of those meetings or trips the Government alleges are part of the alleged conspiracy, the Defendant will not be able to adequately prepare a defense. *Bin Laden*, 92 F. Supp. 2d at 236, 237-38.

**Generality of Allegations:**  Here, the Government has not identified in the Indictment or Complaint any documents or other information that showed Mr. Buryakov was collecting information for the SVR, passing information to the SVR, or collecting or passing information that was inconsistent with his job as an official at a foreign state financial institution.  Rather, all that is alleged is that Mr. Buryakov met an alleged conspirator "for the purpose of exchanging information" and that he travelled abroad "to collect economic intelligence for the SVR." Indictment, ¶¶ 7(a)-(b).   In then offering Defendant no additional particularity beyond the Complaint, the Government only further highlights the problem.

Very few of the "approximately four dozen" alleged "meetings" with Mr. Sporyshev are identified in any way, which is significant because Mr. Buryakov and Mr. Sporyshev were

21

neighbors and friends who would have "met" on countless occasions during a 2½ year period. Indeed, the Complaint mentions *only three meetings* (and four other dates when alleged phone calls occurred).  Complaint, ¶¶ 37-43, 46, 47, 68, 71, 74.  The Complaint also fails to allege the type of information Mr. Buryakov allegedly was passing to Mr. Sporyshev, referring to "a bag, magazine, or slip of paper" (Complaint, ¶ 18), and alleging *only three items* specifically (Complaint, ¶¶ 57, 60, 74).  Thus, the Complaint does not solve the lack of required detail.

The *Bin Laden* court noted that this kind of generality supported bills of particular in *Nachamie* and *Bortnovsky*, and factored into the bill of particulars ordered in *Bin Laden*.  92 F. Supp. at 236.  With regard to bare allegations that a defendant engaged in "travel" or "business"—which is akin to "exchanging information" or "travelled to a foreign country"—the *Bin Laden* court held that "because those terms refer to such broad categories of conduct, those allegations provide too little information to the Defendants and their counsel to permit them reasonably to focus their trial preparations, especially in light of the voluminous amount of material that has produced in discovery to date."  *Id.*

Based on *Bin Laden*, *Nachamie*, and *Bortnovsky*, the Government should provide a bill of particulars that would delineate the following information (requests in boldface):

1. **With respect to Indictment ¶ 7(a), identify the "approximately four dozen occasions" at which Mr. Buryakov met with Mr. Sporyshev (an alleged conspirator) to exchange information relating to work for the SVR, and identify the information exchanged at each of those meetings (excluding the meetings or items referred to in Complaint, ¶¶ 46, 47, 57, 65, 72-74).**  As noted above, as friends and neighbors there could have been countless "meetings" between the two men during the Indictment period, and the Government should specify which "meetings" were part of the alleged conspiracy.  Otherwise, Mr. Buryakov would have to examine all meetings with Mr. Sporyshev over a 2½ year period, the kind of inquiry specifically rejected in *Bin Laden*.  92 F. Supp. 2d at 237-38.

2. **With respect to Indictment ¶ 7, identify any other meetings which the Government alleges were in furtherance of the conspiracy alleged in the**

**Indictment.**  (The Complaint adds nothing, alleging only "dozens" of meeting.  Complaint, ¶ 3(a).)  *See Bin Laden*.  92 F. Supp. 2d at 237-38.

3.  **With respect to any information passed by Mr. Buryakov to anyone (excluding the document referred to in Complaint, ¶ 74) which the Government will allege was coded in any way, identify the date or subject matter of the information or some other means of identifying it.**  (The Complaint alleges nothing about coded documents, alleging only the use of code words, without specifying the dates when those words were used or the nature of any information exchanged.  Complaint, ¶¶ 18-20.)  *See Bin Laden*, 92 F. Supp. 2d at 240.

4.  **With respect to Indictment ¶ 7(b), identify the dates, destinations, and alleged purposes of the "travel" referenced.**  (The Complaint only refers to two trips in November 2012 and March 2013 to trade shows, but provides no other detail.  Complaint, ¶¶ 56, 58.)  *See Bin Laden*, 92 F. Supp. 2d at 237–38.

5.  **With respect to Indictment ¶ 7(b), identify the alleged "economic intelligence" collected for the SVR (other than the items referred to in Complaint, ¶¶ 37-43, 45-47, 57, 65, 74).**  *See Bin Laden*, 92 F. Supp. 2d at 237-38, 239-40.

6.  **With respect to Indictment ¶¶ 2 and 7, specify whether the Government alleges that VEB was a "private business," or that Mr. Buryakov was not publicly acknowledged by any agency of the U.S. Government, or both, and identify the information showing either of these allegations.**  This relates to the non-applicability of the exception from registration contained in 18 U.S.C. § 951(d)(2).  Absent identification, the Defendant would not know what aspect of VEB, as a wholly-owned development bank of the Russian Federation, or his work for VEB, or the visa process by which he was allowed into the country to work for VEB, could give rise to an accusation that Section 951(d)(2) did not apply to him, information necessary for Defendant to prepare his defense.  *Cf. Bin Laden*, 92 F. Supp. 2d at 239 (defendants entitled to detail regarding nature of business associations that might support accusations).

By not specifying the information requested above, including the specific actions the Government will rely upon to prove that Mr. Buryakov was an agent of the SVR—as opposed to an acknowledged foreign government official at VEB—the Government impermissibly shifts the burden to Mr. Buryakov to prove that every act he took for at least 2½ years was not taken on behalf of the SVR.  That is not a burden the Government may place on any defendant, and so a

23

bill of particulars should be ordered.  *See Bortnovsky*, 820 F.2d at 574-75; *Bin Laden*, 92 F. Supp. 2d at 237-38.

## **CONCLUSION**

For the foregoing reasons, the Indictment against Mr. Buryakov should be dismissed.  In the alternative, the Government should be ordered to provide a bill of particulars containing the information requested above.

Dated:  June 11, 2015                    WHITE & CASE LLP


                                 By: /s/ Scott Hershman
                                     Scott Hershman
                                     Daniel Levin
                                     Owen C. Pell
                                     1155 Avenue of the Americas
                                     New York, NY 10036
                                     (212) 819-8200

                                     *Attorneys for Defendant Evgeny Buryakov*

Americas 90589884