WHITE & CASE

White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
T +1 212 819 8200

whitecase.com

November 9, 2015

By ECF

The Hon. Richard M. Berman
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courtroom
500 Pearl St., Courtroom 17B
New York, NY 10007

> Re: United States v. Evgeny Buryakov
> 15 Cr. 73 (RMB)

Dear Judge Berman:

Defendant Evgeny Buryakov submits this reply to the Government's response to Defendant's letter motion, under Rule 15(a) of the Federal Rules of Criminal Procedure, for an order authorizing a deposition abroad of his wife, Marina Buryakova.

Introduction

The Government makes two primary points in opposing Defendant's request for a deposition. First, the Government claims that ultimately it may not prove possible to arrange the deposition. Second, the Government asserts that Defendant has not established materiality of the testimony because he has not sufficiently revealed the substance of the testimony to be elicited. Neither contention is a ground for denying the motion.

Defense counsel represent in good faith that they believe that if the Court grants the motion they will be able to arrange the deposition. To the extent the Government believes that it may be too difficult for it to proceed in Russia, it should confer with Defendant about possible alternatives.[1]

With respect to materiality, there is no authority that mandates that the Government be provided with a list of all subjects potentially to be covered in a proposed deposition. Defendant has already stated that testimony to be elicited is first-hand testimony that will directly challenge

---

[1] Of course, if it ultimately proves impossible to arrange the deposition it would not go forward and the Government would in no way be prejudiced. There is no reason to deprive the Defendant of access to a critical witness in a manner specifically permitted by Rule 15 simply because of the possibility that it may ultimately not prove possible to proceed with the deposition.

the interpretations of the FBI agent, set forth in the Complaint, that ordinary phrases used by Mr. Buryakov in conversations with Mr. Sporyshev – "such as 'ticket,' 'list,' 'schoolbook' and the like – were coded communications in furtherance of the alleged conspiracy." Letter from Scott Hershman to Hon. Richard M. Berman, dated October 26, 2015 ("Def. Ltr."), at 3, ECF No. 66. That, without more, would make Mrs. Buryakova's testimony highly material to this case because it could only be exculpatory. Hence, the testimony is not only material, but is crucial to Defendant's case, and to deny the motion would not only gravely prejudice the Defendant, but would be contrary to the interests of justice. The Government's attempt to obtain additional discovery of the precise details Defendant will seek to elicit from the witness is not required by Rule 15, is contrary to Rule 16, and is inappropriate

Mrs. Buryakova's Unavailability and the Interests of Justice

The Government's principal objection on availability appears to be that Mrs. Buryakova has not provided an affidavit swearing to her unavailability. Letter from Emil Bove to Hon. Richard M. Berman, dated November 4, 2015 ("Gov't Ltr.") at 5-6, ECF No. 68. The Government admits, however, that an affidavit is not required because "the overwhelming majority of courts in this Circuit – and in other circuits – have rejected arguments that the movant must produce an affidavit from the proposed deponent in order to establish his or her unavailability." *United States v. Vilar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008) (compiling cases). As such, the Government can place no reliance on *United States v. Chusid*, 2000 WL 1449873 (S.D.N.Y.). *Vilar*, 568 F. Supp. 2d at 438 n. 7. Indeed, the Second Circuit has stated that this Court may accept the representations of counsel with respect to the unavailability of a witness. *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir. 1980). Thus, the absence of an affidavit has no bearing on the witness's unavailability. Defense counsel has told the Government, and represented as officers of the Court, that Defendant has made a good faith effort to secure Mrs. Buryakova's appearance at trial (including through facilitating the witness's presence by offering to pay her travel expenses), and that Mrs. Buryakova nonetheless remains fearful of travelling to the United States and unwilling to appear at trial.[2] *See United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984) (finding proponent demonstrated good faith efforts to procure the witnesses at trial by offering to pay witnesses' travel expenses).

That Mrs. Buryakova is Defendant's wife also does not help the Government's position. Mrs. Buryakova is now the sole provider for her two young children, and Defendant is aware of no case – and the Government cites none – that holds that a mother is obliged simply to leave her young children and her job to come to the United States – as if she were simply an employee responding to the demands of an employer.[3] Compounding the obvious issues of unavailability

---

[2] To the extent the Government suggests that Defense counsel would make representations to the Court that are not based on firsthand knowledge or having spoken with Mrs. Buryakova (Gov't Ltr. at 5), that suggestion is untrue, unfair and unfortunate.

