FC3QBURc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA

      v.                                 15 CR 73 (RMB)

EVGENY BURYAKOV

             Defendant
------------------------------x

                               New York, N.Y.
                               December 3, 2015
                               12:00 p.m.


Before:

                    HON. RICHARD M. BERMAN
                              District Judge


                      APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
STEPHEN RITCHIN
EMIL J. BOVE III
BRENDAN QUIGLEY
    Assistant United States Attorney

WHITE & CASE
    Attorneys for Defendant Buryakov
SCOTT HERSHMAN
MARTIN SAWYER
KELLY SAWYER


-also present-

YANA AOUREEV, Interpreter (Russian) - standby

FC3QBURc

(In open court)

THE COURT:  On the agenda today are a few things as far as I'm concerned, one in principal which I will get to in a minute, but I first want to go over our schedule.

Our trial is to start on April 4 at 9:00 a.m. Pretrial submissions are due on March 1.  And in the pretrial submissions, I don't know if we discussed this at great length, if at all, but what that includes is the joint jury instructions, motions in limine, names and places that are going to come up during the trial for the voir dire in particular.  I would invite questions if anybody wants tailored to this case me to ask of prospective jurors.  We will set as responses if any motions in limine are filed, they would be due a week later on 3/8.  So it is somewhat of a tight timetable, but I intend to make it.

Anybody have any questions about joint jury instructions or any of that how that works?  No?  OK, great.

So then the principal item of business for today is the defense application to take the deposition of Mr. Buryakov's wife under Federal Rule of Civil Procedure 15.

I have some questions and concerns which I am going to raise and which I would like to hear from the defense and the government on each of these topics.  I guess we would start with the defense as to each of them and then the government since it is the defense application.

FC3QBURc

My inclination, subject to what I hear from all of you, is to allow a deposition, but also to do so without any finding that the deposition will in fact be admitted or admissible at the trial.  That will be an issue for another day.  So any ruling by me today which I anticipate making would not be a determination of admissibility.

Here are the concerns that your papers -- incidentally, I thought on both sides were very helpful -- but there are still issues that I would like you each to cover; and they are these:  First of all, we have been discussing Mr. Buryakov's wife.  I would prefer to hear a little bit about her apart from being his wife; her name, her education, her work and where she lives just so we know who we are talking about, and I don't want to keep referring to the defendant's wife.  In fact, whether she wishes to participate in a deposition and in a trial and how we know that.  So that would be the first order of -- would you prefer to do one at a time and respond or hear the list first?

MR. RITCHIN:  Maybe hear the list.

THE COURT:  So that is first.

The second question is one that I raised in the short order that I issued.  That has to do with the defendant Mr. Buryakov's appearance, or lack of appearance, at any such deposition also under the rule that encompasses issues such as waiver, etc.

FC3QBURc

The third issue I would like both sides to cover, but the government raises in its written submission the point of view or the statements, rather, of Mr. Fritzlen of the State Department. In his submission, he asserts that Russian authorities do not recognize the authority or ability of foreign, in particular, U.S. Attorneys, to take voluntary depositions of willing witnesses even in criminal cases. So I would like the government to expand on that when it speaks but also to hear what the defense has to say about on that issue.

I am also wondering -- and this is perhaps getting into more detail than we need to, but they are practical issues -- in any such deposition who would be administering the oath and what that oath would be and who would be advising the deponent as to implications such as what it means to testify under oath, penalty of perjury, etc. under our system.

And then lastly, the defense in its -- I believe it was in its reply letter, I'm not sure -- yes, I believe that's where it is -- talks about alternatives and says, among other things, that the defendant is certainly prepared to discuss potential arrangements for taking a deposition in Russia or anywhere else in the world. And I assume that anywhere else in the world would include the White & Case law offices in London -- that just came to my mind -- which might eliminate some of the difficulties or hurdles in concluding such a deposition.

FC3QBURc

Anyway, that is what is on my mind, so I would like to hear from defense counsel first.

MR. HERSHMAN:  I will address each of your points, your Honor, in the order that you gave them.

THE COURT:  That would be great.

MR. HERSHMAN:  So Marina Buryakov lives in Moscow, Russia.  She is the mother of two young children.  I believe she has a graduate degree from universities in Russia, at least one.

THE COURT:  In what field?

MR. HERSHMAN:  I'm not exactly sure.  It's a law-related field.

