G1K9BURC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                          15 CR 73 (RMB)

EVGENY BURYAKOV,

             Defendant.

------------------------------x
                                         New York, N.Y.
                                         January 20, 2016
                                         11:44 a.m.

Before:

                    HON. RICHARD M. BERMAN

                                         District Judge

                          APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
EMIL BOVE
STEPHEN J. RITCHIN
     Assistant United States Attorneys


WHITE & CASE
     Attorneys for Defendant
SCOTT HERSHMAN
OWEN PELL
MARTIN SAWYER

ALSO PRESENT:  NELLY ALISHAEV, Standby Russian Interpreter
```

1     (In open court)
2     THE COURT: It's not quite on the agenda but I'm going
3 to raise a topic that just came, recently came to my attention
4 and see what you think about it. As a result of, I think it
5 was one of the defense applications to release some photos,
6 etc., called to my attention that there is another proceeding
7 involving Mr. Buryakova -- a civil proceeding that was
8 originally filed in state court and then was removed, in fact,
9 to this court, to the Southern District, not to me. It has
10 totally nothing to do, as I can -- it's a civil case,
11 landlord/tenant proceeding.
12     But I went on the docket to see what the history was.
13 When it was removed, it was assigned to Judge Abrams. Then she
14 referred it to the magistrate judge, Magistrate Judge Peck, for
15 possible settlement, etc. And then the parties I guess in that
16 case agreed -- they signed what's called a consent to proceed
17 before the magistrate judge for all purposes. And then, as you
18 all know, a jury trial date has been set in that case for
19 February 9, 2016 at 9 a.m. which, notwithstanding that it's
20 certainly not the issues that are to be litigated in this case,
21 but in going through the docket I perceive that the plaintiff's
22 counsel in that case -- actually I don't know if it's still
23 what they're doing -- but are seeking to have
24 Mr. Buryakova testify in that civil case and
25 Mrs. Buryakova also.

|   |   |
|---|---|
| 1 | So, it's a very unusual to me to have a civil case |
| 2 | precede a criminal case notwithstanding the issues are not the |
| 3 | same. Sometimes in SEC proceedings there's a civil component |
| 4 | under criminal but it's the same case. This is different |
| 5 | cases. But I thought nevertheless -- well, defense counsel is |
| 6 | fine with all of that or wishes to look into all of that? |
| 7 | There is also, I noticed that -- I don't remember |
| 8 | which counsel, if it was plaintiff or defense, sought to |
| 9 | introduce the deposition -- well first sought to have |
| 10 | Mrs. Buryakova testify in that trial by video, I think, and/or |
| 11 | to introduce a deposition and I don't think there's been a |
| 12 | deposition. |
| 13 | So that's what I know. It sounds like -- it sounds |
| 14 | somewhat unusual to me but if that's okay with all of you, |
| 15 | especially the defense, let me know. |
| 16 | MR. HERSHMAN: So, your Honor, we're aware of the |
| 17 | facts as you recited them and I think you recited accurately |
| 18 | what I know. We're not really okay with it and we were |
| 19 | considering how to address the trial date. |
| 20 | My understanding is that the counsel for the |
| 21 | landlord -- for the bank and Mr. Buryakova in that case asked |
| 22 | for some type of an extension but I don't know for how long. |
| 23 | And given that we have an April trial I don't know if it was |
| 24 | before or after. |
| 25 | I'd prefer that that case go to trial after our case, |

for sure. And I would prefer that Mr. Buryakova not be called before another court pending this matter. He has been served with a subpoena. And as I understand it, the marshals would bring him to the magistrate's court for that trial. We were going to try to prevent that from happening as well.

So, you've raised it. It may be that -- I didn't intend to raise it today, but now that you have, that's our position.

THE COURT: I raised it because I thought that it might be disadvantageous to the defendant in the criminal case to do that. But I didn't know what to do.

So how about this. Would it be appropriate -- are you going to respond to quash that subpoena or something like that?

MR. HERSHMAN: That's what we were intending to do.

THE COURT: So maybe that would get you before Magistrate Judge Peck and perhaps through that process this could be resolved or worked out? Do you think that's -- or a letter to Judge Peck by the defense?

