UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

EVGENY BURYAKOV,
    a/k/a "Zhenya,"

                          Defendant.

S1 15 Cr. 73 (RMB)

**THE GOVERNMENT'S MOTIONS *IN LIMINE***

PREET BHARARA
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Emil J. Bove III
Brendan F. Quigley
Stephen J. Ritchin
Assistant United States Attorneys
    *Of Counsel*

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 2

APPLICABLE LAW ..................................................................................................... 3

DISCUSSION ................................................................................................................ 4

I. Arguments or Evidence Regarding Lack of Knowledge of the Attorney General
Notification Requirement Are Irrelevant and Inadmissible .......................................... 4

II. Arguments or Evidence Regarding the Sponsored Person Defenses Are
Irrelevant and Inadmissible                                                                 6

A. Relevant Facts ....................................................................................................... 6

1. The Defendant's Visa Applications ................................................................... 6

2. *Curcio* Proceedings Following the Defendant's Arrest ................................... 8

3. The Defendant's Motion to Dismiss the Indictment ......................................... 9

B. Applicable Law ..................................................................................................... 12

1. The Sponsored Person Defenses .................................................................... 12

2. The Law of the Case Doctrine ........................................................................ 12

C. Discussion ............................................................................................................. 13

III. The Defendant Should Be Precluded from Presenting Evidence or Arguments
Regarding the Consequences of a Conviction ............................................................ 18

IV. The Defendant Bears the Burden of Proving Affirmative Defenses
By a Preponderance of the Evidence .......................................................................... 18

A. Applicable Law .................................................................................................. 19

B. Discussion ........................................................................................................... 19

V. Defense Counsel's Prior Factual Assertions Regarding VEB's Status Are Admissible
if the Defendant is Permitted to Argue the Sponsored Person Defenses at Trial ..................... 24

A. Applicable Law .................................................................................................. 24

B. Discussion ........................................................................................................... 25

CONCLUSION .............................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Anderson* v. *United States*, 294 F. 593 (2d Cir. 1923)........................................................... 20, 21

*Arizona* v. *California*, 460 U.S. 605 (1983) .............................................................. 13

*Cheek* v. *United States*, 498 U.S. 192 (1991) ............................................................. 6

*Dixon* v. *United States*, 548 U.S. 1 (2006)........................................................ 20, 22, 23

*In re Winship*, 397 U.S. 358 (1970) ...................................................................... 19

*Jarecki* v. *G.D. Searle & Co.*, 367 U.S. 303 (1961) ................................................ 15

*Ledbetter* v. *United States*, 170 U.S. 606 (1898) ................................................... 21

*McKelvey* v. *United States*, 260 U.S. 353 (1922) ................................................... 23

*Oscanyan* v. *Arms Co.*, 103 U.S. (13 Otto) 261 (1880)........................................ 26

*Patterson* v. *New York*, 432 U.S. 197 (1977)................................................... 19, 23

*Shannon* v. *United States*, 512 U.S. 573 (1994) .................................................... 18

*Smith* v. *United States*, 133 S. Ct. 714 (2013) ....................................... 19, 20, 22, 23

*United States* v. *Amato*, 356 F.3d 216 (2d Cir. 2004)........................................ 28, 29

*United States* v. *Bailey*, 444 U.S. 394 (1979) ................................................... 17, 24

*United States* v. *Campa*, 529 F.3d 980 (11th Cir. 2008) .......................................... 4, 5

*United States* v. *Carr*, 557 F.3d 93 (2d Cir. 2009) ................................................ 13

*United States* v. *Del Rosario*, No. 12 Cr. 81 (KBF), 2012 WL 2354245
  (S.D.N.Y. June 14, 2012)........................................................................... 18

*United States* v. *Dickson*, 40 U.S. (15 Pet.) 141 (1848) ......................................... 21

*United States* v. *Dumeisi*, 424 F.3d 566 (7th Cir. 2005)............................................ 5

ii

*United States* v. *Duran*, 596 F.3d 1283 (11th Cir. 2010)............................................................ 4, 16

*United States* v. *Francis*, 164 F.3d 120 (2d Cir. 1999)................................................................. 5

*United States* v. *GAF Corp.*, 928 F.2d 1253 (2d Cir. 1991) ........................................................ 29

*United States* v. *Hamilton*, 538 F.3d 162 (2d Cir. 2008) ............................................................ 23

*United States* v. *Harris*, 914 F.2d 927 (7th Cir. 1990) ............................................................... 25

*United States* v. *Hartsock*, 347 F.3d 1 (1st Cir. 2003)............................................................ 22, 24

*United States* v. *Kerik*, 531 F. Supp. 2d 610 (S.D.N.Y. 2008) ...................................................... 27

*United States* v. *Levin*, No. 15 Cr. 101 (KBF), 2016 WL 299031 (S.D.N.Y. Jan. 25, 2016)..... 3, 4

*United States* v. *Lindauer*, No. 03 Cr. 807 (MBM), 2004 WL 2813168
   (S.D.N.Y. Dec. 6, 2004)........................................................................................................ 4

*United States* v. *Margiotta*, 662 F.2d 131 (2d Cir. 1981) .......................................................... 25

*United States* v. *Mayo*, 705 F.2d 62 (2d Cir. 1983) .................................................................. 22

*United States* v. *McKeon*, 738 F.2d 26 (2d Cir. 1984)............................................................... 25

*United States* v. *Simpson*, 929 F. Supp. 2d 177 (E.D.N.Y. 2013) ............................................... 17

*United States* v. *Tokash*, 282 F.3d 962 (7th Cir. 2002) ............................................................. 17

*United States* v. *Turner*, No. 13 Cr. 572, 2014 WL 4699708 (N.D. Ill. Sept. 22, 2014)............... 5

*United States* v. *Vilar*, 729 F.3d 62 (2d Cir. 2013)................................................................... 25

*United States* v. *Vuitch*, 402 U.S. 62 (1971) ........................................................................... 21

*United States* v. *Whicker*, -- F. App'x --, 2015 WL 5845799 (6th Cir. Oct. 8, 2015) ................. 17

iii

## **Federal Statutes**

18 U.S.C. § 951(a) ......................................................................................... 5, 20

18 U.S.C. § 951(d)(2) ........................................................................... 12, 13, 14, 21

18 U.S.C. § 951(d)(4) ........................................................................................ 17

## **Rules**

Fed. R. Crim. P. 12(b)(1) ................................................................................. 10

Fed. R. Evid. 401 ............................................................................................... 3

Fed. R. Evid. 403 ............................................................................................... 4

## **Regulations**

28 C.F.R. Part 73 .............................................................................................. 5, 6

28 C.F.R. § 73.1 ............................................................................................. 13, 14

28 C.F.R. § 73.3 ................................................................................................ 16

28 C.F.R. § 73.4 ................................................................................................ 16

## **Other Authorities**

*Communist Bloc Intelligence Gathering Activities on Capitol Hill: Hearing on S. 1959 and 1963*
*Before the Subcomm. on Security & Terrorism of the Senate Judiciary Comm.*,
97th Cong., 2d Sess. (1982) ........................................................................... 12

N.Y. Rule of Prof'l Conduct 1.10(a) ................................................................ 26

N.Y. Rule. of Prof'l Conduct 3.7(b)(1) ........................................................... 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>EVGENY BURYAKOV,<br>   a/k/a "Zhenya,"<br><br>              Defendant. | S1 15 Cr. 73 (RMB) |

The Government respectfully submits the following motions *in limine* seeking pretrial rulings with respect to defendant Evgeny Buryakov, a/k/a "Zhenya."