[3] *Cf. United States v. Oudovenko*, 2001 WL 253027, at *2 (E.D.N.Y.) (witnesses were employees of defendant's company); *United States v. Sandoval*, 1997 WL 566252, at *1-2 (N.D. Ill.) (witnesses had worked for or with defendant for years).

are Mrs. Buryakova's legitimate fears of travelling to a country that has already imprisoned her husband. In arguing to the contrary, the Government apparently asks this Court to force Mrs. Buryakova to choose between Defendant and their young children. In any event, courts in this Circuit do not test the reasonableness of a witness's stated rationale for refusing to travel to the United States for trial.[4] Therefore, Mrs. Buryakova is unavailable under Rule 15. Def. Ltr. at 2.

Notwithstanding Mrs. Buryakova's unavailability, the Government argues that taking a deposition in Russia is not in the "interest of justice" because the Defendant has not proffered the procedures to be used, because of procedural difficulties in proceeding in Russia, and because the nature of the charges and the relationship between the witness and the Defendant suggest that her testimony may not be credible. Gov't Ltr. at 3-4. These arguments turn Rule 15 on its head because the rule exists to provide a means for taking out-of-court testimony in criminal cases notwithstanding the inevitable procedural hurdles that will arise in conducting proceedings outside the United States.

*First*, the Government cannot offer a single instance in which a Court denied a motion for authority to take a deposition abroad solely on the ground of logistical difficulty. Nor is there a case holding that the proponent must proffer the procedures to be used as a condition for the motion being granted.[5] In fact, there is no requirement to specify the method, or even location of the deposition to be taken abroad. *See United States v. Egorov*, 34 F.R.D. 130, 131 (E.D.N.Y. 1963) (noting that proposed witnesses "probably are presently domiciled in Russia" and approving proponent's motion to take depositions "by open commission, letters rogatory or by any other method directed by the [c]ourt" (internal citations omitted)). Defendant is certainly prepared to discuss potential arrangements for taking a deposition in Russia or anywhere else in the world. In any event, U.S. courts have authorized criminal depositions in Russia under Rule 15 despite the presence of logistical issues. *United States v. Bortnick*, 2004 U.S. Dist. LEXIS 23086, at *3 (E.D. Pa.); *see Egorov*, 34 F.R.D. at 132.

The declaration of William Fritzlen, proffered by the Government, only outlines potential logistical difficulties. Mr. Fritzlen, who spends time discussing procedures in civil cases that have no bearing here, cites no example where Russian authorities actively prevented a criminal deposition – citing only "bilateral meetings" with Russian officials more than ten years ago that

---

[4] *See Johnpoll*, 749 F.2d at 709; *Vilar*, 568 F. Supp. 2d at 438-440; *United States v. Khan*, 2008 U.S. Dist. LEXIS 43329 at *3-5 (E.D.N.Y. 2008); *Grossman*, 2005 WL 486735 at *3-4; *United States v. Mostafa*, 14 F. Supp. 3d 515 (S.D.N.Y. 2014). Were it relevant, Mrs. Buryakova's subjective fear of coming to the United States is sufficient to prove her unavailability. *Cf. Khan*, 2008 U.S. Dist. LEXIS 43329 at *3-5.

[5] *Oudovenko*, the only case cited by the Government for this idea, did not hold that the logistical difficulties of taking depositions in Russia necessitated denial of a Rule 15 motion, but only acknowledged that certain difficulties may exist. 2001 WL 253027, at *3 (E.D.N.Y.). The actual holding in *Oudovenko* was that proponent's representations omitted any reference to the payment of travel expenses and otherwise failed to establish a good faith attempt to procure the witness's presence at trial. *Id.*