THE COURT:  Is she a lawyer?

MR. HERSHMAN:  She is in Russia.

THE COURT:  OK.

MR. HERSHMAN:  But I am not sure how that translates for us.  She is not a practicing lawyer but she is someone who understands the implications of her testifying and the oath and perjury and so forth.  So I was going to get to that in a minute.

THE COURT:  OK.

MR. HERSHMAN:  She is willing to participate in the deposition voluntarily and the trial but not in the United States.  As we indicated in our papers, she is not willing to travel to the United States.  Frankly, in terms of any

FC3QBURc

location -- I will get to that in a minute -- elsewhere, I will address that when we talk about that point, but she is willing to participate, and I know that from firsthand conversation with her.

I think it is fair to say that I have explored extensively her coming to the United States to testify at the trial. We indicated in our papers her concerns as she expressed them to me. I have tried many times, but at the moment there is no change in her position.

THE COURT: I take you at your word for that.

MR. HERSHMAN: With respect to Mr. Buryakov's appearance at the deposition, I think it is fair to say that he would not mind attending the deposition in Moscow, but I don't think that is practical. So he is prepared to waive his right to be present at the deposition. I have not explored with the government whether we would seek to have him participate by Skype or some other means that are above my understanding as to how they work. But even with respect to that, I did discuss it with Mr. Buryakov, and he is prepared to waive that as well. So there is no demand per se that he participate during the live taking of the deposition, but I believe that he would prefer to be involved by some means if that is possible, but he is certainly prepared to waive that right formally.

THE COURT: Under the rule, the waiver would have to be in writing I believe.

FC3QBURc

MR. HERSHMAN:  Yes, and we are prepared to submit that to you.

THE COURT:  OK.

MR. HERSHMAN:  We have commented on the government's submission from the State Department representative, and in our response I think we pointed out specifically that Mr. Fritzlen admits that there is a method for requesting a deposition in this case through letters rogatory, but also interestingly he admits that if the government were to request a deposition, then the request could come within the existing treaty between the United States and Russia that appears in paragraph five of his declaration attached to ECF 68 as Exhibit A.

I would say this with respect to that point, however. It is somewhat speculative at this point that a deposition could not be taken in Russia that satisfies any concerns that the Court and/or the government may have about due process and fairness and ability to participate, and it is kind of putting the cart before the horse.

Clearly, we, the defense, under understand that the deposition needs to be taken in a way in which the testimony would be admissible at trial.  I understand we are not dealing with that today, and that's clear.  But I don't want to go to Moscow and take a deposition that is not usable in the trial. The whole point here is to preserve Ms. Buryakov's testimony because it is material to our defense.  So I think we can work

FC3QBURc

with the government to assure the Court that all of the essential elements of due process and fairness with respect to the deposition will be adhered to.  And in the very first instance I would like to do that in Moscow, which brings me to the next point -- well, the next point you made was the oath and the issues of what it means to testify and perjury.

In the first instance, as mentioned, Ms. Buryakov has a degree in law that allows her to understand, to my satisfaction at least, the import of her testimony and the nature of the proceeding in which she will be giving it and the requirement that she needs to tell the truth and nothing but the truth.  I believe she understands that.  I believe she understands the consequences for not doing so.  I would expect that the oath would be administered by an officer of the court, either a U.S. officer of the court or someone in Russia, but we would have no objection to it being a U.S. court reporter if we can arrange for one to do that or someone else that has the authority to administer the oath.

I have advised Mrs. Buryakov repeatedly of the need to tell the truth.  I wouldn't object to anyone else advising her of that as well before the deposition.

I am pretty confident given my interactions with her that she will tell the truth and she understands the need to do so.  I would prefer to have her here live just to be clear.

THE COURT:  Were you anticipating a video deposition?

FC3QBURc

MR. HERSHMAN:  Yes, anticipating a video deposition. yes.  As far as deposition anywhere else, it does appear in our footnote, I believe --

THE COURT:  It appears in the text.

MR. HERSHMAN:  And the text, yes.  The government has not approached us about any alternative venue.  I did approach them, however, about that, just to be candid, as recently as, I guess it was, earlier in the week, Monday.

It is our preference and desire to have the deposition in Moscow for a lot of different reasons.  So I don't want to minimize the import of the Court's ruling permitting a deposition to be taken in Moscow.  I think we should use best efforts and good faith to accomplish that in the very first instance.