MR. HERSHMAN: I would be happy to send a letter. I think that would be appropriate, and ask that he respect the criminal proceeding and postpone the civil trial.

THE COURT: You could mention that -- I'm not going to tell you what to mention -- but you certainly can say that it was discussed in this proceeding and that I thought and I do think that your suggestion that you would contact Magistrate

1   Judge Peck and appraise him of this proceeding -- I'm pretty

2   sure he knows -- well, in fact, in the civil case, one of the

3   orders from this case is included.  So they obviously are

4   aware.  But I think if you were to appraise Judge Peck that it

5   was raised here and that I support your proposal that you're

6   going to write to Judge Peck and point out ways in which you

7   think it would be more desirable to have the civil case follow

8   the criminal rather than the other way around.

9           I should ask.  Does the government have any problem

10  with that?

11          MR. BOVE:  No, we don't, your Honor.

12          THE COURT:  So, let's leave it at that for now.  I

13  think sooner rather than later because February 9, I think, is

14  that trial date.

15          MR. HERSHMAN:  We'll do that.

16          THE COURT:  I must say I agree that it -- while the

17  issues aren't the same, it certainly does seem to cloud some of

18  the issues here, including defendant's testimony and his wife's

19  sought testimony.  I agree with that approach.

20          I forget where we are exactly.  I know that I signed

21  some orders which embrace your concept to take the deposition

22  of Mrs. Buryakova in Ireland and so I imagine that process is

23  underway.

24          Is that a fair statement?

25          MR. BOVE:  Yes, your Honor.  I'll let defense counsel

1    speak to the service of your Honor's orders from last Friday.
2    But since those orders we've been engaged, on a number of
3    fronts, to facilitate the deposition that the court has
4    ordered.
5        We've been discussing a modification to the court's
6    protective order relating to unclassify discovery, to allow
7    materials to be brought to Russia to facilitate preparation for
8    the deposition.  I believe we've reached an agreement with
9    respect to that application and that an application from
10   defense counsel will be forthcoming on that.
11       We've also been negotiating a modification to the same
12   protective order to allow those materials to be brought to
13   Ireland for the deposition.  The same result there.  I think
14   we've reached agreement and I would expect that there will be
15   an application shortly on that.
16       We've also been discussing, memorializing our
17   agreements with respect to assurances of safe passage to the
18   defendant's wife.  That's a process that's ongoing, but it's
19   one where we're reaching out to the FBI to see what exactly we
20   can do in terms of assurances, and we'll go back and forth and
21   continue to, hopefully, make progress on that.
22       There is also, as your Honor knows, a large
23   declassification process that was described in a filing last
24   week.  That's a significant project both for the government and
25   the FBI.  The biggest piece of it, your Honor, is essentially a

1  records management function.  As the court is aware, there's
2  been a large volume of classified discovery produced in this
3  case.  There's now a process that needs to take place of
4  essentially removing classified markings and producing
5  materials to defense counsel in unclassified format.  We've
6  been working on that process since their initial Section 5
7  filing, to get the authorities to do this, and to complete this
8  records management issue.  Since our filing last Monday we've
9  been more focused on the records management piece.
10         Today we made our first production of unclassified
11 materials.  It contains -- well, unclassified materials
12 relating to the filing from last week.  It contains about
13 150,000 audio files.  We targeted this production based on
14 conversations with defense counsel to facilitate their
15 preparations for the deposition.  So it includes, for example,
16 audio recordings and text messages over the defendant's
17 cellphone, over the cellphone used by his wife, over the
18 cellphone used by one of his children.  It also includes audio
19 recordings from the defendant's home.