*First*, the Government seeks an order precluding the defendant from making arguments or presenting evidence at the upcoming trial regarding:

- Whether he knew that he was required to notify the Attorney General of his actions in the United States pursuant to Title 18, United States Code, Section 951;

- Whether he was an "officially and publicly acknowledged and sponsored official or representative of a foreign government," 18 U.S.C. § 951(d)(2) (the "Sponsored Official Defense");

- Whether he was an "officially and publicly acknowledged and sponsored member of the staff of, or employee of, an officer, official, or representative described in paragraph . . . (2), who is not a United States citizen," *id.* § 951(d)(3) (the "Sponsored Employee Defense," with the Sponsored Official Defense, the "Sponsored Person Defenses"); and

- The consequences, including potential penalties, of a conviction in this case.

These issues are irrelevant at trial and should also be barred pursuant to Rule 403 as unnecessarily time-consuming, unduly confusing, and misleading to the jury. Moreover, the Court has already ruled that the Sponsored Official Defense does not apply in this case based on

reasoning that compels the same conclusion with respect to the Sponsored Employee Defense.

*Second*, so that the parties can plan their presentations to the jury more efficiently, the Government seeks pretrial rulings that:

- The Sponsored Person Defenses and the Legal Commercial Transaction Defense, *see id.* § 951(d)(4), are affirmative defenses for which the defendant bears the burden of proof by a preponderance of the evidence; and

- Because the defendant cannot, as a matter of law, meet that burden with respect to the Sponsored Person Defenses, the Government need not address those defenses and they will not be submitted to the jury.

*Third*, if the Court permits the defendant to argue to the jury that either of the Sponsored Person Defenses applies, the Government seeks an order finding that writings and statements by defense counsel to the Court in connection with *Curcio* proceedings in this matter—in which defense counsel attributed independent, non-governmental status to Vnesheconombank ("VEB") that is inconsistent with the application of these Defenses—are admissible at trial.

## **BACKGROUND**

Superseding Indictment S1 15 Cr. 73 (RMB)[1] charges the defendant in two counts:  (i) conspiring to act within the United States as an agent of a foreign government without prior notification to the Attorney General, in violation of Title 18, United States Code, Section 371; and (ii) acting as an agent of a foreign government in the United States without

_____

[1] Superseding Indictment S1 15 Cr. 73 (RMB) was filed on February 18, 2016.  (Dkt. No. 116). It contains the same two charges that were included in the original Indictment.  (Dkt. No. 10).

prior notification to the Attorney General, in violation of Title 18, United States Code, Section 951.  The Government will establish at trial that the defendant acted in the United States as an agent of the Russian Federation and a Russian foreign intelligence agency—the SVR—while operating under the "non-official cover" of employment at the New York office of VEB. Buryakov participated in SVR information- and intelligence-gathering activities with at least two SVR officers:  co-defendants Igor Sporyshev and Victor Podobnyy.  Before they left the country, Sporyshev and Podobnyy acted under "official cover" of employment by the Russian Federation as, respectively, a trade official and a diplomat.[2]  By participating in these activities without notifying the Attorney General, Buryakov conspired to violate, and violated, Section 951.

## APPLICABLE LAW

"Rule 401 defines relevant evidence as that which 'has any tendency to make a fact more or less probable than it would be without the evidence,' so long as 'the fact is of consequence in determining the action.'"  *United States* v. *Levin*, No. 15 Cr. 101 (KBF), 2016 WL 299031, at *6 (S.D.N.Y. Jan. 25, 2016) (quoting Fed. R. Evid. 401).  "To be relevant, evidence need not constitute conclusive proof of a fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.* (quoting *McKoy* v. *North Carolina*, 494 U.S. 433, 440 (1990)).

---

[2] Specifically, between approximately November 2010 and November 2014, Sporyshev officially served in the Trade Representation of the Russian Federation in New York.  Between approximately December 2012 and September 2013, Podobnyy officially served as an attaché to the Permanent Mission of the Russian Federation to the United Nations.

3

Under Rule 403, relevant evidence may nevertheless be deemed inadmissible where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In applying this rule, "courts carefully scrutinize 'whether the defendant clearly demonstrates how such evidence would negate intent rather than merely present a dangerously confusing theory of defense more akin to justification and excuse.'" *United States* v. *Levin*, 2016 WL 299031, at *9 (quoting *United States* v. *Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003)).

## DISCUSSION

### I. Arguments or Evidence Regarding Lack of Knowledge of the Attorney General Notification Requirement Are Irrelevant and Inadmissible

Section 951(a) makes it a criminal offense when an individual, "other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required" by related regulations. 18 U.S.C. § 951(a); *see also* 28 C.F.R. Part 73 (regulations promulgated by the Attorney General pursuant to 18 U.S.C. § 951(b)). Because the statute lacks an express *mens rea* requirement, Section 951(a) establishes a general-intent crime. *See United States* v. *Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010); *United States* v. *Campa*, 529 F.3d 980, 999 (11th Cir. 2008); *see also United States* v. *Lindauer*, No. 03 Cr. 807 (MBM), 2004 WL 2813168, at *4 (S.D.N.Y. Dec. 6, 2004) ("[A]lthough § 951 does not explicitly describe the mental state a defendant must have before he can be convicted, knowledge of the facts constituting the offense ordinarily is implicit

4

in a criminal statute that does not expressly provide a mental element." (internal quotation marks omitted)).