suggested that legal issues may exist. More importantly, Mr. Fritzlen acknowledges that if the Government were to request a deposition in a criminal case like this one, the request could come within an existing treaty between the United States and Russia. Declaration of William P. Fritzlen, dated November 3, 2015, ¶ 5, attached to ECF No. 68 as Exhibit A. Mr. Fritzlen also admits that there is a method for requesting a deposition in this case through letters rogatory. *Id.* ¶ 8. Thus, were the Government, to sponsor the request for Mrs. Buryakova's deposition, this not only would allow the deposition to proceed, but would ensure that the Government had every opportunity to cross-examine Mrs. Buryakova. Treaty Between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters, art. 10, June 17, 1999, S. Treaty Doc. No. 106-22 ("In accordance with the procedures used in the requested party [Russia] persons present at the execution of the request shall be permitted to pose questions directly or to formulate questions that shall be posed to the person being questioned and to make a verbatim transcript of the proceeding using, if necessary, technical means."). As such, based on Mr. Fritzlen's declaration, there would appear to be ways to resolve any logistical difficulties.

*Second*, the Government's inference that Mrs. Buryakova may lie to save her husband because there is no extradition treaty between the United States and Russia has nothing to do with whether a Rule 15 motion should be granted nor is it supported by the holding in *Oudovenko*. *Oudovenko* only held that the defendant had failed to demonstrate a good faith effort to procure the witness at trial. The rest of the opinion, including the portion now relied upon by the Government, is *obitur dicta*. 2001 WL 253027 at * 2-4. More important, whether a material witness is credible or not is an issue for the jury. The suggestion that a person may be more prone to lie based on whether or not their home country might extradite them is nothing more than speculation,[6] and begs the question that the Government would be free on cross-examination to make whatever record it wants about the witness's credibility.[7] As such, the Government's concerns relating to Russia provide no basis for denying the Rule 15 motion.

Mrs. Buryakova's Expected Testimony is Material

The Government asserts that the Defendant failed to show that Mrs. Buryakova's anticipated testimony is material under Rule 15. Gov't Ltr. at 4-5. In doing so, the Government

---

[6] Indeed, this position was specifically rejected in a case relied upon by the Government. *United States v. Grossman*, 2005 WL 486735, at *4 (S.D.N.Y.) (granting Rule 15 motion notwithstanding the government's argument that "foreign depositions are untrustworthy because they lack a realistic perjury sanction," and noting that "courts routinely order the taking of foreign depositions when the witness is unavailable and his testimony is material.").

[7] It is also worth noting that, in advancing this argument, the Government presumes that Defendant is guilty, which is impermissible at any stage of proceedings prior to conviction. This is not a motion to dismiss and there is no basis for assuming allegations in the Indictment are true at this stage of the proceedings.

misstates Defendant's representations as to the expected content of the testimony and impermissibly demands that Defendant reveal the theory of his case.[8]

The Government asserts that Defendant's description of Mrs. Buryakova's expected testimony is too vague. However, in making this argument, the Government misstates what Defendant has said the expected testimony would include. In asserting that the Defendant "has not told the Court what Mrs. Buryakova's testimony will be," (Gov't Ltr. at 4), the Government omits the precise language Defendant used to detail how the expected testimony would challenge the Government's case. Specifically, the Government ignores that Defendant explained that "[Mrs. Buryakova] is expected to testify about the relationship and contacts between Defendant and his family and Mr. Sporyshev and his family, as well as the references to 'lists,' 'tickets,' and 'books' set forth in the Complaint." Def. Ltr. at 3.

In its Complaint and submissions to this Court, the Government has gone to great lengths to characterize Mr. Buryakov's conduct as criminal, relying on the opinions of an FBI agent who purports to interpret translated conversations and other surveillance evidence. Among the principal allegations made, are that Defendant and Igor Sporyshev allegedly spoke in code using such non-specific terms as "'ticket,' 'book,' 'list,' or other ordinary item[s] (e.g., 'umbrella' or 'hat')" to refer to intelligence information meant to be exchanged in person. Complaint ("Compl.") at ¶ 19; *see also id.* at ¶¶ 21, 41, 48, 74. The FBI agent also alleged that "other than one occasion where they discussed going to a movie – [Mr. Buryakov and Mr. Sporyshev have] *never been observed* attending, or discussing in any detail, events that would typically require tickets, such as a sporting event or concert." Compl. ¶ 20 (emphasis added).