To the extent that that is not able to happen for the reasons I have already discussed, but, most importantly, any ability to assure the Court that due process and fairness is something that could be assured, I still would request that we be able to take Ms. Buryakov's deposition in some location to be determined if Moscow proves to be a venue that will not work, but we haven't gotten there yet.

We haven't even advanced that ball very far with the government, but I am not sure about London.  I was going to get to your point about London.  White & Case has offices in many jurisdictions, as the Court knows, all of which would be

FC3QBURc

available to us to conduct a deposition for sure.  The question is will Ms. Buryakov travel and leave her children.  That is a question that I guess we will raise with her if it is necessary, but I am optimistic that we will be able to arrange a deposition in Moscow that satisfies the essential criteria to allow the deposition to be admissible.

I think it would be counterproductive and a waste of everyone's time for us to go all the way to Moscow and take a deposition without some assurances, on our part at least, the defense, that we have a good reason for believing the deposition would be admissible at trial.  To do anything but that makes no sense.  So I would be prepared to represent to the Court that we will try to ensure that the government has an ability, for example, to ask questions and cross-examine Mrs. Buryakov.  We are putting a lot at stake --

THE COURT:  What are the implications?  It seemed to me -- I don't know if politics is the word, but if you take a deposition in a place in a country that doesn't recognize the deposition, as it were, does that have any impact?  If you go -- I thought of London because I know you have a London office.  There are many places in Europe one could go to, and I don't think London is all that far from Moscow.

MR. HERSHMAN:  It's about a six-hour flight, five-hour flight.

THE COURT:  At most, I would say.  But whatever.  It

FC3QBURc

is what it is.  You will talk to the government about that.  It seems to me it takes several things off the table that otherwise may bear on the value of the deposition, as it were.  I assume it is in everybody's interest to have the deposition as free of -- I'm not sure what the word -- free of taint, let's say, in any way, right?  Your point is well taken.  Why go there and go to all this trouble if it is not going to be helpful.

MR. HERSHMAN:  I agree, and we haven't gotten there yet your Honor.

THE COURT:  That is something you and the government would talk about.

MR. HERSHMAN:  Frankly, I think it may be possible, or at least I'm optimistic that it would be possible, that we could take a deposition that allows the government the opportunity to cross-examine her and we could videotape it and all of this permitted without any risk of it not being admissible here.  We haven't gotten to a point where we know there is an obstacle.  Speculative comments are not -- there is no history of this where the deposition has been refused.  So I am willing to try.

THE COURT:  The whole thrust of your application is that this is a witness who -- and you've said and I assume you would say -- wants to be deposed, wants her deposition to be part of the trial, and the only thing she doesn't want is to

FC3QBURc

come to the United States.  So presumably, why would it have to be Russia?  Why wouldn't it be Europe or couldn't it be Europe? It seems to me it's not a big deal.  You know everybody has to make a little bit of a sacrifice.

MR. HERSHMAN:  I hear you, your Honor.

THE COURT:  A deposition doesn't take three weeks either.  So, whatever.  I think that is something I'm sure you will bear in mind.

MR. HERSHMAN:  I think I have addressed all the points.

THE COURT:  Yes, you have.

MR. HERSHMAN:  Thank you.

MR. RITCHIN:  Good afternoon, your Honor.  I think most of the questions were for the defense so let me focus on the one that really was addressed to the government, which is --

THE COURT:  Well, let's just see.  So as to who the deponent is, of course, that is not your question.  And we take counsel on his word that she wishes to be deposed and wishes to be part of the trial through a deposition but just doesn't want to come to the United States.  She is presumably unwilling to do that.  That is one.

Two, the issue of Mr. Buryakov's appearance or not seems to be quite solvable, and he is prepared to waive both physical appearance and perhaps Skype or some other technology.

FC3QBURc

Now, as to the third point, Mr. Fritzlen, I think, that is your issue.  Is that where you were going to focus us?

MR. RITCHIN:  Yes, that was.

THE COURT:  OK.

MR. RITCHIN:  Let me just begin by saying that I think a lot of what you heard from the defense is sort of hopes and optimism but no real showing as to what would in fact happen.