20         We expect to continue to produce things on a rolling
21 basis as they are marked properly for unclassified discovery.
22 The things that are going to be most immediately forthcoming
23 will be audio and other electronic files.  To the extent we
24 have things that -- e-mails and what are essentially line
25 sheets relating to the audio, there's a redaction process that

1    is more labor intensive.  It's something that's a priority for
2    us and for the FBI and so we'll continue to push on that and
3    get it out to defense counsel as soon as possible.
4              THE COURT:  Yes.
5              MR. HERSHMAN:  Let me start with the deposition, your
6    Honor, and then address some of the comments related to
7    discovery.
8              Your Honor, we've talked about dates that would be
9    mutually convenient for conducting the deposition.  I'm
10   proposing February 24, 25 and 26 for that.
11             Now, the one thing I wanted to bring to your Honor's
12   attention is in your order you indicated you were available on
13   March 1 for any telephonic argument over disputes that may
14   arise.  I wonder if we could impose on the court to perhaps be
15   available on the 26th.  What we would do is we would ensure
16   that your Honor had a transcript overnight and we would reserve
17   any of those issues for the 26th which would allow us to
18   conclude the deposition.  It may take less time, frankly, but
19   that's what we thought was the outside date.
20             THE COURT:  What I would like to do is to have you
21   have the three days -- you're setting aside three days, right.
22   You did the first time and still.  You may not need three days.
23             MR. HERSHMAN:  Correct.
24             THE COURT:  So I would like those three days to be
25   within a Monday through Thursday if you can possibly do that.

1   If you can do that, if you want me to be available on the
2   second day or the third day, I think I could work that out.
3            MR. HERSHMAN:  Perfect.
4            THE COURT:  So that gives you more flexibility if I
5   know that you're doing it Monday, Tuesday, Wednesday and
6   Thursday of whatever week.
7            MR. HERSHMAN:  That's fine.  That would be the week
8   then, the last week of February.  And we can do Tuesday,
9   Wednesday, Thursday or we can do Monday, Tuesday, Wednesday.
10           THE COURT:  Monday, Tuesday, Wednesday would be
11  better.
12           MR. HERSHMAN:  I think Tuesday, Wednesday, Thursday
13  would be best for all of us.
14           THE COURT:  I could do that too.  Just so, heads-up, I
15  do have a trial that week, but what did we say 8:30 to 10:30?
16  So I think I could still accommodate you.
17           MR. HERSHMAN:  Great.  That would be much appreciated,
18  your Honor.
19           THE COURT:  I won't do anything until I hear from you
20  as to -- that you've finalized your dates.
21           MR. HERSHMAN:  I think as between the government and
22  the defense we've agreed on those dates.  We'll confirm it with
23  the witness and the Irish people -- that sounds kind of odd --
24  the people in Ireland.
25           THE COURT:  You think the 23rd, 24th, 25th is when

1    you --

2            MR. HERSHMAN:  Yes.

3            THE COURT:  One other thing.  Could you send me, when
4    you do, you're going to make this request to the Irish
5    authority.  Is that a judge?

6            MR. HERSHMAN:  Yes.

7            THE COURT:  And a particular judge who has got, what,
8    jurisdiction in that geographic area or what?

9            MR. HERSHMAN:  It's the Irish High Court.  I'm not
10   sure the process by which they assign judges.  It may be --

11           THE COURT:  Is the Irish High Court comparable to the
12   Supreme or is it the District Court?

13           MR. HERSHMAN:  Comparable to the District Court.

14           THE COURT:  So there might be a chief judge or
15   something that you would probably run into.

16           MR. HERSHMAN:  We're relying on counsel in Ireland to
17   do that.

18           THE COURT:  Could I get a copy of that application
19   when you submit it?

20           MR. HERSHMAN:  Yes.

21           THE COURT:  Great.

22           MR. HERSHMAN:  With respect to the deposition I think
23   those are -- that's very helpful and we'll proceed accordingly
24   with respect to those dates and the schedule.

25           It's correct that we are working with the government

1   with regard to the safe passage letter.  They've agreed to give
2   safe passage.  As you know, reducing it to writing is important