"In the case of general-intent crimes, the government need prove only that the defendant intended to do the act in question and intended the reasonable and probable consequences of that act." *United States* v. *Francis*, 164 F.3d 120, 121 (2d Cir. 1999) (citing *United States* v. *Cangiano*, 491 F.2d 906, 910 (2d Cir. 1974)). Thus, with respect to the *mens rea* necessary to establish a violation of Section 951(a), the Government must prove that the defendant acted knowingly, and, more specifically, that he knew that he had not provided notification to the Attorney General of his activities in the United States. However, Section 951 "does not require proof that the defendant knew of the requirement to register." *United States* v. *Campa*, 529 F.3d at 999; *accord United States* v. *Duran*, 596 F.3d at 1292; *United States* v. *Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005) ("Knowledge of the requirement to register is not an element of § 951."); *United States* v. *Turner*, No. 13 Cr. 572, 2014 WL 4699708, at *2 (N.D. Ill. Sept. 22, 2014) ("The Government does not need to prove that [the defendant] knew of the notification requirement in § 951 in order to secure a conviction [for a substantive or conspiracy violation]. The Government must only prove that [the defendant] knew he had not notified the Attorney General before acting in the United States as a foreign agent." (internal citations omitted)). It is therefore irrelevant—and would be misleading and unduly confusing under Rule 403 for the jury to be asked to consider—whether the defendant knew or believed that he was required to notify the Attorney General of his activities in the United States. *See Cheek* v. *United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake

5

of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

Accordingly, the defendant should be precluded from presenting evidence or arguments

regarding his knowledge, or lack thereof, of the notification requirements imposed by Section

951 and the underlying regulations.

## II.  Arguments or Evidence Regarding the Sponsored Person Defenses Are Irrelevant and Inadmissible

The application of the Sponsored Person Defenses in this case present questions

of law that the Court resolved against the defendant in response to his motion to dismiss the

Indictment.  Specifically, the Court concluded that VEB is not a part of the Russian Federation

and thus not part of a "foreign government" under Section 951, and that the process of the

defendant obtaining a visa to enter the country did not result in him being "officially and publicly

acknowledged" by the United States.  More generally, the Court found that the defendant "does

not qualify" for the Sponsored Official Defense.  This ruling precludes the defendant from

presenting evidence or arguments at trial relating to these issues or the Sponsored Person

Defenses.

### A.  Relevant Facts

#### 1.  The Defendant's Visa Applications

In approximately May 2010, the head of VEB filed a petition requesting

authorization for Buryakov to apply for a work visa (the "2010 Petition").  (June 11, 2015 Decl.

of Scott Hershman (the "Hershman Decl.") Ex. C at 7 (Dkt. No. 46)).  The 2010 Petition

indicated that Buryakov sought to work in the United States as a "Deputy Representative" at

VEB's office in Manhattan, and that VEB was involved in "International Banking and Finance."

(*Id.* at 7, 25-41).  In the document granting the 2010 Petition, U.S. Citizenship and Immigration

Services ("CIS") noted that:

> [The] Petition approval does not authorize employment.  When the workers are granted status based on this petition they can then work for the petitioner, but <u>only as detailed in the petition</u> and for the period authorized.
>
> [. . .]
>
> The filing of an application or petition does not in itself allow a person to enter the United States and <u>does not confer any other right or benefit</u>.
>
> [. . .]
>
> <u>Approval of an immigrant petition does not convey any right or status</u>.  The approved petition simply establishes a basis upon which the person you filed for can apply for an immigrant or fiance(e) visa or for adjustment of status.

(*Id.* at 2-3 (emphases added)).

After the 2010 Petition was granted, Buryakov applied for an L-1A Visa.  (July 6,

2015 Mem. in Opp'n to the Defendant's Pre-Trial Motions ("Gov't Opp'n") Ex. B (Dkt. No.

52)).  The instructions for the L-1A Visa stated:

> L-IA visa status is a temporary nonimmigrant status, given for a specific, limited period of time, authorizing a U.S. company or <u>foreign company doing business in the U.S. to petition for a foreign national</u> who has been employed abroad by a parent, branch, affiliate or subsidiary <u>in a managerial or executive capacity</u>.

(Hershman Decl. Ex. C at 5 (emphases added)).  In his application, Buryakov informed CIS that

his employer in the United States would be "Vnesheconombank Representative Office in New

York," and that the purpose of his trip was "Business."  (Gov't Opp'n Ex. B at 2).  In July 2010,

CIS issued Buryakov an L-1A Visa.  (*See* Hershman Decl. Ex. C at 16).  Buryakov and VEB

went through a similar process, and provided substantially similar information to CIS, in proceedings to renew the visa between 2012 and 2013.  (Hershman Decl. Ex. C; Gov't Opp'n Exs. C, D).

### 2.  *Curcio* Proceedings Following the Defendant's Arrest

On May 7, 2015, the Government requested a *Curcio* hearing relating to the potential conflict arising from the fact that the defendant's legal fees were being paid by VEB. (Dkt. No. 23).  At a conference on May 12, 2015, counsel stated that "the party responsible for the [defendant's legal] fees is VEB, the bank . . . ."  (May 12, 2015 Tr. 5).  When the Court asked whether VEB was "a private or publicly owned entity," counsel stated that "[i]t is a bank that is owned by the state, by Russia."  (*Id.*).  Near the end of the conference, the Court expressed concern that VEB "is owned, I take it 100 percent by Russia, so essentially the fee is being paid by Russia, and what does that mean in the context of the charges in this case."  (*Id.* at 21).

In a letter dated May 14, 2015, defense counsel asserted that "the fact that the Russian State is the ultimate owner of VEB's shares does not create a conflict where none otherwise exists."  (May 14, 2015 Letter of Scott Hershman (the "Hershman Letter") at 1 (Dkt. No. 30)).  In support of the claim, counsel argued:

> VEB is a free-standing company under Russian law.  <u>It is not an arm or agency of the Russian government</u>, but has a separate and independent corporate existence that is well-recognized under U.S. law. . . .  Here, White & Case has no agreement with the Russian State with respect to this case, nor does the Russian State have any contractual or other obligation to White & Case.  Hence, the Russian State is not paying for Mr. Buryakov's defense any more than the U.S. government could be said to be paying for every corporate action taken by the Export-Import Bank of the United States or the Pension Benefit Guaranty Corporation (both companies the shares of which are owned by the United States).

(*Id.* at 2 (emphasis added) (citing *First Nat'l City Bank* v. *Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 624-28 (1983) and *EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 480 (2d Cir. 2007)).  Counsel asserted further that "VEB's ownership is not an issue in this case, and creates no independent basis for a conflict because the underlying offense has nothing to do with VEB's relationship with the Russian government." (*Id.* (emphases added)).

The defendant waived any potential conflict posed by counsel's representation at a *Curcio* hearing on June 1, 2015.