Mrs. Buryakova is the one person "who lived with [Defendant] in the United States during the period when he is alleged to have been gathering intelligence on behalf of Russia" by allegedly working for Igor Sporyshev. *See* Gov't Ltr. at 4. She knew Igor Sporyshev, and his wife and their young son, and has first-hand knowledge of the interactions between the Defendant and Mr. Sporyshev and their two families, including with respect to their sons, who attended the same school. As such, she can provide a first-hand account of events which the Government has made a centerpiece of their Complaint and provide critical context that directly challenges the Government's interpretation of words like "books," "tickets," "lists," and other "ordinary" phrases. Testimony that the Buryakovs or Sporyshevs actually attended various events would negate the assertion in the Complaint that no events were attended and that

---

[8] The Government also misstates the applicable standard. *United States v. Ismaili*, 828 F.2d 153, 160 (3d Cir. 1987), does not state the standard for granting a Rule 15 motion but instead states the standard for overturning a denial of a Rule 15 motion based on abuse of discretion. No court in the Second Circuit has required a Rule 15 proponent to demonstrate that the expected testimony will "negate the crux" of the Government's case. Indeed, in a case relied upon by the Government, the court made clear that it is not necessary that the Defendant show that the proposed testimony will acquit him. *United States v. Grossman*, 2005 WL 486735, at *3 (S.D.N.Y.).

references to "tickets" must have been "coded language."[9] This testimony goes to the heart of the Government's case and directly undermines the interpretation given to evidence by the FBI agent. Accordingly, as particularized by Defendant, the expected testimony described in the motion is not vague – it is concrete, is exculpatory and highly relevant. *Grossman*, 2005 WL 486735, at *4.

Moreover, in claiming vagueness, the Government is simply arguing that they have not been told precisely "what Mrs. Buryakova's testimony will be." Gov't Ltr. at 4. The Government, however, is not entitled under Rule 15 or Rule 16 to a full preview of everything on which Mrs. Buryakova may testify. As an initial matter, the Government is not entitled to discovery regarding statements made to the Defendant by potential defense witnesses. Fed. R. Crim. P. 16(b)(2)(B). If Mrs. Buryakova were to testify at trial the Government would not be entitled to advance notice of the details of her testimony and nothing in Rule 15 gives the Government superior rights in connection with a deposition of a witness for use at trial. The Government has cited no case in which a court has required a proponent to disclose all of the subjects that will be covered in a potential deposition under Rule 15, or how they would fit into proponent's theory of the case.[10] The Court should not permit the Government to use Rule 15 as a means to obtain discovery which Rule 16 does not permit.

Conclusion

Defendant has shown that Mrs. Buryakova's expected testimony will be highly material and exculpatory. Hence, it is crucial to Defendant's case, and to deny the motion would gravely prejudice the Defendant and be contrary to the interests of justice. For the reasons stated in the motion and above, the Court should grant Defendant's Rule 15 motion.

---

[9] Thus, unlike in *United States v. Al Fawwaz*, the expected testimony would directly contradict specific allegations in the Government's complaint. *See* 2014 WL 627083 at *4 (S.D.N.Y.). Moreover, neither *U.S. v. Jefferson*, 594 F. Supp. 2d 655 (E.D. Va. 2009), nor *Chusid*, 2000 WL 1449873, hinge materiality on the proposed witness providing an affidavit. Indeed, to the contrary, in *Jefferson* the court did not require either an affidavit or a declaration, relying instead on media reports, government letter, and the defendant's knowledge of events in granting the Rule 15 motion. *Jefferson*, 594 F. Supp. 2d at 669. Meanwhile, as noted above, *Chusid* does not stand for the proposition that an affidavit is required and has otherwise been discredited. *United States v. Vilar*, 568 F. Supp. 2d at 438 n. 7, 440 ("[t]here is no authority that bars this Court from relying solely on the basis of the [proponent's] representations in order to find that the materiality prong is satisfied.").

[10] If the Court requires further explanation as to the nature of the expected testimony, Defendant could provide that to the Court *in camera*.

WHITE & CASE

Respectfully submitted,

*Scott Hershman*

Scott Hershman

T +212-819-8200
E scott.hershman@whitecase.com

cc: Emil Bove (by email)