Let me give you some facts which I think do have a bearing on what would happen.  Just to set the context as to why the government has some concern about the procedures that would be applied in a deposition such as this, the Court should be aware that the U.S. Attorney whose name is on this indictment is, according to the Russian Federation, persona non grata in that country.  In 2013 the Russian Federation issued what they referred to as their Guantanamo list of alleged violators of human rights, and on that list was Preet Bharara who is the name at the bottom of the indictment in this case.

According to the Russian Federation, Mr. Bharara has prosecuted and been instrumental in convicting and imprisoning suspects who the U.S. has unilaterally determined to be threats to U.S. security and has illegally detained and brought to New York most on flimsy or circumstantial evidence.  So that is their view of the head of the prosecuting office.

In addition, that list contained 18 names, eight of

FC3QBURc

them or almost half were current or former employees of the U.S. Attorney's office, including the Assistant U.S. Attorney who is supervising this case.  So I think that as well gives some sense of the Russian Federation's view of the prosecution office here.

In addition, the Russian Federation put on its list of alleged human rights violators an agent with the FBI which is the investigating agency in this case.  To give you some sense of the Russian Federation's view of how justice is conducted in this courthouse, Judge Rakoff of this district is also on the Guantanamo list of alleged human rights violators.  He is said, according to the Russian Federation, to be largely responsible for the illegal prosecutions and detentions of prisoners illegally captured overseas as part of the U.S. practice of entrapping suspects in foreign countries, and in the case of Viktor Bout, a third country, and then illegally kidnapping and transporting them to the U.S. where they stand trial in New York.

So, this is part of a backdrop for the government's concerns about procedures that might be employed should we take a deposition in Russia.

Let me also say that those concerns are present to an even greater degree in this case than they would be in an ordinary criminal case because the defendant here is alleged to be an agent of Russia's foreign intelligence service making

FC3QBURc

this from their perspective, I would think, a particularly sensitive prosecution.

Just with respect to how courts have looked at these types of concerns, the Second Circuit in the Salim case said:

Foreign laws do not always permit witnesses to be deposed in the manner in which American courts and lawyers are accustomed. In certain cases, the use of unconventional foreign methods of examination may exceed the limits of accepted American standards of fairness and reliability such as underlie the confrontation clause and the rule against hearsay. Concerns of this type are addressed best on a case-by-case basis.

The government submits that in this case, given Russia's announced antipathy to the prosecuting office and the fact that defendant is alleged to have been a Russian intelligence officer, those concerns are subject to or merit substantial weight.

Now, with respect to Mr. Fritzlen's declaration and the issue of whether the deposition can in fact be taken, let me start with something that the defense mentioned both in their papers and just now, which is the idea that this deposition can be taken under the Mutual Legal Assistance treaty between the United States and Russia. Let me just say that that suggestion is an invitation to error.

As Mr. Fritzlen said in the paragraph that was cited

FC3QBURc

by the defense: Assistance under this agreement is available only to the prosecution. The treaty provides that this treaty is intended solely for cooperation and legal assistance between the parties, the parties being the United States and Russia. The provisions of this treaty shall not give rise to a right on the part of any other persons to obtain evidence. That is at Article 1, Section 4.

Similar or identical language in other mutual legal assistance treaties has been the subject of review by various courts, and to the government's knowledge, they have uniformly determined that such treaties cannot be used to obtain a deposition of a defense witness.

Let me just point the Court to three cases. There is *United States v. Sedaghaty*, which is at 728 F. 3d 885, and the relevant discussion is at 916 through 917. That is a Ninth Circuit case from 2013 in which there was a request to order the government to use a mutual legal assistance treaty with Egypt for the benefit of a defendant which the court said fails under the express terms of the treaty and the district court had no authority to order the executive branch to invoke the treaty process to obtain evidence abroad for a private citizen.

Similarly, in *U.S. v. Jefferson*, which is an Eastern District of Virginia case from 2009, reported at 594 F. Supp. 2d 655, the Court wrote: Courts have consistently held that MLA treaties with such causes create no rights in individual

FC3QBURc

defendants to force the government to request evidence under the MLA treaty procedure.

*U.S. v. Rosen*, another case from the Eastern District of Virginia reported at 240 F.R.D. 204 is to the same effect. In that case it was a treaty between the United States and Israel containing the same language.

Let me also mention, because I think it is relevant for the Court's considerations, the two cases the defense cited in their papers in which the Court had authorized a deposition in Russia. That is the *Egorov* case and the *Bortnick* case. It is certainly true, as the defense has said, that depositions were authorized in those two cases in the first what was then the USSR and the second in Russia, but that is only part of the story. I think we have to look at what happened thereafter.