3   and I think we'll reach agreement on that.  So I'm confident
4   that that will be done forthwith.
5           There are two letters that we are prepared to present
6   to your Honor regarding the use of materials to prepare for and
7   actually conduct that deposition.  We've reviewed those letters
8   with the government, initially exchanged some suggested
9   language.  We will have agreement with respect to those
10  probably today and be able to provide them to you today, at the
11  latest tomorrow, and the sooner we can get that signed the
12  sooner we can move forward with the preparation.  So I don't
13  anticipate any issues there.  Very straightforward.
14          Turning now to the defense -- the discovery, rather.
15  We did get handed 150,000 audio files right before this
16  conference.  We appreciate that.
17          Just so the court knows, the form in which audio files
18  are provided requires some extensive work on our end to be able
19  to catalog them properly and review them properly.  So the
20  sooner we get this material, the sooner we can properly
21  prepare, not just for the deposition but for trial.  And I
22  understand the government's representation that they will be
23  produced on a rolling basis.  I hope that the rolling part of
24  that is short, the hill short, and so it rolls very quickly;
25  because the longer it takes for us to get our hands on that

1    material, the longer and more difficult it is to properly
2    prepare.
3              But, most important, we need to provide that material
4    to Mr. Buryakova. So while I have now a hard drive, he does
5    not. And the only way for him to get that hard drive is
6    through the government and the MCC. So we would ask that that
7    process be facilitated as quickly as possible. I don't expect
8    that will be a problem either. We will just send it over.
9              There is some outstanding discovery that he still
10   needs and I can take that up with the government.
11             But if we can provide, on a rolling basis, not only
12   copies to the defense but also to the defendant, that would be
13   very helpful.
14             I think we have -- there was an outstanding question
15   relating to the CIPA motion that your Honor raised last
16   conference. And given the declassification of a good chunk of
17   the classified material, it seems that it will negate the need
18   for any further proceedings on the CIPA front. But I want to
19   be clear that -- while I can't get into the nature of the
20   classified material, we still are trying to wrap our arms
21   around what's left. Once the government identified what they
22   were declassifying, we shifted our attention to what was left
23   of the classified material. And we're still conducting that
24   review.
25             While I think it's likely that there will be no need

1  for any CIPA proceedings, I just want to reserve the
2  possibility that there will be a narrow, very narrow need to
3  proceed with respect to a small number of documents or
4  materials.  But I'm not even sure that there will be.  And
5  we've been having discussions with the government concerning
6  their side of that as well.  And I think we'll be able to reach
7  agreement.  And we will certainly endeavor to notify the court
8  as quickly as possible if it changes.  But for now I think
9  we're okay.
10           We have other outstanding issues which we are in
11 discussion, meeting and conferring with the government on.
12 Those discussions will continue.  I think, with respect to
13 those discussions, they will be fruitful and we will resolve
14 issues.
15           There may be a chance that there will be a motion to
16 compel with respect to one aspect of that discovery, but we're
17 analyzing what we've received from the government late last
18 night in regard to responses to our request and we'll try to
19 work it out with them.  But if we can't we'll know very soon
20 and we'll bring that to the court's attention.
21           I think that is where we are.  We've made some
22 progress today.
23           THE COURT:  Good.  Anything else from the government?
24           MR. BOVE:  No, your Honor.  Thank you.
25           THE COURT:  I think that is good progress.  I have us

G1K9BURC

1  down as March 10 is our next date.  I'll leave it at that.  If
2  you need something before then, you'll let us know, with the
3  exception, of course, of this deposition process.
4          That's it.  Good to see you.
5          (Adjourned)