### 3.  The Defendant's Motion to Dismiss the Indictment

On June 11, 2015, the defendant filed a motion to dismiss the Indictment.  (Dkt. Nos. 44-46).  The defendant opened his brief by stating that the "motion presents a narrow legal issue."  (June 11, 2015 Defendant's Memorandum of Law in Support of Motion to Dismiss the Indictment and Motion for Bill of Particulars ("Def. MTD Mem.") at 1 (Dkt. No. 45)).  As relevant here, the defendant argued that the Sponsored Official Defense applied and he was therefore not subject to the notification requirement of Section 951.  By making this motion, the defendant acknowledged that this was a defense that "the court can determine without a trial on the merits," as pretrial motions are limited to such "defense[s], objection[s], or request[s]."  Fed. R. Crim. P. 12(b)(1).  In support of his position—and in a marked change in tack from the *Curcio* proceedings—the defendant first argued that he was an "official or representative of a foreign government," under Section 951(d)(2), by virtue of his employment at VEB because VEB was a Russian state agency and he was "carrying-out business for a Russian state agency – i.e., acting as a representative of an entity tasked with foreign sovereign powers."  (Def. MTD

9

Mem. at 9).  Second, the defendant claimed that he was "officially and publicly acknowledged and sponsored" because CIS had issued him a visa authorizing him to work at VEB.  (*Id.* at 13; *see also id.* at 4 n.6 ("Russia is indisputably a foreign government . . . , and Defendant is an openly acknowledged representative of it as the Deputy Representative of the Russian stated-owned VEB.")).

At the July 29, 2015 argument on the defendant's motion to dismiss, defense counsel conceded that the defendant is not within the class of "diplomat[s] and consular officers" referenced in Section 951(d)(1), and that he is part of a class of employees who "occupy more senior roles than staffers under [Section 951](d)(3)," the Sponsored Employee Defense.  (July 29, 2015 Tr. ("Tr.") 11).  The Court noted that the defense had previously said that "VEB is a freestanding company under Russian law; it is not an arm or agency of the Russian government, but has a separate and independent corporate existence that is well-recognized under U.S. law." (Tr. 41).  Defense counsel acknowledged making the statement and added, "[a]nd that is correct."  (*Id.*).  Later in the argument, counsel again asserted that his statement had been factually accurate, while arguing that it did not have the legal import the Court was suggesting.  (*See id.* 43 ("But your Honor asked a specific question, which we answered accurately.")).

Later in the day on July 29 2015, the Court ruled that VEB "emphatically does not" constitute a "foreign government" for purposes of the Sponsored Official Defense.  (Tr. 56; *see also id.* 54).  In so holding, the Court relied in part on Russian documents establishing VEB, which provide that:   (i) VEB is funded by, among other sources, "income from [VEB]'s activities, voluntary asset contributions and donations, and from other lawful sources"; and

10

(ii) "[VEB] shall not be held liable for the obligations of the Russian Federation," and the "Russian Federation shall not be held liable for the obligations of [VEB]."  (Tr. 53-54; *see also* Hershman Decl. Ex. B at 5).  The Court also cited several factual assertions made by defense counsel during the *Curcio* litigation.  (Tr. 52-56).

In an alternative holding, the Court ruled that the defendant had not become "officially and publicly acknowledged" by the United States through the visa process with CIS.  (Tr. 56-57).  In this regard, the Court reasoned that the defendant's "status as an agent of a foreign government was not known to the United States, only his status as a VEB Bank employee was known."  (Tr. 56).  The Court observed that disclosing employment at VEB was not the same as disclosing work on behalf of the Russian Federation, as "only the chairman and the members of the supervisory board of VEB are hired by either the president of the Russian Federation or the government of the Russian Federation."  (Tr. 57; *see also* Hershman Decl. Ex. B).  The Court also pointed out that the defendant's interpretation of the Sponsored Official Defense would exclude from the notification requirement "thousands of individuals."  (Tr. 11).[3]

---

[3] Counsel at first presented a limiting principle for the defendant's definition, asserting that the Sponsored Official Defense applies only to "supervisory persons."  (Tr. 10).  After failing to provide any authority for that interpretation, counsel argued that the breadth of his interpretation was an "intentional" act of Congress.  (Tr. 13).  As authority for this proposition, counsel cited a 1982 congressional hearing entitled "Communist Bloc Intelligence Gathering Activities on Capitol Hill."  (Tr. 12; *see also* Def. MTD Mem. at 7).  However, in the portion of the hearing cited by counsel, the Department of Justice commented on a separate bill (S. 1959), and defended exceptions to that bill—not Section 951—for "diplomats, foreign government officials and print and broadcast media personnel."  *Communist Bloc Intelligence Gathering Activities on Capitol Hill: Hearing on S. 1959 and 1963 Before the Subcomm. on Security & Terrorism of the Senate Judiciary Comm.*, 97th Cong., 2d Sess., at 55 (1982).

11

In sum, the Court held that "the defendant, Mr. Buryakov, does not qualify" for the Sponsored Official Defense.  (Tr. 54).

### B.  Applicable Law

#### 1.  The Sponsored Person Defenses

Pursuant to the Sponsored Official Defense, an individual is not considered an "agent of a foreign government" under Section 951 if he or she is an "officially and publicly acknowledged and sponsored official or representative of a foreign government."  18 U.S.C. § 951(d)(2).  The Sponsored Employee Defense applies to "any officially and publicly acknowledged and sponsored member of the staff of, or employee of, an officer, official, or representative" covered by, as relevant here, the Sponsored Official Defense, "who is not a United States citizen.  *Id.* § 951(d)(3).

The Attorney General has defined the term "officially and publicly acknowledged and sponsored," as used in both Sponsored Person Defenses, to include, among other things: (i) an individual who "has filed with the Secretary of State a fully-executed notification of status with a foreign government"; and (ii) "a visitor, officially sponsored by a foreign government, whose status is known and whose visit is authorized by an agency of the United States Government."  28 C.F.R. § 73.1(e).

#### 2.  The Law of the Case Doctrine

Pursuant to the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States* v. *Carr*, 557 F.3d 93, 102 (2d Cir. 2009).  "Law of the case directs a court's

12

discretion, it does not limit the tribunal's power." *Arizona* v. *California*, 460 U.S. 605, 618 (1983). "A court's reconsideration of its own earlier decision in a case may, however, be justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *United States* v. *Carr*, 557 F.3d at 102.

### C.  Discussion

The Court has already properly determined, in response to a motion the defendant characterized as seeking a ruling on a "narrow legal issue," that the Sponsored Official Defense does not apply to the defendant: "The Court finds that the defendant . . . does not qualify for the exemption in 951 and, relatedly, that VEB does not qualify as a foreign government." (Tr. 54; *see also* Def. MTD Mem. at 1). By making this motion prior to trial, the defendant acknowledged that it raised a defense "that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The Court's denial of the motion in a well-founded ruling is the law of the case. *E.g.*, *Carr*, 557 F.3d at 102.