In the *Egorov* case, there was an opinion some months later in which the Court said that the letters rogatory he sent appropriate judicial authorities in the USSR were returned unanswered. That's at 232 F. Supp. 732, Eastern District of New York 1964.

And in the *Bortnick* case in which a single deposition in Russia was authorized, there is no published opinion that I was able to find which describes what happens thereafter. But I spoke to the now former prosecutors who handled the case, and their recollection is that the deposition never occurred; that

FC3QBURc

the witnesses --

THE COURT:  It never occurred?

MR. RITCHIN:  Never occurred; that the witness who was in Russia was one of a group of witnesses and that some portion of that group of witnesses despite having said initially that they were unwilling to come to the United States, changed their minds, came to the United States, and it never happened.  Since White & Case was one of the law firms representing the defendant, I'm sure that if their recollection is wrong, the defense will correct me.

This experience in these cited cases is consistent with what Mr. Fritzlen has said.  There is a moratorium on judicial cooperation between the United States and the Russian Federation.  The experience of the State Department is that the method for obtaining a deposition in Russia is to submit a letters rogatory and that those letters rogatory are consistently returned unexecuted.

With respect to the notion that we could just walk in and take a deposition on our own, that is something that would subject agents of the United States Government to potential arrest.  And so that I think is not an avenue that can be pursued.

This experience is also consistent with the experience of those who handled U.S./Russia matters for the government.  I spoke not only with Mr. Fritzlen but with a person at the

FC3QBURc

Department of Justice's Office of International Affairs who handled Russian matters, and no one is aware of a deposition having been taken in Russia in a criminal case for at least the last decade.

Let me just add one other thing, which is, as a practical matter, we, the prosecutors, in order to go to Russia would need what's called country clearance from the State Department, and it is not at all clear that we would get it.

So I lay all these things out to suggest to the Court that while there may be optimism that all of these are obstacles that can be overcome, history suggests otherwise.

THE COURT:  OK.

MR. RITCHIN:  And if history is all of a sudden reversed for this case, that raises other questions.

THE COURT:  I got it.

MR. RITCHIN:  So --

THE COURT:  You had two more topics.

MR. RITCHIN:  OK.

THE COURT:  One was your experience -- these might be minor -- administering the oath and the idea of penalty and perjury, etc.

MR. RITCHIN:  The short answer is we have no idea. The *Oudevenko* case makes reference to the fact that at least as of that time, what the Russians were saying was that it would be a Russian official who had to ask the questions.  Since we

FC3QBURc

have no history of depositions in Russia, we don't know who would administer the oath.

THE COURT:  Do you have experience of depositions in other countries?

MR. RITCHIN:  Yes.  And in other countries, it varies. Sometimes it's a U.S. consular official, sometimes it's a private party, sometimes it's an official of the government of that country.  So it varies.  But what would happen here there is simply no track record that I am aware of in a criminal case that can give the Court any assurance that the administration of the oath would be done by any particular party.

With respect to alternatives, obviously much of what I have just said doesn't apply to a deposition in the United Kingdom, for example, to follow up on what the Court had proposed as an alternative.

THE COURT:  I was just aware that of course White & Case has an office there, and I'm sure in other places.  So what I probably inarticulately expressed before about we would want a deposition that -- I used the word taint.  A better way to say it by me is that we want to ensure always the integrity of the process so the process, in particular the deposition, but more to the point would be the trial of the case in which presumably the deposition would be utilized.  So that is really at the heart of my concern.

I was not aware of all the points that you brought

FC3QBURc

out, but from reading your papers to the conclusion that at least preliminarily the integrity of the process was definitely an issue to be concerned about. But, as I say, not in all the detail that you mentioned, so that is helpful. That is why I was happy to suggest that there may be ways to avoid these issues without great stress, particularly, as I said, since the only concern that has been voiced was by the deponent and was: "I would like to be deposed and I would like for my deposition to be used in a trial in this case. I just don't want to go to the United States." So that leaves open a wide variety of alternatives in my opinion that obviate these concerns which I think are sincere concerns and genuine concerns, and also accommodates the defense who wants to have this deposition.

MR. RITCHIN: May I just suggest one other thing?

THE COURT: Yes.