Moreover, the Court's ruling was absolutely correct and it applies with equal force to the Sponsored Employee Defense. Because VEB is not a "foreign government" for purposes of Section 951, neither the Sponsored Official Defense nor the derivative Sponsored Employee Defense is available to the defendant. As the Court pointed out previously, the Russian law establishing VEB makes it clear that the bank was partially funded by nongovernmental sources, and "neither the Russian Federation nor VEB is liable for one another's legal obligations." (Tr. 54). The defendant's visa paperwork was submitted, and in

13

some instances prepared, with the assistance of immigration counsel. (Hershman Decl. Ex. C at 4, 24). The paperwork indicated that the defendant's primary occupation would be "business," and that he would be "employe[d]—*i.e.*, "sponsored" for purposes of the Sponsored Person Defenses—by VEB, not Russia. (*Id.* at 7, 25; Gov't Opp'n Exs. B at 2, C at 2, D at 2). In defense counsel's words, VEB is "not an arm or agency of the Russian government," and "the underlying offense has nothing to do with VEB's relationship with the Russian government." (Hershman Letter at 2).

The Court was also correct that the term "officially and publicly acknowledged and sponsored" certainly does not include the defendant. (*See* Tr. 56 (reasoning that the defendant's "status as an agent of a foreign government was not known to the United States, only his status as a VEB Bank employee was known")). To the extent that the defendant's presence in the United States was "acknowledged," CIS was only made aware that he was acting as a banker at VEB's New York Office, not an "official or representative" of Russia, or an employee of such a person. 18 U.S.C. §§ 951(d)(2), (d)(3). Thus, his "status" as an agent of a foreign power was not "known" to CIS, much less the United States, and a "visit" for the purpose of acting in those capacities was not authorized. 28 C.F.R. § 73.1(e) (defining the term "officially and publicly acknowledged and sponsored" to include a "visitor, officially sponsored by a foreign government, *whose status is known* and whose visit is authorized by an agency of the United States Government" (emphasis added)). CIS's communications with VEB and Buryakov conferred no status for purposes of Section 951 or the underlying regulations. Indeed, CIS stated expressly that filing a petition for immigration relief "does not confer any other right or benefit,"

14

that CIS's approval of the petition did "not convey any right or status," and that CIS's authorization permitted Buryakov to work for VEB "only as detailed in the petition"—that is, a "banker." (Hershman Decl. Ex. C at 2). Buryakov was also notified by CIS that his L-1A Visa status authorized him to work for a "foreign company doing business in the U.S." in a "managerial or executive capacity," rather than an agent of a foreign government. (Hershman Decl. Ex. C at 5).

The disclosures by VEB and the defendant to CIS are inconsistent with the degree of transparency and disclosure contemplated by the plain meaning of the statutory term "officially and publicly acknowledged and sponsored." 18 U.S.C. § 951(d)(2), (d)(3); 28 C.F.R. § 73.1(e) (providing as examples a visitor whose "status is known" or who has "filed with the Secretary of State a fully-executed notification of status with a foreign government"); *see also Jarecki* v. *G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("The *maxim noscitur a sociis*, . . . while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress"). Tellingly, the underlying regulations provide for a far more detailed notification to the Attorney General than simply filling out a visa application:

> provide the name or names of the agent making the notification, the firm name, if any, and the business address or addresses of the agent, the identity of the foreign government or official for whom the agent is acting, and a brief description of the activities to be conducted for the foreign government or official and the anticipated duration of the activities.

28 C.F.R. § 73.3(a) (emphasis added); *see also id.* § 73.3(d) (requiring notification within 10 days of "[a]ny subsequent change in the information required by paragraph (a)"). Moreover, the

15

regulations make clear that partial compliance with the notification requirement is insufficient, and contemplate prosecutions under Section 951 for material omissions from a notification:

> The fact that a notification has been filed shall not necessarily be deemed full compliance with 18 U.S.C. 951 or these regulations on the part of the agent; nor shall it indicate that the Attorney General has in any way passed on the merits of such notification or the legality of the agent's activities; nor shall it preclude prosecution, as provided for in 18 U.S.C. 951, for failure to file a notification when due, or for a false statement of a material fact therein, or for an omission of a material fact required to be stated therein.

28 C.F.R. § 73.4 (emphases added).   Finally, as the Court observed, the defendant's interpretation of the Sponsored Official Defense would swallow the notification requirement of Section 951.  (Tr. 11).  Counsel offered no authority for such a perverse construction, and the legislative history associated with Section 951 is to the contrary.  *See United States* v. *Duran*, 596 F.3d 1283, 1295 (11th Cir. 2010) ("The limited legislative history persuasively suggests that Congress chose to separate § 951 and treat it as a catch-all statute that would cover all conduct taken on behalf of a foreign government.").  Therefore, under the circumstances of this case, as the Court correctly held, the Sponsored Official Defense affords the defendant no refuge.  For similar reasons, the Sponsored Employee Defense is inapplicable.

Precluding evidence or arguments at trial regarding the Sponsored Person Defenses is particularly appropriate, not only because it is the law of the case, but also because these are affirmative defenses for which, as the Court correctly held, the defendant cannot establish critical elements.  *See United States* v. *Tokash*, 282 F.3d 962, 968 (7th Cir. 2002) ("A judge may, and generally should, block the introduction of evidence supporting a proposed defense unless all of its elements can be established." (internal quotation marks omitted)); *see*

16

*also United States* v. *Bailey*, 444 U.S. 394, 417 (1979).  In *United States* v. *Simpson*, for example, the district court precluded in an illegal reentry case evidence relating to a defendant's claim of derivative citizenship, after the court rejected that defense as a matter of law.  929 F. Supp. 2d 177, 198 (E.D.N.Y. 2013).  The court reasoned that, in light of its pretrial ruling, "the jury cannot decide that [the defendant] is, in fact, not an alien based on any claim to derivative citizenship."  *Id.* at 198.  Thus, "[e]vidence of the INS's positions [regarding the defendant's derivative citizenship] would confuse the jury and potentially mislead them to concluding that [the defendant] may have some claim to derivative citizenship."  *Id.*; *see also United States* v. *Whicker*, -- F. App'x --, 2015 WL 5845799, at *3 (6th Cir. Oct. 8, 2015) (affirming district court decision "granting the Government's motion *in limine* precluding" the defendants from making a meritless "legal argument" relating to 18 U.S.C. § 1028A).  So too here.  To assert that the defendant worked as a disclosed agent of the Russian Federation based on his work for VEB is a meritless legal argument that would confuse the real issues in the case.  The Sponsored Official Defense is not only inapplicable, as the Court already found, but presenting the Sponsored Person Defenses at trial would risk confusing and misleading the jury, in that it would invite the jurors to conflate the defendant's non-official cover at VEB with the charged conduct of his work for the Russian Federation.  Arguments or evidence from counsel relating to these issues would also invite mini-trials as to whether VEB is a part of the Russian Federation and whether the defendant's visa-related filings resulted in him being "officially and publicly acknowledged" by the United States.  The Court has already addressed these questions and resolved them as a legal matter.  They should not be put to the jury.