MR. RITCHIN: Which is that if the witness is prepared to leave Russia to go to London or wherever, then the reasons for her unavailability really boil down to a discomfort with coming to the United States. I don't know exactly what the concerns are because they've never been expressed with particularity, just that she is uncomfortable with coming to the United States based, in part, on the experience of her husband; but if the witness were to express exactly what she is concerned about, there may be something that we can do to alleviate those concerns. If she is concerned about something

FC3QBURc

in particular that might happen to her in the United States, we can certainly explore whether we can assure her that that thing or those things wouldn't happen.

THE COURT:  OK.

MR. RITCHIN:  And then we would be in the position where she could come and testify at trial, the jury could see her demeanor, and we would be in the preferred position of having a witness who actually testifies at the trial as opposed to the exceptional circumstances of having a deposition.

THE COURT:  Right.  So where that leads me is here which is where I thought I was going to come out in any event. Would I like to see -- not like; that is the wrong word -- would I be inclined, as I said initially, to grant the defense application for a deposition?  Yes.  Without, again, ruling on the ultimate admissibility of the deposition at trial.  That would be an issue for another day.  So it would be a device to preserve the testimony.  Perhaps you could persuade them in a meet-and-confer with Mr. Hershman that the witness' concerns can be accommodated.

So I think there are enough options here on the table. I don't want to rule that I am directing that a deposition in Russia take place.  I am inclined to say that a deposition should happen and I would like to see you meet and confer and see if you can come up with a venue, for one, because venue here is more than just convenience.  Venue goes to some of the

FC3QBURc

issues that I am putting under the rubric of the integrity of the process, both the deposition itself and ultimately if there were one deposition, its use at trial. I would like to avoid any negative impact on the integrity of the process.

So what I am going to suggest is really as far as I would like to go today, I would like to see if you two can work something out, as it were, and then I will combine what you propose to me with a ruling at that time if that works for you.

MR. RITCHIN: Your Honor, happy to do so. As you know, the government has taken the view that the materiality showing has not been made. I'm happy to expand on that if the Court would like to hear.

THE COURT: Let me just cut you short. I get it. I understand, I think, the arguments on both sides. I think I am inclined to be able to get over that issue for the purpose just of preserving testimony sufficiently in advance of trial without getting into, again, as I say for admissibility. I understand your issue on materiality too.

The defense in its papers, as you know, suggests that the testimony that is proposed would be exculpatory to the defendant and has made, I think, a sufficient showing that it could be, in any event. I don't know if it would be, so I think I can get over the materiality question.

But let's see what you all come up with. And you tell me what is a reliable or a reasonable time frame for you to

FC3QBURc

come back.

Can you go off the record and consult with Mr. Hershman?

(Recess)

MR. RITCHIN:  If it is suitable for the Court's schedule, perhaps we could come back on the 21st or 22nd of December.  It's a little over two weeks away.

THE COURT:  You know as well as I in terms of working this out.  If that is what you need, that's fine.

MR. RITCHIN:  I think it is really the defense who needs the time.

THE COURT:  I am thinking -- whatever.

MR. HERSHMAN:  We get it.  I am going to try my best -- I just don't want to come back and say we need five more days.

THE COURT:  I get it.  If you all can do 9:00 on the 21st, I have that time available.  I will make every effort, and I know you will too, to make sure Mr. Buryakov could be present at 9:00.  That's a little earlier than we usually start.

Two related questions.  I didn't mention for the record that we had, as we always do here, a standby Russian interpreter for these proceedings.  The practice has been until now that Mr. Buryakov has not availed himself in this proceeding today.  But in case he wanted to and needed to, that

FC3QBURc

the interpreter will be available.

This is just an informational question.  I take it -- well I don't take anything -- would the deposition if it came about be in English or in Russian or with interpreters or what? Have you thought about that?

MR. HERSHMAN:  Yes.  We would need to use an interpreter.

THE COURT:  Which you all would arrange as part of your discussions?  OK.  So December 21, unless I hear from you sooner, at 9:00 a.m. and you will give me your findings.  If you have them in advance and you wanted to send me a letter, that would be helpful.  It would speed things along.  It would speed my analysis along if you did or didn't work something out.  OK?  Great.  This was very helpful today.  I think we have time excluded until the trial date already.

MR. RITCHIN:  Yes.

THE COURT:  So there is no need to be concerned about that today.  Nice to see you all.

MR. RITCHIN:  Thank you, your Honor.

(Adjourned)