17

## III.   The Defendant Should Be Precluded from Presenting Evidence or Arguments Regarding the Consequences of a Conviction

The defendant should be precluded from presenting evidence or arguments regarding the consequences of a conviction, including potential penalties associated with the offenses with which he is charged.  The Supreme Court has held that, as a general rule, juries should not consider the sentencing consequences of their verdicts.  *See Shannon* v. *United States*, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.  Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."); *see also United States* v. *Del Rosario*, S1 12 Cr. 81 (KBF), 2012 WL 2354245, at *2 (S.D.N.Y. June 14, 2012).  Accordingly, the defendant should be precluded from putting this issue before the jury.

## IV.   The Defendant Bears the Burden of Proving Affirmative Defenses By a Preponderance of the Evidence

In pretrial motions and during communications regarding the parties' proposed jury instructions, the defendant asserted that the Government bears the burden of establishing the inapplicability of the Sponsored Official Defense and the Legal Commercial Transaction Defense.  However, these are affirmative defenses under the statute, and the defendant has misstated the law regarding the burden of proof.  Therefore, the Government seeks clarifying rulings prior to trial that:  (i) the Sponsored Person Defenses and the Legal Commercial Transaction Defense present affirmative defenses that the defendant bears the burden of establishing by a preponderance of the evidence; and (ii) because the defendant cannot, as a

18

matter of law, meet that burden with respect to the Sponsored Person Defenses, those defenses will not be submitted to the jury.

### A. Applicable Law

The Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson* v. *New York*, 432 U.S. 197, 210 (1977). "Indeed, the Government is foreclosed from shifting the burden of proof to the defendant only when an affirmative defense does negate an element of the crime." *Smith* v. *United States*, 133 S. Ct. 714, 719 (2013) (internal quotation marks omitted). Where, on the other hand, an affirmative defense "'excuse[s] conduct that would otherwise be punishable,' but 'does not controvert any of the elements of the offense itself,' the Government has no constitutional duty to overcome the defense beyond a reasonable doubt." *Id.* (quoting *Dixon* v. *United States*, 548 U.S. 1, 6 (2006)). At common law, the "rule was that affirmative defenses . . . were matters for the defendant to prove." *Id.* at 720. Absent an express statutory directive otherwise, courts are to "presume that Congress intended to preserve the common law rule," *id.* (citing *Dixon*, 548 U.S. at 13-14), which requires the defendant to establish an affirmative defense by a preponderance of the evidence, *Dixon*, 548 U.S. at 17.

### B. Discussion

In the defendant's motion to dismiss the Indictment, he argued that "where 'an exception is incorporated in the enacting clause of a statute, the burden is on the prosecution *to*

19

*plead and prove* that the defendant is not within the exception.'"   (July 17, 2015 Defendant's Reply Memorandum of Law in Further Support of Motion to Dismiss the Indictment and Motion for Bill of Particulars at 2 (emphasis in original) (quoting *United States* v. *Vuitch*, 402 U.S. 62, 70 (1971)) (Dkt. No. 56)); *see also* July 29, 2015 Tr. 18)).   However, the Sponsored Person Defenses and the Legal Commercial Transaction Defense are not part of the "enacting clause" of § 951.   *See Anderson* v. *United States*, 294 F. 593, 596 (2d Cir. 1923) ("'[I]f the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception . . . , the pleader may safely omit any such reference, *as the matter contained in the exception is matter of defense and must be shown by the accused*.'" (quoting *United States* v. *Cook*, 84 U.S. (17 Wall.) 168, 174 (1872) (emphasis added)); *see also Ledbetter* v. *United States*, 170 U.S. 606, 612 (1898) ("Where the statute completely covers the offense, the indictment need not be made more complete by specifying particulars elsewhere obtained."); *United States* v. *Dickson*, 40 U.S. (15 Pet.) 141, 165 (1848) ("[W]e are led to the general rule of law, which has . . . become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms.   In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the

reasons thereof.").[4]  While Section 951(d) is plainly related to Section 951(a), it is "entirely separable" from the language defining the substantive offense with which the defendant is charged.  *Anderson* v. *United States*, 294 F. at 596.  Therefore, the "enacting clause" authority cited by the defendant is inapposite.

The defendant takes a similar position, based on different authority, in the parties' Joint Requests to Charge.  There, the defendant asserts that "[t]he Government bears the burden of proving beyond a reasonable doubt that these exceptions to liability do not apply."  (Mar. 1, 2016 Joint Requests to Charge at 15, 19-21 (citing *Patterson* v. *New York*, 432 U.S. 197, 210 (1977) (Dkt. No. 123)).  *Patterson* relates to affirmative defenses, and the Government agrees that the Sponsored Person Defenses and the Legal Commercial Transaction Defense are properly characterized as such.  *See United States* v. *Hartsock*, 347 F.3d 1, 6 (1st Cir. 2003) ("Courts confronting statutory exceptions . . . generally treat them as affirmative defenses to the underlying crime." (collecting cases)); *see also United States* v. *Mayo*, 705 F.2d 62 (2d Cir.

---

[4] The statute at issue in *Vuitch* provided an exception in the "enacting clause," *i.e.*, the provision that established the crime:

> Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces, or attempts to procure or produce an abortion or miscarriage on any woman, <u>unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine</u>, shall be imprisoned in the penitentiary not less than one year or not more than ten years . . . .

402 U.S. at 67-68 (emphasis added).  Section 951 contains a similar enacting-clause exception that is inapplicable to the defendant.  *See* 18 U.S.C. § 951(a) (excepting "a diplomatic or consular officer or attaché").  In contrast, the *Ledbetter* Court rejected the argument that a prosecutor must include in the charging instrument language relating to a more specific definition of the term "retail liquor dealer."  170 U.S. at 610-11.

21

1983) (holding that "antique firearm" exception to the definition of "firearm," 18 U.S.C. § 921(a)(3), is an affirmative defense). [5]   But the affirmative defenses established in subparagraphs (2) through (4) of Section 951(d) "excuse conduct that would otherwise be punishable" under Section 951(a) in the event of a failure to notify, and "do[] not controvert any of the elements of the statute itself." *Smith*, 133 S. Ct. at 719.[6]  Specifically, Section 951(a)

_____

[5] In *Mayo*, the Government took the position that defendants carry only a burden of production with respect to the "antique firearm" affirmative defense.  705 F.2d at 62 ("The government does not argue that the appellants bore the burden of proof or persuasion on the antique firearm exception. Instead, the government contends that the antique firearms exception . . . is a form of affirmative defense on which the appellants were obligated to produce some evidence to put the exception at issue before the government was obligated to prove its inapplicability beyond a reasonable doubt.").  The *dicta* in *Mayo* regarding the burden of proof on affirmative defenses was abrogated first by *Dixon*, in which the Supreme Court held that requiring a defendant to prove an affirmative defense by a preponderance of the evidence did not violate the Due Process Clause, 548 U.S. at 8, and then by *Smith*, in which the Supreme Court held that, absent an express statutory directive otherwise, courts must "presume that Congress intended to preserve the common law rule" that affirmative defenses are to be proved by the defendant, *Smith*, 133 S. Ct. at 720 (citing *Dixon*, 548 U.S. at 13-14); *see also United States* v. *Hartsock*, 347 F.3d at 10.

[6] In *Patterson*, the Supreme Court considered an affirmative defense to murder, under New York law, which required the defendant to prove that the homicide occurred as a result of "extreme emotional disturbance."  432 U.S. at 197.  The New York Court of Appeals had held that the affirmative defense had "no direct relationship to any element of murder."  *Id.* at 201 (internal citation omitted).  The Court agreed, reasoning that the defense "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion."  *Id.* at 206-07.  In *Dixon*, the Court evaluated a duress defense to a federal firearms offense.  548 U.S. at 4.  Consistent with *Patterson*, the *Dixon* Court held that "[t]he fact that petitioner's crimes are statutory offenses that have no counterpart in the common law also supports our conclusion that her duress defense in no way disproves an element of those crimes."  *Id.* at 7.  Therefore, it was consistent with the Due Process Clause to require the defendant to establish the duress defense by a preponderance of the evidence.  *Id.*  Finally, in *Smith*, the Court considered the defense of withdrawal from a conspiracy.  133 S. Ct. at 719.  The *Smith* Court held that placing the burden of proof on a defendant did not violate the Due Process Clause because "[w]ithdrawal does not negate an element of the conspiracy crimes charged."  *Id.* at 720.

establishes the criminal offense, and one element of the crime is that the defendant "act[ed] in the United States as an agent of a foreign government."  18 U.S.C. § 951(a).  Section 951(d), in turn, defines the term "agent of a foreign government," and then describes categories of individuals who, while fitting within that definition, are excused from the notification requirement of Section 951(a).  These affirmative defenses, therefore, provide "an excuse that allows an exception from liability."  *Dixon*, 548 U.S. at 14 n.9.  "[I]t is incumbent on one who relies on such an exception to set it up *and establish it*."  *McKelvey* v. *United States*, 260 U.S. 353, 357 (1922) (emphasis added)).  And the defendant must establish these defenses by a preponderance of the evidence.  *Dixon*, 548 U.S. at 15 ("[W]e presume that Congress intended the petitioner to bear the burden of proving the defense of duress by a preponderance of the evidence."); *United States* v. *Hamilton*, 538 F.3d 162, 173 (2d Cir. 2008) (describing this Circuit's "long-standing precedent that withdrawal from a conspiracy is an affirmative defense which the defendant must prove by a preponderance of the evidence"); *United States* v. *Hartsock*, 347 F.3d at 10 ("Given the information gap between defendant and prosecutor, the most sensible rule is to place on the defendant the burdens of production and persuasion as to the exception, *i.e.* the burden of proof.  This rule maximizes the likelihood of more accurate factfinding.").

For the reasons set forth in Part II above, the defendant cannot meet this burden with respect to the Sponsored Person Defenses because VEB is not a "foreign government" under the statute, and the defendant was not "officially and publicly acknowledged and sponsored."  18 U.S.C. § 951(d)(2), (d)(3).  Therefore, these defenses should not be submitted to

the jury.  *See United States* v. *Bailey*, 444 U.S. at 417 ("If, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.").  If, and only if, the defendant adduces evidence at trial that the "acts" at issue—specifically, the defendant's activities as an agent for the Russian Federation—were only "legal commercial transaction[s]," then an instruction relating to the Legal Commercial Transaction Defense, including the defendant's burden, may be appropriate.

**V.   Defense Counsel's Prior Factual Assertions Regarding VEB's Status Are Admissible if the Defendant is Permitted to Argue the Sponsored Person Defenses at Trial**

In the event that the defendant is permitted to litigate before the jury the application of the Sponsored Person Defenses, the Government will seek to offer the Hershman Letter and statements by counsel to the Court in connection with *Curcio* proceedings as evidence that VEB is not a part of the Russian Federation, and thus not a "foreign government" within the meaning of the Sponsored Official Defense.  These materials are admissible pursuant to Rule 801(d)(2).

**A.   Applicable Law**

A statement that is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay.  Fed. R. Evid. 801(d)(2)(D); *see also United States* v. *Vilar*, 729 F.3d 62, 87 (2d Cir. 2013).  Pursuant to Rule 801(d)(2)(D), "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney."

*United States* v. *Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981). It would "weaken confidence in the justice system itself" and "deny[] the function of trials as truth-seeking proceedings" if "parties are free, wholly without explanation, to make fundamental changes in the version of facts within their personal knowledge between trials and to conceal these changes from the final trier of fact." *United States* v. *McKeon*, 738 F.2d 26, 31 (2d Cir. 1984); *see also United States* v. *Harris*, 914 F.2d 927, 932 (7th Cir. 1990) ("The fact that a lawyer's unsuccessful maneuver might be used against his client will not unduly chill legitimate advocacy.").

**B. Discussion**

During the *Curcio* proceedings, defense counsel made factual representations to the Court, on behalf of the defendant, attributing independent, non-governmental status to VEB that are inconsistent with the Sponsored Person Defenses:

- "VEB is a free-standing company under Russian law" (Hershman Letter at 2);

- VEB "is not an arm or agency of the Russian government, but has a separate and independent corporate existence that is well-recognized under U.S. law" (*id.* at 2);

- "VEB's ownership is not an issue in this case" (*id.* at 2);

- "[T]he underlying offense has nothing to do with VEB's relationship with the Russian government" (*id.* at 2); and

- In response to the Court's question of whether counsel argued during the *Curcio* proceedings that "VEB is a freestanding company under Russian law; it is not an arm or agency of the Russian government, but has a separate and independent corporate existence that is well-recognized under U.S. law," counsel stated "Yes. And that is correct" and "[Y]our Honor asked a specific question, which we answered accurately" (July 29, 2015 Tr. 41, 43).

This case should not proceed with these statements kept from the jury, while the jurors are urged to reach conclusions that are in conflict with counsel's assertions and the Court's pretrial ruling that the Sponsored Official Defense does not apply.  *Cf. Oscanyan* v. *Arms Co.*, 103 U.S. (13 Otto) 261, 263 (1880) ("The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced.").  To the contrary, if the defense is permitted to argue that a Sponsored Person Defense applies, the Government should be allowed to offer these statements pursuant to Rule 801(d)(2)(D) to rebut the claim, including by calling defense counsel as a witness.[7]

While the Second Circuit in *McKeon* circumscribed the evidentiary use of statements made by criminal defense counsel during prior jury addresses, 738 F.2d at 33, because the policy considerations expressed in *McKeon* have been limited to the context of arguments by counsel to a jury, the admissibility of counsel's writings and statements calls for a

---

[7] The introduction of counsel's statements would, of course, call into serious question the ability of White and Case to continue to represent the defendant.  *See, e.g., United States* v. *Kerik*, 531 F. Supp. 2d 610, 615-16 (S.D.N.Y. 2008) ("The New York Code of Professional [Conduct] generally forbids lawyers from acting as advocates and witnesses in the same matter."); *Ciak* v. *United States*, 59 F.3d 296, 304-05 (2d Cir. 1995) ("Standing alone, becoming an unsworn witness is a basis for disqualification of an attorney."); *United States* v. *Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) ("When an attorney is an unsworn witness, . . . the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired.  Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."); *see also, e.g.*, N.Y. Rule of Prof'l Conduct 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by [certain provisions of the New York Rules of Professional Conduct]."); N.Y. Rule. of Prof'l Conduct 3.7(b)(1) ("A lawyer may not act as [an] advocate before a tribunal in a matter if another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client[.]").

straightforward application of the Rules of Evidence.  *See United States* v. *Arrington*, 867 F.2d

122, 127 (2d Cir 1989) ("Contrary to defendant's assertion that [the] procedures [from *McKeon*]

apply to the use of all statements by defense counsel, we clearly stated in *McKeon* that we were

'circumscrib[ing] the evidentiary use of *prior jury argument*.'" (quoting *McKeon*, 738 F.2d at

32) (emphasis in original)).  At the time the statements at issue were made, counsel was acting as

the defendant's agent by representing him in these criminal proceedings, and counsel's factual

assertions in connection with *Curcio* proceedings related to "a matter within the scope of that

relationship."  Fed. R. Evid. 801(d)(2)(D).   Under Rules 401 and 403, this evidence is highly

probative with respect to the Sponsored Person Defenses, if the defendant is permitted to rely on

either of them, and it would be neither time-consuming nor complicated for the Government to

introduce this evidence.

   Permitting the Government to offer this evidence is also consistent with *McKeon*

and subsequent cases.  In *United States* v. *Amato*, prior defense counsel argued in a bail-related

letter submission that efforts by a defendant to locate a cooperating witness were undertaken in

an effort to "determine if he would be interviewed" rather than to intimidate the cooperator.

*United States* v. *Amato*, 356 F.3d 216, 218-19 (2d Cir. 2004).  At trial, new counsel suggested

during the cross-examination of a different witness that the defendant had not tried to obtain the

cooperating witness's address at all.  *Id.* at 219.  The district court then permitted the government

to offer the letter based on its "inconsistency" with the testimony.  *Id.*  Applying *McKeon*, the

Second Circuit affirmed the ruling, reasoning that:  (i) "[a]dmission of the letter did not consume

any more trial time than was required to read the redacted letter to the jury"; (ii) the letter

27

"affirmatively put forth defendant's version of the facts"; (iii) "[t]here is no reason for concern that counsel will be unfairly deterred from legitimate advocacy if the jury is permitted to learn about representations of fact made to obtain defendant's release on bail that are relevant to the issues at trial"; and (iv) the defendant "waived any claim of privilege" by, *inter alia*, "submitting [the attorney's] letter to the court." *Id.* at 219-20.

These considerations support the admissibility of counsel's writings and statements to the Court regarding VEB's status. The Court has already observed that relying on the Sponsored Official Defense is inconsistent with—and indeed "quite the opposite" of—the defendant's position regarding VEB's status during the resolution of the potential conflict issue, and that there was "more overlap than distinction" between the issue of whether VEB is a foreign government in the *Curcio* proceedings and the defendant's motion to dismiss. (July 29, 2015 Tr. 42; *see also id.* 41 ("[Y]ou did say that VEB and the Russian Federation were entirely distinct.")). Counsel also "affirmatively put forth defendant's version of the facts" regarding VEB's status, 356 F.3d at 220, and reaffirmed to the Court that the assertions were factually accurate. (Tr. 41, 43). Thus, as in *Amato*, counsel's position in the *Curcio* proceedings was fact-based and inconsistent with the Sponsored Person Defenses. Moreover, similar to *Amato*, and unlike *McKeon*, the statements at issue were "out-of-court representation[s] of fact rather than a jury argument," which leaves "no reason for concern" that counsel will be "'deterred from legitimate argument by apprehension about arguments made to a jury at an earlier trial.'" *Id.* at 220 (quoting *McKeon*, 356 F.3d at 220). Finally, the defendant was a management-level employee with many years' experience at VEB, and counsel's statements regarding the bank's

status were testimonial and fairly attributable to the defendant.  Privileges present no obstacle to admissibility where the defendant relied on these factual assertions as a basis for legal arguments regarding a potential conflict of interest in *Curcio* proceedings.

By relying on either Sponsored Person Defense, the defendant seeks to "contradict [his] previous theories of the case and version of the historical facts."  *United States* v. *GAF Corp.*, 928 F.2d 1253, 1262 (2d Cir. 1991).  "[T]he jury is entitled to be aware of what the [defendant] has previously claimed, and accord whatever weight it deems appropriate to such information."  *Id.*; *see also id.* (where statements were offered against the Government, reasoning that "[t]he jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims").  Therefore, counsel's factual statements regarding VEB's status are admissible in the event either of the Sponsored Person Defenses is put to the jury.

29

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that its motions *in limine* should be granted.

Dated: New York, New York
March 1, 2016

Respectfully Submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
Emil J. Bove III
Brendan F. Quigley
Stephen J. Ritchin
Assistant United States Attorneys

Cc:     Defense Counsel
(Via ECF)