# EXHIBIT E

1

F7TVBURA


1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                        15 CR 73 (RMB)

5   EVGENY BURYAKOV,

6                Defendant.            ARGUMENT/DECISION

7   ------------------------------x

8                                      New York, N.Y.
                                       July 29, 2015
9                                      11:10 a.m.

10
    Before:
11
                    HON. RICHARD M. BERMAN,
12
                                       District Judge
13

14                    APPEARANCES

15
    PREET BHARARA,
16       United States Attorney for the
         Southern District of New York
17  ADAM J. FEE
    IAN P. McGINLEY
18  ANNA M. SKOTKO
         Assistant United States Attorneys
19
    WHITE & CASE
20       Attorneys for Defendant
    SCOTT E. HERSHMAN
21  OWEN PELL
    KELLY NEWMAN
22

23  ALSO PRESENT:  ANDREW TARUTZ, Russian Interpreter

24

25


                SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

2

F7TVBURA

1          THE COURT:  First we should note that we have a

2   Russian language translator present.

3          I hope you're translating.  Are you?  Everything,

4   until we get to the point where it may not be necessary.

5          So let me ask Mr. Buryakov if he is able to

6   understand, first of all, through the Russian interpreter,

7   that's Question No. 1.

8          THE DEFENDANT:  (In English) Yes, your Honor.

9          THE COURT:  And, second, do you want to use the

10  interpreter or shall we have him here in a standby capacity?

11  It's your call.

12          THE DEFENDANT:  (In English) In a standby.

13          THE COURT:  Okay.  Thanks.

14          So we set this date aside for oral argument.

15          Before we hear from the parties, I want to underscore

16  that whatever we say here today, myself or the lawyers, etc.,

17  in no way interferes with or denigrates the presumption of

18  innocence that applies in a criminal case such as this.

19          So sometimes in these motions we sort of sound like we

20  are talking to the merits, but that presumption of innocence is

21  sacrosanct and it applies unless and until a jury determines

22  the outcome of the case, whether the defendant is guilty or not

23  guilty.  I wanted to make that clear.

24          I want to frame the issue for a moment just by saying

25  that we have a motion from the defense dated June 11, 2015,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

3

F7TVBURA

1    followed up by a reply also from the defense dated July 17,

2    2015, in which the defense has moved to dismiss the indictment

3    in this case and, in the alternative, the defense moves for

4    what is called a bill of particulars.  That motion is opposed

5    by the government, which filed its response on or about July 6,

6    2015.

7            And then one other point by way of background.  The

8    law or the statute that we will be talking about and construing

9    here this morning is a statute called 18 United States Code,

10   Section 951 and several of its subsections, in particular, a

11   subsection (a) and subsection (d), "D," as in David.  There may

12   be references to other aspects of that statute, as well.

13           Just so that it's clear as background, that statute

14   says, in part, the following:

15           Whoever, other than a diplomat or consular officer or

16   attach, acts in the United States as an agent of a foreign

17   government without prior notification to the attorney general,

18   if required in subsection (b), shall be fined under this title

19   or imprisoned not more than ten years or both.

20           And then the subsection (d), which both sides have

21   been discussing in their papers, states as follows:

22           For purposes of this section, the term "agent of a

23   foreign government" means an individual who agrees to operate

24   within the United States subject to the direction or control of

25   a foreign government or official, except that such term does

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    not include -- then there are some exceptions.  The one that we

2    are principally concerned about says:  Does not include any

3    officially and publicly-acknowledged and sponsored official or

4    representative of a foreign government.

5            So with that, I'm happy to hear from defense counsel,

6    I'm happy to hear from the government.  I have read your

7    papers, and I'm pretty far along in an analysis.  I do have

8    some questions of each side, as well, not very many, but one or

9    two.

10           So Mr. Hershman.

11           MR. HERSHMAN:  Thank you, your Honor.

12           Is it all right if I stand here?

13           THE COURT:  Whatever you're more comfortable with.

14   You can use the podium, if you'd like; otherwise, that will

15   work fine.

16           MR. HERSHMAN:  I'll use the podium.

17           Thanks, your Honor.

18           We read your Honor's order with respect to the time

19   limitation of the argument, and we'll adhere accordingly, so I

20   appreciate that.  That was helpful.

21           THE COURT:  If you want, I'll tell you the question or

22   questions I'm going to ask of you; it may be folded into your

23   presentation.

24           So one question relates to a comment or an argument

25   that you have made where you say that there are potentially

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

5

F7TVBURA

1   thousands of individuals in the United States like

2   Mr. Buryakov, persons openly working in representative

3   capacities for foreign government agencies and

4   instrumentalities, but in nonconsular, nondiplomatic posts.  So

5   I am going to ask you what that means in your opinion and what

6   the implications of that are.

7           And the other question that I'm going to ask you is

8   part of your motion deals or alleges that the government's

9   allegations are insufficient in the indictment in particular.

10  So the question I'm going to ask you is if the government had

11  alleged in the indictment that the statutory exceptions to

12  registration did not apply to Mr. Buryakov, would this moot the

13  first part of your motion to dismiss.

14          And similarly, when the government goes to present,

15  I'm going to ask them if they have any plans to make such an

16  amendment or supersede or however they go about doing that, if

17  they have an intention to do that.

18          MR. HERSHMAN:  That's very helpful, your Honor.  Thank

19  you.  And I'll address both questions.

20          THE COURT:  Okay.

21          MR. HERSHMAN:  Let me just begin by suggesting

22  something that we all agree on, I believe, to frame the issue.

23  We agree that if the defendant had given notice that he was

24  working for the Russian government, he did not need to register

25  under this statute, under 951.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6

F7TVBURA

1          So the only question is whether saying that he was

2    working for VEB is saying that he's working for the Russian

3    government for purposes of 951.

4          VEB is a specialized development bank created by

5    Russian law and owned and controlled by the Russian government.

6    The U.S. Government itself has said that VEB is part of the

7    Russian government.  And we pointed your Honor to the places

8    where the government has said so, but it includes and is not

9    limited to the U.S. Department of Treasury press release upon

10   sanctioning VEB as part of the sectoral sanctions that have

11   been implemented under Executive Order 13662 against VEB, in

12   which the U.S. Government states that VEB is a Russian

13   state-owned financial institution that acts as a development

14   bank and payment agent for the Russian government.  It was

15   formed in 2007 pursuant to Russian federal law, and is the

16   legal successor to Vnesheconombank of the U.S.S.R.

17          THE COURT:  Could you spell that perhaps for the

18   reporter just so the record will be clear.

19          MR. HERSHMAN:  Sure.  My apologies.

20          THE COURT:  That's all right.

21          MR. HERSHMAN:  Which was a specialized Russian state

22   bank.  VEB's supervisory board is chaired by the Russian prime

23   minister, and the chairman of the bank is appointed by the

24   Russian president.  VEB acts as an agent for the Russian

25   government for the purposes of, and then the press release

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    continues to go on and state these quintessential government

2    functions, which include, but are not limited to,

3    servicing/repaying the sovereign debts of the former U.S.S.R.

4    and Russia, and collecting debts from legal entities of Russia

5    municipal governments, providing and executing state guarantees

6    of Russia and so forth.  These are quintessential government

7    functions.  And, your Honor, we've cited case law in this

8    circuit that confirms that those are quintessential government

9    functions.

10          So the U.S. Government itself has stated that VEB is

11   part of the Russian government.  But we really want to direct

12   your attention, your Honor, to the regulations that expressly

13   define what is a foreign government for purposes of this

14   statute.  These are regulations created by the government, and

15   these are regulations that directly address the question at

16   issue.

17          In 28 CFR, Section 73.1, which is cited repeatedly in

18   our papers, the government has included a definition of

19   "foreign government" for purposes of Section 951.  This is not

20   a definition that they rely on in their papers.  They run away

21   from this definition, although it is expressly relevant and

22   directly relevant to the question at issue.

23          THE COURT:  You cite it in your papers.

24          MR. HERSHMAN:  Yes, we did.

25          The government refers to Section 11 of 18 U.S.C.,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

8

F7TVBURA

1   which simply says that foreign government as used in that title

2   includes, and then it goes on to say what is included.  But

3   this statute specifically addresses the definition of "foreign

4   government" for purposes of 951, and it is broader, but

5   inclusive, of what is in Section 11, specifically with respect

6   to government factions or bodies of insurgents within a country

7   with which the United States is at peace.  That was the purpose

8   of Section 11.

9        73.1 includes that and is broader.  And there it

10   states specifically that the term "foreign government" includes

11   any person or group of persons exercising sovereign de facto or

12   de jure political jurisdiction over any country other than the

13   United States or over any part of such country.  And

14   importantly, it includes, quote, any subdivision or any such

15   group or agency to which such sovereign de facto or de jure

16   authority or functions are directly or indirectly delegated.

17        In this case, your Honor, the government argues that

18   VEB does not fall within the definition of a foreign government

19   capable of sponsoring Mr. Buryakov's visit to the United States

20   under Section 951 by omitting that part of the regulation that

21   expressly defines the term "foreign government."

22        This term, as expressly defined in 73.1, is quite

23   broad, and it includes a person or group of persons exercising

24   sovereign political jurisdiction over a country and any group

25   or agency to which the sovereign authority or functions are

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    directly or indirectly delegated.  As I mentioned, in the press

2    release the government admits that this is a group of persons

3    who exercise sovereign political jurisdiction over the Russian

4    Federation.  And, more important, it is an agency to which

5    sovereign authority or functions have been directly and/or

6    indirectly delegated.

7         The Russian prime minister, as mentioned and admitted

8    by the government in their press release, is the head of the

9    supervisory board.  And the members of the supervisory board,

10   your Honor, include first deputy chairmans of the Russian

11   government, deputy chairmans of the Russian government,

12   minister of economic development of the Russian Federation,

13   deputy chairman of the Russian government, an aide to the

14   president of the Russian government, the finance minister of

15   the Russian Federation, and the chairman of the bank.

16        There is no question that those are --

17        THE COURT:  Is your client on that board?

18        MR. HERSHMAN:  No, he is not, your Honor.  My client

19   is a representative of that bank.

20        THE COURT:  Okay.  So I wouldn't mind if you get to

21   one of the questions I posed.

22        So does that mean that everybody who works for VEB

23   Bank in New York, janitor, secretary, I don't know how many

24   people there are, does that mean they are all covered as

25   Mr. Buryakov is?

(212) 805-0300

F7TVBURA

1        MR. HERSHMAN:  No, your Honor.  It would cover people

2   with supervisory responsibilities, which Mr. Buryakov clearly

3   had at the bank.

4        THE COURT:  Where does that delineation come from that

5   they have to have supervisory responsibility?

6        MR. HERSHMAN:  That is in the case law, and it's in

7   the -- I think we cite it, in 73.1, a more expansive definition

8   of what is a person who would fit the definition in that

9   particular respect.  It would not apply to janitors, it would

10  not apply to temporary workers; it would apply only to

11  supervisory persons, of which he clearly is.

12       THE COURT:  Where exactly is that language?

13       MR. HERSHMAN:  I'll show you the page, your Honor.

14  Let me direct you to that page.

15       If your Honor turns to 73.1(e).  I'm getting you the

16  page in our brief that says this.

17       (Pause)

18       MR. HERSHMAN:  Just one second, your Honor.  I'll pull

19  it.  It is an important point.

20       (Pause)

21       MR. HERSHMAN:  I will suggest, by the way, that there

22  is no dispute by the government that Mr. Buryakov had

23  supervisory responsibilities.

24       THE COURT:  I'm just trying to figure out who's in and

25  who's out.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1          MR. HERSHMAN:  Right.  Got it.

2          (Pause)

3          MR. HERSHMAN:  If you look on page 11 of our

4   memorandum of law in support of the motion, this is Subsection

5   (b), we refer to the argument your Honor is addressing now

6   where 951(d)(2) follows a separate statutory exemption for a

7   narrow class of foreign persons, and then proceeds to statutory

8   exemption for a wider class of foreign persons, namely, any

9   member of a staff of or employee of individuals described in

10   (1) and (2).  And the argument, therefore, is that 951(d)(2),

11   which is this section that is relevant here, reaches a class of

12   foreign officials and representatives who, like Mr. Buryakov,

13   as VEB's deputy representative, do not on the one hand qualify

14   as diplomates or consular officers under (d)(1), but who, on

15   the other hand, occupy more senior roles than staffers under

16   (d)(3).

17          THE COURT:  Is that where you draw the conclusion that

18   there are potentially thousands of individuals in the United

19   States like Mr. Buryakov, those thousands of people all fit

20   into this statutory scheme?

21          MR. HERSHMAN:  Yes.  But they are not limited to

22   Russian Federation agencies.  It would include every foreign

23   country.

24          THE COURT:  The thousands are from every country, not

25   just, of course, from Russia?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1          MR. HERSHMAN:  Yes.

2          Russia and many other countries have state-owned

3     economic investment banks, so it would be France, Japan,

4     Canada, China, even the United States does, EXIM Bank.

5          The point that we were making, your Honor, is that

6     there has never been a prosecution of anyone in a position like

7     Mr. Buryakov, because clearly Mr. Buryakov and anyone similar

8     to him in a supervisory role at a foreign government as defined

9     by the statute would not be required to register.  This is, to

10    our knowledge, the first time the government has alleged that

11    there's a violation of 951 for someone who clearly is working

12    as an official of a foreign government.

13         THE COURT:  Let's assume for the moment -- and, again,

14    this is just assumption because of what I said at the outset.

15    Let's assume that -- is this a loophole in which foreign

16    governments could send thousands of people who are -- I'm just

17    using the word for purposes of discussion -- spies to the

18    United States, and they wouldn't have to register, is that --

19         MR. HERSHMAN:  Well, it's an interesting point, your

20    Honor, because that's exactly the point that the United States

21    Congress made when the Department of Justice presented this

22    exception to them as part of the amendment to 951.  And, in

23    fact, the U.S. Senate asked the Department of Justice, Hey,

24    wait a second.  Isn't this a way in which foreign countries, in

25    particular communist bloc countries at the time --

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1            THE COURT:  Or anybody.

2            MR. HERSHMAN:  -- or anybody would send covert

3    operatives into the United States and why do you want to

4    exclude them from the registration, to which the U.S.

5    Government responded, We know, we get it, and, yes, we want to

6    exclude them.  So it was intentional.

7            THE COURT:  Your response today, putting aside what

8    they said in their legislative debate, what's your response to

9    my question?

10            MR. HERSHMAN:  I don't believe it's a loophole at all,

11    your Honor.  I believe it was intentional in a way to manage

12    the registration and basically suggest that if you're here and

13    we know that you're here working as a representative of the

14    foreign government as we defined it in 951, you needn't

15    register under this section; it is not a crime for you to not

16    have registered.  Clearly, Mr. Buryakov was working for a

17    foreign government as defined by the government in Section 951,

18    under 73.1, and he did not need to register.

19            It is not a loophole; it's the law.  And we think that

20    the law here, which the government ignores entirely in their

21    papers, is clear and controlling.

22            THE COURT:  It's not a loophole, but you're saying

23    it's a vehicle for foreign governments to send in covert

24    operatives legally into the United States.  Is that the

25    conclusion?

(212) 805-0300

F7TVBURA

1           MR. HERSHMAN:  I'm not suggesting something to foreign

2    governments that they can now employ as a means of sending in

3    foreign operatives.  What I'm suggesting is that this exact

4    issue was raised.

5           THE COURT:  That's the implication though.

6           MR. HERSHMAN:  And the implication was actually

7    raised.

8           THE COURT:  And that's how you're trying to include

9    Mr. Buryakov in that.  I'm not saying he's guilty of any

10   infraction whatsoever; but, conceptually, is that a vehicle for

11   sending in covert operatives legally into the United States, in

12   your opinion?

13          MR. HERSHMAN:  In my view, your Honor, it is a

14   regulation that exempts from registering foreign officials who

15   are working for a foreign government as defined by the statute

16   who entered the United States legally.

17          Let me just refer your Honor to page 7 of our

18   memorandum of law where we quote Senator Denton.

19          THE COURT:  No, no, I'm familiar with that.  But if

20   you'd like, you can quote it now.

21          MR. HERSHMAN:  Thank you, your Honor.

22          Senator Denton asked the Department of Justice at the

23   time of the amendment to this particular statute in 1984 that

24   included this exception, and I'll quote:  Some have suggested

25   that diplomates, foreign government officials, and print and

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

```
 1    broadcast media personnel be exempted from 1959, that's the
 2    predecessor to 951's coverage.  However, aren't these the
 3    positions that are most usually used by communist bloc
 4    countries as cover for their intelligence agents.
 5              THE COURT:  Good question.
 6              MR. HERSHMAN:  It was a good question.
 7              The issue was raised to the Department of Justice in
 8    1984 at the time, and the Department of Justice supported the
 9    implementation of this exemption and answered the question that
10    they understand it and said yes, and we support this particular
11    amendment.
12              The issue was not to have foreign government make
13    registration harder for U.S. people abroad.
14              THE COURT:  I'm sorry, the issue was not what?
15              MR. HERSHMAN:  To have foreign governments make
16    registration more difficult for U.S. people abroad.  And so
17    there's reciprocity kind of working here.  Everything that we
18    do is mirror-imaged on the other side, and this was part of
19    what was discussed at the hearing in 1984, when this particular
20    exception was created, and it was created knowing that this was
21    a potential, that there could be people coming under cover of
22    working for another foreign --
23              THE COURT:  Spies.
24              MR. HERSHMAN:  -- for a foreign government, and they
25    may not be who they say, as Senator Denton pointed out.
```

(212) 805-0300

F7TVBURA

1          You don't believe, by the way, that's Mr. Buryakov.

2          THE COURT:  No, no, of course.  That was my original

3     point.

4          But you happen to know, just as a matter of curiosity,

5     whether Russia has a reciprocal provision that we could send

6     people to Russia and spy for the United States under a

7     similar -- you're not calling it a loophole, but under a

8     similar provision?

9          MR. HERSHMAN:  I don't, your Honor.  But I seem to

10    recall -- and, again, I want to check this, so I'm suggesting I

11    need to check this, but I seem to recall that there was some

12    congressional testimony regarding the reciprocity, if you will,

13    use of this kind of mechanism.  I will check that and report

14    back to you.  I don't want to be quoted as misrepresenting

15    that.

16         THE COURT:  Fair enough.

17         It might be an older time period that may not be

18    current today.

19         MR. HERSHMAN:  Correct.  Exactly.

20         But at least at the time of the enactment of the

21    exception, which the government was okay with because they knew

22    that these people were all here.  And that's the point, right,

23    is that when Mr. Buryakov was sponsored to come to the United

24    States by VEB, a part of the foreign government of the Russian

25    Federation under the definition here, there was no hiding that

(212) 805-0300

F7TVBURA

1    he was coming here to engage in as an agent of VEB.  He's not

2    shy of saying that, and he --

3            THE COURT:  There was no hiding that he was here to be

4    the deputy for the bank.

5            MR. HERSHMAN:  Correct.  That's exactly right.

6            THE COURT:  He didn't say that he was coming to do

7    anything unlawful on behalf of the Russian Federation.

8            MR. HERSHMAN:  We would argue that he hasn't.

9            THE COURT:  Of course.

10           MR. HERSHMAN:  In all events, your Honor, that's not

11   what the statute requires, right.  Once the government is on

12   notice that you're here, that's all that's required, and you

13   are not required to register.

14           So the plain language is clear in the statute.  The

15   legislative history is clear, your Honor.  And there's no

16   question that the defendant here is an agent of the Russian

17   government through his role at VEB.  He wasn't shy about it --

18           THE COURT:  There's a question.  There's no question

19   in your mind.

20           MR. HERSHMAN:  Yes.

21           THE COURT:  They have challenged that.

22           MR. HERSHMAN:  They have, but not by applying the

23   actual statute.  They've applied some completely different

24   analysis which has no relevance to the issue before the Court.

25           He worked for a state-owned bank; he was officially

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1     and publicly acknowledged and sponsored by a foreign

2     government; his status was known, and his visit authorized by

3     the Department of Homeland Security.  There was no question

4     about that.  He falls squarely into the exception of (d)(2) in

5     Section 951.

6             Your Honor asked a question about 951(d) and our

7     argument about the government's failure to plead the exception

8     in the indictment.  And, yes, your Honor, with respect to that

9     aspect of our motion, it is fatal to the indictment.

10            Where an exception is incorporated in the enacting

11    clause of a statute, the burden is on the prosecution to plead

12    and prove that the defendant is not within the exception.  We

13    cited a Supreme Court case for that direct proposition, the

14    Vuitch case.  I probably mispronounced it, but --

15            THE COURT:  If you could spell that.

16            MR. HERSHMAN:  V-U-I-T-C-H.

17            Actually, maybe I got it right, I don't know.

18            But 951(d) expressly creates an exception that is

19    incorporated in the enacting clause of 951(a), through the

20    definition of the term "agent of a foreign government."  And it

21    was therefore fatal for the government to not plead that

22    exception.

23            THE COURT:  Not to plead it.

24            MR. HERSHMAN:  Correct.

25            THE COURT:  But if they did, that argument, I suppose,

(212) 805-0300

F7TVBURA

1    would be moot.

2         MR. HERSHMAN:  We would not have made the argument if

3    they did, your Honor.  But I don't think that they can, because

4    if they adhere to the definitions in the statute and

5    regulations, it's impossible for them to plead that exception,

6    because it applies to Mr. Buryakov, and it applies as a matter

7    of law.  This is not a factual issue; this is an issue of law.

8    The definition is contained --

9         THE COURT:  Of course they argue it in their papers.

10        MR. HERSHMAN:  They do, but, again, they ignore the

11   law.  And our point is that if they follow the law, which is

12   the definition of foreign government --

13        THE COURT:  I get that.  But they have made the point

14   in their motion papers, although they haven't pled the

15   exception, as it were, in the indictment.  That's true, right?

16        MR. HERSHMAN:  They make the argument that they don't

17   need to plead the exception, and they cite a case for pleading

18   affirmative defenses, which is entirely different than what is

19   here.  This is not an affirmative defense.  This is part of the

20   enacting clause.

21        THE COURT:  They cited a 1922 case from the Supreme

22   Court.

23        MR. HERSHMAN:  The more recent case they cite, I

24   think, was an affirmative defense case which they rely on.  And

25   that is not the issue here.  This is an enacting clause of a

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    statute.

2            THE COURT:  The 1922 case, though, is not an

3    affirmative defense case; isn't that right?

4            MR. HERSHMAN:  I don't believe so.  But the more

5    recent case they cite is.  And our case is a 1971 case, which

6    is directly on point, we believe.

7            So, your Honor, I want to be mindful of the time

8    limitation that you set, and I appreciate it.

9            THE COURT:  I asked a whole bunch of questions, so if

10   you have a couple more points you want to make --

11           MR. HERSHMAN:  That's okay, your Honor.

12           What I'd like to do is just briefly address the bill

13   of particulars issue and then I'll sit down.

14           I think I've made my points on the 951.  And again,

15   I'm happy to answer any additional questions on that point.

16           With respect to the bill of particulars, your Honor,

17   this is going to be a combined bill of particulars argument and

18   just updating the Court on the status of the discovery issues

19   because they are related.

20           Mr. Buryakov is in custody clearly.  And even if he is

21   convicted after trial, which we doubt, any sentence might well

22   not be very long, depending on what the guidelines and the

23   Court chooses to apply here.  Without some more specification

24   by the government of the relevant discovery, it will likely

25   take a very, very long time for us to prepare this case for

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1     trial because we will need to review everything.

2          And now I want to put this in context.  The volume of

3     data is humongous.  There's 5,000 hours of video, over two

4     and-a-half years.  I would venture to say, your Honor -- and

5     I'm not exaggerating -- that virtually all of it is irrelevant.

6     There's 1500 hours of wiretaps.  I'd venture to say that of

7     those wiretaps, virtually all of them are irrelevant.  There's

8     15 terabytes of data.

9          The data includes everything that was seized by the

10    government from Mr. Buryakov's office and his home and his

11    person at the time of his arrest and the execution of the

12    search warrants.  That includes -- and I've seen these, so I

13    can attest to it -- video of his family's birthday parties,

14    pictures of his family, shopping lists, etc., etc., etc.  It's

15    virtually all irrelevant.

16         We do not have a particular way, from what was turned

17    over to us, of identifying specifically what the government

18    intends to rely on and what they actually claim proves their

19    case.

20         THE COURT:  So I got that point from the papers.

21         Have you had the opportunity with Mr. Fee to meet and

22    confer about these issues?

23         MR. HERSHMAN:  Yes.

24         THE COURT:  Have you made any more progress than

25    what's reflected in the papers?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1          MR. HERSHMAN:  Not exactly, your Honor, and with

2     credit to Mr. Fee and the government, okay, because our

3     conversations have been productive and helpful.

4          Mr. Buryakov still does not have access to the video

5     that we brought to your attention quite a long time ago.  The

6     government has delivered the video, as I understand it, to the

7     MCC, but it hasn't worked.  Mr. Buryakov simply does not have

8     access to it and still doesn't.

9          THE COURT:  You mean the technology there hasn't

10     worked?

11          MR. HERSHMAN:  That's right.

12          Second, I am unable to review any of this material

13     directly with Mr. Buryakov because I can't bring it into the

14     MCC in a form that is usable.  So I can bring a CD into the

15     MCC, but I can't take 5,000 hours of video and dummy it down to

16     a CD.  It would take a building full of CDs in order for that

17     to happen.  It's impossible.  I have been discussing this with

18     Mr. Fee.  We've been discussing possible alternatives.

19          In fairness, your Honor, it's kind of the same issue

20     and, at the same time, a separate issue.  One is do I really

21     need to review 5,000 hours of videotape.

22          THE COURT:  Right.  I get it.

23          MR. HERSHMAN:  And the second is how am I going to

24     review this material with Mr. Buryakov in a way that allows us

25     adequately to prepare a defense in this case.

(212) 805-0300

F7TVBURA

 1          THE COURT:  So it's that discussion I'm wondering if

 2    you -- are you still talking about that?

 3          MR. HERSHMAN:  We are.  We are, but we may need the

 4    Court's intervention.

 5          THE COURT:  I see.

 6          MR. HERSHMAN:  There's one suggestion that we bring

 7    Mr. Buryakov to a proffer room at the courthouse.  The problem

 8    with that is that a U.S. Marshal would need to be present in

 9    the room.  That's not particularly acceptable to us.  We can't

10    have private, frank conversations with our client.

11          THE COURT:  What's the technology problem at the MCC?

12          MR. HERSHMAN:  The data is on five or six hard drives,

13    and we're not permitted to bring any mechanism into the prison

14    itself except for a CD.

15          THE COURT:  Except for?

16          MR. HERSHMAN:  CD.  And the data is too dense to be

17    transferred to a CD.  It's even too dense to be transferred to

18    a DVR; it's on hard drives, and it's huge.

19          The second problem is that the computers that are in

20    the lawyer rooms at the MCC are antiquated and, we think, not

21    up to current technology specs.  So they are not able to read

22    the information, even if it's there, hence the problem that

23    Mr. Buryakov has in not being able to see the video.

24          THE COURT:  No, I get it.  It is somewhat ironic that

25    they have the capability to make the videos and the recordings,

(212) 805-0300

F7TVBURA

1    but not the capability to display them.  But that's something

2    else.

3              MR. HERSHMAN:  There's a third problem, which includes

4    the software that was used or is used by the government, I

5    believe it's called NCASE, which is not publicly available and

6    requires us to engage a vendor, which we are in the process of

7    doing, to actually search and view the material.  So all of

8    this is complicated by the fact that we don't even know what we

9    are looking for.

10             So that's my bill of particulars piece.

11             THE COURT:  Okay.

12             MR. HERSHMAN:  Thank you very much, your Honor.

13             THE COURT:  Thank you.

14             Mr. Fee.

15             MR. FEE:  Yes, your Honor.

16             THE COURT:  Could you just, since my curiosity is so

17   aroused -- so this issue about pleading the exception, are you

18   stymied in doing that or is that something you might do or

19   could do?

20             MR. FEE:  Your Honor, we could obviously quickly fix

21   that.  Our position is that there is no fix required.  We cite

22   Second Circuit and Supreme Court law that you don't need to

23   specifically negate every exception to a statute.  There are

24   obviously other statutes.

25             THE COURT:  I got the legal argument; I'm just

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1      thinking about the practical one would moot a whole part of the

2      defense, as Mr. Hershman has indicated.

3             MR. FEE:  It would certainly moot it, your Honor.

4             I would also point out just for the Court's

5      edification that in the indictment, there is a clause -- and

6      it's in paragraph 6 with respect to Count One, it's also in

7      Count Two -- where we allege that Mr. Buryakov worked as an

8      agent of the SVR, we say:  Without prior notification to the

9      attorney general, as required by law.

10            Your Honor, we would submit that even to the extent

11     that it was required to somehow plead that the exceptions did

12     not apply, that, at least indirectly, doesn't.  The allegation

13     is he was required to register and did not.

14            THE COURT:  No, no, not to belabor the point, but you

15     certainly argue in your papers that he's not covered by the

16     exception, right?  So I'm just wondering if this is an easy

17     cure -- not a cure, if it's something you contemplate doing.

18            Mr. Hershman says you can't do it, as a legal matter.

19     But you do do it in your submissions, that is to say, make

20     those arguments.

21            Is there anything stopping you from doing it in an

22     indictment, in a superseding indictment, for example?

23            MR. FEE:  No, your Honor, there's nothing stopping us

24     from that.  We could do so quickly.

25            As to the legal points or the arguments made by

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    Mr. Hershman, I'll just pick up on the question the Court

2    asked, specifically the contention that the defendant makes

3    that there are potentially thousands of individuals like the

4    defendant in the United States.  So that is true in one

5    respect, but I think this point does highlight really the

6    absurd reading, the strained reading that the defendant has

7    urged upon this Court.  It would eviscerate Section 951.  There

8    are -- I don't know if it's thousands -- many people employed

9    by state-run corporations.

10            THE COURT:  Not just the VEB Bank, right?

11            MR. FEE:  Not just VEB Bank.  Other state-owned

12   corporations that are owned by the Russian Federation, as well

13   as other countries, friend and foe.

14            THE COURT:  There probably are thousands altogether.

15            MR. FEE:  It certainly could be thousands, maybe even

16   tens of thousands here in the United States.

17            Important point:  VEB, as I imagine many of those

18   other corporations, is a freestanding company under Russian

19   law.  It is not an arm or an agency of the Russian Federation.

20   Your Honor, that was and, I believe, is the position of

21   Mr. Buryakov.  He urged that exact position upon this Court.

22   In fact, those are his words:  VEB is a freestanding company

23   under Russian law; it is not an arm or agency of the Russian

24   government, but has a separate and independent corporate

25   existence that is well-recognized under U.S. law.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

```
 1              THE COURT:  He did that back in May, not, it should be
 2     clear, in arguing this motion.  At the time he was arguing
 3     about who was paying for his counsel.  And it's in that
 4     context -- I'm just setting the --
 5              MR. FEE:  Correct, your Honor.
 6              THE COURT:  It is in that context that he or counsel
 7     made these comments which seemed to contradict -- I think it's
 8     fair to say they are at odds somewhat with the contentions that
 9     are made in the course of the motion to dismiss.
10              MR. FEE:  That is the context, your Honor.  And
11     lawyers make arguments, but those are facts.  And when
12     Mr. Buryakov's counsel stated those facts, the U.S. Government
13     did not dispute them because they are true.
14              I would urge the Court -- I know it is doing so --
15     when you listen to Mr. Hershman's arguments, please look at the
16     actual text of the statutes, the regulations, and the things
17     attached to his own motion, to Mr. Buryakov's own motion,
18     including the enacting law under Russian law that created VEB.
19     We highlight this in the brief; I won't detail it here.  I
20     would note the broad point that statute uses the Russian
21     Federation and VEB separately.  It says, the Russian Federation
22     cannot interfere with VEB.  The liabilities of the Russian
23     Federation are not the liabilities of VEB.
24              THE COURT:  And vice-versa.
25              MR. FEE:  And vice-versa.
```

(212) 805-0300

F7TVBURA

1          Mr. Buryakov and the bank branch of New York confirmed
2     this fact, that they are distinct.  They confirmed it in their
3     actions.  Mr. Buryakov held himself out from the time he
4     entered the United States, as the Court observed, as
5     Mr. Hershman said, as an employee of the bank, as a banker.  He
6     stated it over and over on his visa applications for a work
7     visa, an L-1 work visa, as they call it.  He obtained a visa
8     for an intracompany transfer, from one branch of the bank to
9     another.  The bank itself, the New York branch which applied
10    for his visa, signed by the deputy representative of the bank
11    in New York, stated over and over and over and over again this
12    man's business was to be a banker engaged in international
13    banking in New York for the bank.
14          Your Honor, it is a very important point.  Your Honor
15    asked it.  At no point did Mr. Buryakov ever identify himself
16    as an official representative of the Russian Federation, of the
17    foreign government, the word used in Section 951.  This is not
18    complicated.  Mr. Hershman has urged upon this Court some ad
19    hoc, frankly, strained readings.
20          The Court asked Mr. Hershman to point out where he
21    drew this distinction from, under his reading of the statute,
22    that supervisors somehow were exempt, but janitors weren't.
23    Your Honor, I think it was clear he could not point out where
24    he drew that distinction from.  He was making arguments based
25    off of the structure of the statute, but there was no such

(212) 805-0300

29

F7TVBURA

1   distinction drawn.

2            I think another thing that highlights --

3            THE COURT:  You're saying there was no specific

4   distinction between supervisors, whoever that might be, and

5   anybody else.

6            MR. FEE:  There's not even a whiff of a distinction

7   because it's not there.

8            I think another point to highlight, legislative

9   history, as they've called it, and I think this is even on the

10  edges of whatever that may be, has become front and center in

11  their argument.

12           I would urge the Court -- and I know it has -- to read

13  exactly what Mr. Hershman pointed to.  It's a statement by a

14  government official talking about diplomatic privileges and

15  immunities, help U.S. diplomates abroad, so we don't want to

16  exclude those or make those people register in the U.S.

17           It is not about the exception at issue here, your

18  Honor.  It is not even close to being about the exception.  951

19  has an exception for diplomates; that is not what Mr. Buryakov

20  is arguing applies to him.  He's arguing something applies to

21  him which frankly is not even close to applying.

22           I would just focus, to move away from the point, I

23  will briefly touch on another portion of the phrase "officially

24  and publicly acknowledged and sponsored official or

25  representative of a foreign government."

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

```
 1              Addressed the foreign government point, your Honor,
 2    frankly, I don't think it's close to say he was here on behalf
 3    of that.  Officially and publicly acknowledged and sponsored,
 4    whatever that may mean, it does not apply to Mr. Buryakov.
 5              There were essentially two core deceptions, as alleged
 6    in the indictment, which are presumed to be true at this stage,
 7    two core deceptions that explain how this defendant came to New
 8    York and engaged in work on behalf of the Russian spy organ.
 9              First is that he was a banker, as he stated over and
10    over in applying for an L-1 visa.  I would just note, your
11    Honor, that the L-1 visa, the forms attached to this
12    defendant's motion, explains the purpose of an L-1 visa.  It's
13    in the papers.  It says it's for foreign companies doing
14    business in the U.S.  We've outlined some other language in
15    that visa and the applications themselves that make clear it
16    did not confer any status.
17              He held himself out only as a banker for VEB.  That's
18    the first exception.  The second is he stated repeatedly, under
19    penalty of perjury, that he was not entering to try to engage
20    in espionage.  The government would submit those were both
21    lies.  That is not officially and publicly acknowledging
22    oneself as an official of a foreign government, the Russian
23    Federation.  It is the opposite.  It's a banker getting a work
24    visa applied for on behalf of his bank to come here and be a
25    banker and to not even do that, your Honor.
```

(212) 805-0300

F7TVBURA

```
 1            The final point I would make just on -- this again
 2    relates back to the point about who else would be covered, the
 3    loophole that could be created.
 4            THE COURT:  Before you do, you have some allegations,
 5    both, I think, in the indictment and certainly in the papers
 6    that suggest that Mr. Buryakov -- and I don't know if they are
 7    called codefendants, they are the government officials who were
 8    apparently not in the country anymore.  I don't know if
 9    "codefendant" is the right terminology.
10            But, in any event, they were, according to you, agents
11    of the foreign government engaged in espionage or related
12    activities.  You allege or state that there are conversations
13    among them to which the objective was to obscure the fact that
14    Mr. Buryakov was undertaking actions that were not for his
15    employer in particular, right?
16            MR. FEE:  Correct, your Honor.
17            THE COURT:  They were totally separate and distinct
18    from any actions he might take as a banker.
19            Is that a fair statement?
20            MR. FEE:  That is a completely fair statement.  And
21    those two men were charged in the same indictment; they are
22    obviously not here.  They, unlike Mr. Buryakov, had official
23    cover; they were diplomates and consular officials for the
24    Russian Federation.
25            To pivot off that point, your Honor, there are other
```

(212) 805-0300

F7TVBURA

1    allegations in the complaint, of which the Court can certainly

2    take notice of here, that make the same point.

3         The information Mr. Buryakov was obtaining as a spy

4    was not being funneled to his superiors at the bank in New

5    York; it was being funneled to a trade official, an attach to

6    the Russian ministry.  Other spies with whom he had no other

7    reason to be channeling this information.  And we go into,

8    frankly, great detail in the complaint.

9         One final point, your Honor.

10        The reading of the government would not result in

11   this, essentially, rendering Section 951 a dead letter.  People

12   like Mr. Buryakov who are here on behalf of, to use his own

13   words, his counsel's words, freestanding companies, would not

14   be covered by what we've called a sponsored official exemption

15   because they are not officials of a foreign government; they

16   work for a corporation.

17        Your Honor, they would -- although it is not an issue

18   before the Court -- be covered by a different exemption, the

19   legal commercial transaction exemption, Section (d)(4).  And it

20   is significant that it's not even argued here that it could

21   apply to the defendant, because it wasn't, there is nothing

22   legal about what he was actually doing.

23        Your Honor, unless there's any other questions on the

24   statute point, I'll move on to the bill of particulars.

25        We obviously argued the vagueness point in our papers.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1           THE COURT:  My question to you is the same one as to

2      Mr. Hershman on bill of particulars.  Do you have any plans

3      afoot to talk to him and solve some of these essentially

4      discovery problems or difficulties that he's having?

5           MR. FEE:  Absolutely, your Honor.  There's sort of a

6      process point, and then there's, I guess, a substance point.

7           The process point, Mr. Hershman raised with me

8      yesterday, this issue he's having, that he cannot bring in

9      anything other than disks, the government's interests are the

10     same as his.  We want him to have every opportunity to review

11     the discovery himself and certainly with his client.  We have

12     reached out to legal counsel at the MCC.  I am discussing with

13     colleagues in my office some creative interpretations, creative

14     solutions, including -- I don't know if we can do this yet --

15     finding a clean way to get in all the discovery, say, on a

16     clean laptop that is routed through MCC Legal rather than

17     carried in by counsel.  We will work as quickly as we can and

18     we'll report to the Court and, of course, keep talking to

19     Mr. Hershman.

20          He characterized accurately the other process point,

21     which is the technical issues we've been having at the MCC with

22     getting the surveillance footage just to work.  We are now

23     converting it into another format, and we will update

24     Mr. Hershman and the Court and try to do that as quickly as

25     possible.

                    SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1          As far as the substantive requests underlying the bill

2     of particulars, Mr. Hershman couched his argument in really

3     broad terms, your Honor.  I would just point the Court to pages

4     22 and 23 of Mr. Buryakov's opening brief which outlines the

5     specific requests that were made to the government and which he

6     now makes as part of his motion.

7          Your Honor, first, frankly, the complaint and the

8     discovery in this case are exceedingly detailed, especially the

9     complaint.  I know your Honor has read it.  It does exactly

10    what Mr. Hershman argued did not happen here; it outlines what

11    the evidence is, dates and times of meetings, the substance of

12    conversations, the identities of the people involved in the

13    meetings.  And to highlight the fact that, frankly, I think

14    most of the information they are saying they don't have, they

15    already have.

16         THE COURT:  Well, there's two categories.  One is can

17    you help him simplify his search or his review of the materials

18    that you have provided.  He's saying there are hundreds or

19    thousands of hours that are not relevant.  One question he's

20    asking is can you help him pinpoint where to find the relevant

21    information.  That's one.

22         Two is he may be asking you for additional -- he is,

23    in fact -- information in some regards.

24         My point is that most often, cases that I've presided

25    over, counsel, working together, meeting and conferring,

(212) 805-0300

F7TVBURA

1    usually can eliminate many of these problems that seem still to

2    exist in terms of the papers, the motion and opposition.

3            MR. FEE:  Of course, your Honor, that is always the

4    best solution; and, yes, we will continue to do that.  If there

5    are any additional requests, we will address them and try to

6    help in the best way we can.

7            Our motion related to these six numbered requests,

8    just to point out that each of these requests actually is

9    phrased as the following:  We want this information, excluding

10   the meetings or items referred to in the complaint paragraphs,

11   and then it names five or six paragraphs.  Each request has an

12   exclusion.

13           Frankly, your Honor, that is a lot of detail already

14   in the defendant's possession.  The government has attempted to

15   address more specific concerns.  I know the Court has seen this

16   in the papers; we provided a letter.  You hear a lot of

17   references to all the surveillance footage.  We are doing our

18   best to narrow that.  We know it's a lot.  We've provided

19   detail.  When we find more meetings on that surveillance

20   footage, we will give another list.  So we want to make this

21   review as easy as we can for the defense.

22           THE COURT:  Okay.

23           MR. FEE:  Unless there's anything further, your

24   Honor --

25           THE COURT:  The last question, not to beat a dead

(212) 805-0300

F7TVBURA

1    horse, but is there any plan afoot to amend or supersede to

2    plead, as he says is legally required, the exclusions or the

3    exemptions?

4           MR. FEE:  Your Honor, our position is it's not legally

5    required.  Quite frankly, it would be a fairly meaningful

6    change in pleading practice not only in this district.  It is

7    not the normal course, to use the language of the courts, to

8    negative every exception in a statute.  Absent an order from

9    the Court, doing so or, frankly, some compelling precedent

10   cited for us, we don't have any plan.  But of course your Honor

11   is correct that we can quickly -- if this is the right

12   phrase -- fix that in the event the Court deems it necessary.

13          THE COURT:  Okay.

14          MR. FEE:  Thank you, your Honor.

15          MR. HERSHMAN:  Briefly, your Honor.

16          THE COURT:  Yes.

17          MR. HERSHMAN:  It seems, based on Mr. Fee's argument,

18   that the Department of Justice is looking now to rewrite the

19   regulation that controls the application of 951 and, again,

20   ignores 73.1, which specifically defines foreign government as

21   I discussed earlier.

22          What's interesting is the issue was actually raised

23   prior to the enactment of the regulations in the statute by the

24   Senate and discussed by the DOJ.

25          THE COURT:  This is 1984?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1        MR. HERSHMAN:  Yes.

2        There's another quote that I want to give which kind

3    of puts what Mr. Fee is suggesting the Court do here, which is

4    essentially rewrite 73.1 in the regulations in this case.

5        The government, the Department of Justice, stated in

6    enacting the amendments to 951(d) and the exception at issue

7    here:  "Even extensive communist bloc use of diplomatic media

8    or other covers for their intelligence operatives does not, in

9    our opinion, destroy the utility or desirability of exempting

10   such categories of personnel from the provisions of this

11   statute."

12       That's the position of the Department of Justice.  It

13   can't be rewritten for this case in this courthouse.

14       Second, I referred earlier to a recollection --

15       THE COURT:  That assumes that I --

16       MR. HERSHMAN:  Yeah.  And I apologize.  But Mr. Fee

17   would urge the Court to do that.

18       I mentioned, your Honor, that I had some recollection

19   about a reciprocity statement made in connection with the

20   enactment of the amendments to -- well, actually, it goes back

21   earlier in the enactment of the bill, 1981.  There is a quote

22   from the Department of Justice in which -- and it follows the

23   quote I just read about the question raised about using cover

24   and wouldn't this be a loophole, as your Honor referred to it.

25   The government responded.

(212) 805-0300

38

F7TVBURA

1                One part of the response was as follows --

2                THE COURT:  This is response by whom?

3                MR. HERSHMAN:  The Department of Justice.  This is in

4        connection with the 1984 amendments in response to Senator

5        Denton's questions.  It's not quoted in our papers, but it's

6        part of the official record of the congressional hearing on

7        this amendment.

8                The Department of Justice said:  "Finally, under the

9        principle of reciprocity, new restrictions simply invite

10       retaliation; and the president favors expanding, not

11       contracting, the contest of ideas with the Soviets."

12               So my recollection was to that point, your Honor.  So

13       that addresses the reciprocity aspect.

14               THE COURT:  This from me is just dicta.

15               MR. HERSHMAN:  I wanted to just complete the record.

16               THE COURT:  No, no, no, no, I mean what I'm about to

17       say.

18               MR. HERSHMAN:  Oh.

19               THE COURT:  It's probably fair to say that people said

20       a lot of things in the '80s that might not be said today, just

21       generally speaking.  I'm not saying that literally applies to

22       what you just said.

23               MR. HERSHMAN:  I appreciate that, your Honor.  The

24       Department of Justice has had opportunity to change the statute

25       or seek to change the statute, and they haven't done, so other

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1      than through Mr. Fee.

2           I want to point out also in connection with the

3      suggestion that there was no openly-acknowledged role here with

4      respect to Mr. Buryakov and what VEB actually is in terms of

5      its application, its statement to the United States, in

6      connection with Mr. Buryakov's application through VEB to come

7      to the United States back in 2010.  VEB wrote a letter to the

8      Department of Homeland Security in which it described the bank

9      for development of foreign economic affairs, VEB, by saying

10     that VEB of the U.S.S.R. was originally established in 1924 as

11     the Soviet Union's bank for foreign trade.  The bank's role is

12     as an agent of the Russian government in international trade

13     and economic development.

14          According to the Russian legislation, VEB is a

15     specialized state bank of Russia and is entrusted with

16     providing external debt servicing, as well as the centralized

17     foreign economic operations for Russia.  Worldwide, VEB

18     currently employs 1200 people and achieved, and it goes on to

19     describe.

20          This was in the sponsoring petition to the United

21     States Government for approval to issue a visa for Mr. Buryakov

22     to come to the United States as the deputy representative in

23     the United States for VEB.  This is officially and publicly

24     acknowledged in plain words.  The United States Government was

25     clearly on notice of the role of VEB.  It confirmed the role of

(212) 805-0300

F7TVBURA

1   VEB most recently in imposing sectoral sanctions against it.

2   In stating what it is to the United States Government, it is

3   directly at odds with what Mr. Fee is arguing.

4            THE COURT:  Now, he has also said that comments that

5   the defense has made in this case back in May seem to be

6   antithetical to the points you are making now.  The defense

7   seemed to be more willing and interested in drawing a

8   distinction between the Russian Federation and VEB in saying

9   that they were separate rather than one and the same, which is

10  a thrust of the motion.

11           MR. HERSHMAN:  As your Honor pointed out, in

12  connection with the Curcio proceedings, for a totally different

13  purpose, in responding to your Honor's question about payment

14  of fees, we pointed out that VEB is a separate state-owned --

15           THE COURT:  I'm not taking any responsibility for the

16  answer.  I may have raised the question in the context of

17  Curcio, but I didn't give the answer.  The answer does seem to

18  be somewhat at odds with the argument that you --

19           MR. HERSHMAN:  I apologize for any confusion for my

20  answer, your Honor, but intended, as part of that answer, was

21  to address your Honor's question concerning the payment of fees

22  and the separateness of VEB.  But what is important about

23  that --

24           THE COURT:  Wait.  But so that's his point.

25           MR. HERSHMAN:  Yes.  And I'm going to address the

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

41

F7TVBURA

1     point.

2          THE COURT:  That's his point, is that you -- in that

3     context, in this case, you did say that VEB and the Russian

4     Federation were entirely distinct.

5          MR. HERSHMAN:  For purposes of the payment of fees, I

6     pointed out that VEB is a separate state-owned corporation, and

7     that's the point that I made.

8          What controls here and what is relevant is under the

9     CFR and under 951, whether it's a separate state-owned entity

10    or not is not part of the definition of foreign government and

11    not controlling with respect to the application of 951.

12         THE COURT:  I thought you said at that time that VEB

13    is a freestanding company under Russian law; it is not an arm

14    or agency of the Russian government, but has a separate and

15    independent corporate existence that is well-recognized under

16    U.S. law.

17         MR. HERSHMAN:  Yes.

18         THE COURT:  I think you said that on May 14th.

19         MR. HERSHMAN:  Yes.  And that is correct.

20         As it concerns your Honor's question at the time,

21    which related to the payment of fees only, your Honor directed

22    me to address that question in my letter, which is what we did.

23    But you did not direct us to address what is VEB as it's

24    defined under Section 73.1 or with respect to 951.  The fact

25    that it is a freestanding company under Russian law is

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1      irrelevant to --

2            THE COURT:  Is irrelevant or --

3            MR. HERSHMAN:  Is not relevant to the determination

4      the Court needs to make that pursuant to 73.1 and 951 as

5      written in the statute and regulations, VEB is a foreign

6      government.

7            THE COURT:  I don't understand how it could be

8      irrelevant.  It's quite the opposite of what you're contending

9      in the motion, it seems to me.

10            MR. HERSHMAN:  No, no.  My letter isn't the statute,

11      your Honor.  What I'm referring the Court to is two different

12      issues.  There was an issue concerning instrumentality and

13      payment of fees that your Honor raised in the Curcio hearing.

14      The statement that I made is true.

15            THE COURT:  Candidly, I think there's more overlap

16      than distinction.  In both context, both in the Curcio context

17      and now, you were all talking about the relationship between

18      the VEB Bank and the Russian Federation.  So that's the same

19      issue here.  It may have different legal consequences.  One is

20      who's paying the legal fees, and another is the applicability

21      of 951.

22            But it's a factual question, and I don't think the

23      facts change between May and today.  I do think that there

24      is -- "contradiction" may be too strong a term, but what was

25      said is what was said.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

 1          As I said before, I'm not taking responsibility for
 2    the answers; I just ask the question in the context of the
 3    Curcio hearing.  The answer then appears to be different than
 4    the answer you're putting forward today.  Factual matters, not
 5    legal interpretations.
 6          MR. HERSHMAN:  With all due respect, your Honor, I
 7    think perhaps if there was a poor choice of words in respect to
 8    the Curcio hearing, which didn't contemplate the current issue
 9    or address the current issue, then for that I apologize.
10          THE COURT:  That I think is so.  It wasn't on
11    anybody's radar --
12          MR. HERSHMAN:  Exactly.
13          THE COURT:  -- perhaps at the time, but --
14          MR. HERSHMAN:  Exactly.
15          THE COURT:  I'm not responsible for radar.
16          MR. HERSHMAN:  Exactly.
17          But your Honor asked a specific question, which we
18    answered accurately.  Sovereign authority is what is relevant
19    here.  In terms of making a determination as to whether VEB is
20    a foreign government is encompassed in the definition of
21    foreign government under the relevant statute, that is what is
22    at issue, sovereign authority, and clearly VEB has that.
23          For purposes of this analysis, what the government is
24    urging is that you ignore the regulations in the statute.  You
25    can't simply ignore the regulations in the statute, and they

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

44

F7TVBURA

1      can't get around -- and Mr. Fee did not suggest any way

2      around -- the fitting of VEB clearly into the definition of

3      foreign government in the regulation.  It's interesting that he

4      continues to avoid explaining how it's not sovereign authority

5      and it hasn't been delegated sovereign authority to perform

6      quintessential government functions.  As far as the United

7      States Government was concerned, they were on notice that

8      that's exactly what VEB was doing, and that's why Mr. Buryakov

9      was being sent here.

10          THE COURT:  What is the answer to the question?  Is

11     Mr. Buryakov an employee of VEB Bank and/or is he an employee

12     of the Russian Federation?

13          MR. HERSHMAN:  He is a representative, deputy

14     representative, of VEB Bank.  VEB Bank is encompassed in the

15     definition of foreign government under the regulations.  As

16     such, 951(d)(2) applies directly to him.

17          THE COURT:  I get that.  I'm just asking a more

18     simple, direct question.  Is he an employee of the Russian

19     Federation?

20          MR. HERSHMAN:  He is an employee of VEB Bank.  He is a

21     representative official of VEB Bank.  VEB Bank is encompassed

22     in the definition of "foreign government" under the regulation.

23     Therefore, when you look at the exemption section under 951(d),

24     he is exempt from registering.  By virtue of his position at

25     VEB Bank --

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1           THE COURT:  But is there an answer to my question

2     about whether he's an employee of --

3           MR. HERSHMAN:  He's an official --

4           THE COURT:  Whoa, whoa.  Let me finish the question.

5           Is there an answer to the question about whether he is

6     an employee of the Russian Federation, just yes or no.  There

7     may not.

8           MR. HERSHMAN:  I think it begs the question, your

9     Honor, with all due respect.

10          THE COURT:  I know that.  I'm trying to get you not to

11    beg the question; I'm trying to get you to answer the question.

12          MR. HERSHMAN:  Well, I understand.  But what I'm

13    trying to do is to point your Honor to the actual words of the

14    statute which say --

15          THE COURT:  I get that.  I got that in your papers

16    too.  I'm just trying to figure out --

17          MR. HERSHMAN:  I think that he is a

18    publicly-acknowledged foreign official, and he is not required

19    under the terms of the definition in Section 73.1 and 951(d)(2)

20    to further register.  He was on notice.

21          THE COURT:  I get it.

22          MR. HERSHMAN:  Now with respect to the bill of

23    particulars, just briefly, what Mr. Fee ignored was the

24    specific points that we raise on page 22 and 23.

25          THE COURT:  I don't mean to cut you off, but here's

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

46

F7TVBURA

1    procedurally what I'm thinking of doing:  I think we should

2    resolve the motion to dismiss first.  And if you're successful,

3    then bill of particulars is moot.  If the government is

4    successful, then it's not moot.

5           If it's not moot, I would prefer not to resolve it

6    today anyway, because that's something that I think I have been

7    hinting or saying that I expect the lawyers to do more.  It's

8    not a criticism, but I would expect the lawyers in a

9    meet-and-confer could take a matter like those presented here

10   further than they are in the papers.  That's not a criticism.

11          So I wouldn't rule, even if I get to it on the bill of

12   particulars, today.

13          Does that work for you?

14          MR. HERSHMAN:  That works for me.

15          THE COURT:  I know you both, and I think you could

16   make more progress, if it came to that, on the bill of

17   particulars without me intervening.

18          MR. HERSHMAN:  Okay.

19          THE COURT:  All right.  Hold on for just a second.

20          (Pause)

21          THE COURT:  So as expected and happened, both your

22   papers, both sides, are excellent and the oral argument was

23   very helpful, as well.

24          It's now 12:20.  If you are available at 2 o'clock, I

25   should be able to have my thoughts together to give you a

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

47

F7TVBURA

1   ruling at that time.  Does that work for everybody?

2           And can we have the interpreter back at 2, as well?

3           Okay.  Thanks.  I'll see you then.

4           MR. FEE:  Thank you, your Honor.

5           (Recess)

6                 A F T E R N O O N   S E S S I O N

7                       2:05 P.M.

8           THE COURT:  Did we lose Mr. Fee?

9           MS. SKOTKO:  Yes, your Honor.  One standing.

10          THE COURT:  First of all, as I said this morning, the

11  papers were terrific and so is the oral argument.  I'm going to

12  rule on the first part of the motion, on the motion to dismiss,

13  and then we will see where we are with respect to the bill of

14  particulars.

15          This ruling is based on the entire record of the case,

16  even though I may not cite to or mention other aspects of the

17  case.  Certainly without limitation, it includes the complaint

18  in the indictment and also the parties' briefs.  I'll probably

19  mention excerpts from them, but I reviewed them in their

20  entirety, and the entire record, oral argument, court

21  appearances, etc., that have happened in this case are part of

22  this ruling.

23          So essentially in the motion to dismiss the defense

24  argues that the indictment fails to state a criminal offense by

25  Mr. Buryakov as a matter of law in several respects.  One is

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    that the indictment fails to negate exceptions found in 18

2    United States Code, Section 951(d).  In another, that

3    Mr. Buryakov is exempt from the statute, exempted from the

4    statute, as he is a foreign official.  And third, in that any

5    ambiguity under Section 951, and also in particular the

6    terminology or the phrase "publicly-acknowledged and sponsored

7    officials" should be construed in favor of the defendant.

8         A second argument presented by the defense under the

9    motion-to-dismiss rubric is that applying Section 951 to

10   Mr. Buryakov would deprive him of fair warning under the due

11   process clause of the Constitution.  And a third branch of the

12   motion to dismiss, related somewhat to the second, is that

13   Section 951 is unconstitutionally vague as applied to

14   Mr. Buryakov.

15        So I'll take each of those in turn.

16        The issue of ambiguity won't be discussed immediately

17   because it's related to two of the other sections, vagueness

18   and due process, etc., but it will be covered.

19        So first as to the issue of failure to negate an

20   exception.

21        Count One of the indictment alleges that Mr. Buryakov

22   engaged in a conspiracy to act as an unregistered agent in the

23   United States; and Count Two alleges that he acted as an

24   unregistered agent in the United States.  I'm not going to read

25   Counts One and Two; as I said before, the entire indictment is

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    incorporated here by reference.

2         According to the defense, the indictment, as I've

3    said, does not negate the statutory exception found at 18

4    U.S.C., 951(d), as it does not allege that at no time material

5    to this indictment was Mr. Buryakov officially and publicly

6    acknowledged and sponsored official or representative of a

7    foreign government.

8         The defense states that where an exception is

9    incorporated into the enacting clause of a statute, the burden

10   is on the prosecution to plead and to prove that the defendant

11   is not within the exception.

12        The government, by contrast, argues that, quote -- I

13   think this is a quote -- not the entire quote, but partially,

14   that the United States Supreme Court has affirmed the settled

15   rule that an indictment need not include allegations negating

16   each exception or affirmative defense in a criminal statute.

17   The government states that the indictment here plainly alleges

18   facts sufficient to prove the elements of both charged

19   offenses, namely, a conspiracy and an attempt to violate

20   Section 951, which provides criminal liability for whoever acts

21   in the United States as an agent of a foreign government

22   without prior notification to the attorney general.

23        Relevant authorities here that I've looked at are Rule

24   7(c)(1) of the Federal Rules of Criminal Procedure, which

25   states, in part, that the indictment must be a plain, concise,

(212) 805-0300

50

F7TVBURA

1    and definite written statement of the essential facts

2    constituting the offense or offenses charged.  Also, the Sixth

3    Amendment to the U.S. Constitution is relevant.  It says, in

4    part, that in all criminal prosecutions, the accused shall

5    enjoy the right to be informed of the nature and the cause of

6    the accusation.

7         Generally speaking, an indictment need do little more

8    than track the language of the statute charged and state the

9    time and place of the alleged crime.  That comes from United

10   States v. Stavroulakis, a Second Circuit case from 1992 found

11   at 952 F.2d 686.

12        It is also true -- and this is a quote from McKelvey

13   v. United States, 260 U.S. 353, a 1922 case which we discussed

14   briefly this morning.  This quote is found:  "It has come to be

15   a settled rule in this jurisdiction that an indictment or other

16   pleading founded on a general provision defining the elements

17   of an offense or of an exception made by a proviso or other

18   distinct clause, whether in the same section or elsewhere, and

19   that it is incumbent on one who relies on such an exception to

20   set it up and establish it.

21        Also 18 United States Code, 951(a) states, I mentioned

22   this before, but it's worth saying again:  Whoever, other than

23   a diplomatic or consular officer or attach, acts in the United

24   States as an agent of a foreign government without prior

25   notification to the attorney general, if required in subsection

(212) 805-0300

F7TVBURA

1    (b), shall be fined under this title or imprisoned not more

2    than ten years or both.

3            And the exception, 18 United States Code, 951(d)

4    states:  For purposes of this section, the term "agent of a

5    foreign government" means an individual who agrees to operate

6    within the United States subject to the direction or control of

7    a foreign government or official, except that such term does

8    not include any officially and publicly acknowledged and

9    sponsored official or representative of a foreign government.

10           In the instant case, the indictment tracks the

11   language of the statute charged and states the time and place

12   of the alleged crimes.  The government is not required, and

13   it's too bad he's not here in this respect, Mr. Fee seemed to

14   indicate to the Court this morning that the government could

15   and may very well do so, that is to say, negate the exception,

16   the applicable exceptions in Section 951 of the indictment.

17           Consequently, the motion to dismiss on this ground is

18   respectfully denied.

19           Now, turning to the 1b exemption.  78 CFR Part 73

20   defines "officially and publicly-acknowledged and sponsored" as

21   meaning that the person described therein has filed with the

22   Secretary of State a fully-executed notification of status with

23   a foreign government or is a visitor officially sponsored by a

24   foreign government whose status is known and whose visit is

25   authorized by an agency of the United States Government.

(212) 805-0300

F7TVBURA

1              The term "agent" is defined as follows in 78 CFR Part

2       73:  Individuals acting as representatives of or on behalf of a

3       foreign government or official who are subject to the direction

4       or control of that foreign government or official.

5              According to the defense, the indictment alleges that

6       Mr. Buryakov was an employee of a Russian bank, VEB, a Russian

7       state-owned agency.

8              Quote from the defense:  "It is a matter of public

9       record that Mr. Buryakov was present in the United States with

10      notice to and authorization by the U.S. Government, which

11      granted him a visa to work as an official at a Russian

12      state-owned agency."

13             Defense also argues that:  "On the face of the

14      indictment, which relates only to registration, Mr. Buryakov

15      was a foreign government official, falling squarely into an

16      exception to registration under Section 951 with respect to

17      officially and publicly acknowledged and sponsored officials or

18      representatives of a foreign government."

19             The government counters the following.  The government

20      says, and this is a quote:  "The fact that Buryakov obtained a

21      work visa to enter the United States as an international banker

22      employed by a New York bank by lying to the United States on

23      his visa application about his intention not to engage in

24      espionage neither conferred upon Buryakov some initial status

25      or immunity nor shielded him from liability under Section 951."

(212) 805-0300

F7TVBURA

1           Additionally, the government states that VEB, that's
2       the bank's assets "are drawn from the reorganization of its
3       predecessor institution, asset contributions of the Russian
4       Federation, income from VEB's activities, voluntary asset
5       contributions and donations, as well as other lawful sources."
6           "As such," this is a continuation of the government's
7       quote, "VEB is only partially funded by the Russian
8       Federation."
9           The government also argues that "the fact that VEB
10      appears to be at least partly funded by the Russian Federation
11      and claims to conduct banking activities on behalf of the
12      Russian Federation does not make every employee of the New York
13      bank an official representative of the Russian Federation."
14          According to Defense Exhibit B, which is an English
15      version of the Russian law, appears to be establishing VEB,
16      these points are true.  VEB is a state corporation established
17      by the Russian Federation.  That's in Article 2, Section 1.
18          The assets of VEB shall be formed with the assets
19      obtained as a result of the reorganization of the bank for
20      foreign economic affairs of the U.S.S.R., the asset
21      contribution of the Russian Federation, income from VEB's
22      activities, voluntary asset contributions and donations, and
23      from other lawful sources.  That's in Article 5, Section 1.
24          VEB shall not be liable for the obligations of the
25      Russian Federation.  The Russian Federation shall not be held

(212) 805-0300

54

F7TVBURA

1     liable for the obligations of VEB.  Article 5, Section 2.

2             The government of the Russian Federation shall, one,

3     appoint and dismiss members of the supervisory board of VEB.

4     That's found in Article 6, Section 2.

5             This is not the entirety of these articles in these

6     sections; these are selected sections by me.

7             Members of the supervisory board of VEB shall be

8     appointed by the government of the Russian Federation for a

9     five-year term.  Article 9, Section 4.

10            It is prohibited to delegate the powers of the

11    supervisory board of VEB to the management board of VEB or to

12    the chairman of VEB.  Article 12, Section 2.

13            The chairman of VEB is appointed and dismissed by the

14    president of the Russian Federation.  Article 15, Section 2.

15            The chairman of VEB is a sole executive body of VEB,

16    and he or she shall direct its ongoing activities.  Article 15,

17    Section 1.

18            The Court finds that the defendant, Mr. Buryakov, does

19    not qualify for the exemption in 951 and, relatedly, that VEB

20    does not qualify as a foreign government.  Although the Russian

21    law establishing VEB states that VEB is a state corporation, it

22    is clear from the very same Russian law that VEB was funded in

23    part through other nongovernmental sources, and that neither

24    the Russian Federation nor VEB is liable for one another's

25    legal obligations, notwithstanding the defense contention that

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1    the bank is owned by the state, that is to say, by Russia.

2            Counsel for the defense has also argued to this Court

3    that "VEB is a freestanding company under Russian law; it is

4    not an arm or agency of the Russian government, but has a

5    separate and independent corporate existence that is

6    well-recognized under U.S. law."  That was contained in a

7    defense letter to the Court dated May 14, 2015 at page 2.

8            Defense counsel has also stated that "The underlying

9    offense in this case has nothing to do with VEB's relationship

10   with the Russian government."  Same letter, same page.

11           Defense has also said that the Russian state is not

12   paying -- this was in the context of a Curcio hearing and the

13   retainer agreement for White & Case.  The Russian state is not

14   paying for Mr. Buryakov's defense any more than the U.S.

15   Government could be said to be paying for every corporate

16   action taken by the Export-Import Bank of the United States or

17   the Pension Benefit Guaranty Corporation, both companies the

18   shares of which are owned by the United States.

19           Also, in connection with the resolution of third-party

20   payor for defense counsel, there's a letter dated 5/10/2015

21   where the defense says:  No conflict is created simply because

22   a third party is paying Mr. Buryakov's legal fees.  In

23   particular, we can confirm to the Court that the third party

24   here is not involved in this case and is not related to any

25   codefendant.

                    SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1          On 4/17/2015, the retainer agreement between VEB and

2     White & Case was presented and refers to Mr. Buryakov as

3     "bank's employee" at page 6.

4          In court on May 18, 2015, defense counsel stated:  "I

5     don't believe that because VEB is paying the legal fees of an

6     employee of the bank that raises any issues any different from

7     any other criminal case where an employee of an institution is

8     charged and the employer agrees to pay the legal fees of that

9     employee."

10         In the same transcript, defense counsel refers the

11    Court to the agreement between VEB and White & Case in which

12    Mr. Buryakov is referred to, again, as the bank's employee.  In

13    the same transcript, defense counsel states:  "This is no

14    different from any other corporate entity providing counsel for

15    an employee in view of the corporation and White & Case."  And

16    on June 1st, 2015, the transcript contains a confirmation that

17    Mr. Buryakov's employer, VEB, was paying the legal fees.

18         Even assuming arguendo that VEB were to qualify as a

19    foreign government, which I have determined it emphatically

20    does not, defendant would nevertheless still not qualify as

21    being officially sponsored by a foreign government whose visit

22    was authorized by an agency of the United States Government, as

23    his status as an agent of a foreign government was not known to

24    the United States, only his status as a VEB Bank employee was

25    known.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1          It is alleged that defendant was working as a covert

2   intelligence agent for the Russian Federation, not in a

3   position of a deputy representative of VEB for which he

4   received his visa.  And at no point did Mr. Buryakov notify the

5   United States Government or any agency thereof that he was an

6   intelligence agent for the Russian Federation.

7          Moreover, Mr. Buryakov's position as a deputy

8   representative of VEB may very well not qualify as an official

9   or representative of a foreign government, as that position is

10  not one which is subject to the direction or control of the

11  Russian Federation.  Under the Russian law establishing VEB,

12  only the chairman and the members of the supervisory board of

13  VEB are hired by either the president of the Russian Federation

14  or the government of the Russian Federation.  Mr. Buryakov was

15  neither of those.

16         Further, there does not appear to the Court to be any

17  basis to extend the definition of foreign official to include a

18  wide group of employees, as suggested by the defense, or to

19  employ the definition that may be found in the Foreign Corrupt

20  Practices Act.

21         With respect to vagueness, as I said before, I'm going

22  to get to that in a moment.

23         The motion to dismiss on the 951 grounds is denied.

24         Due process grounds as a basis for dismissal.

25         According to the defense, the indictment represents a

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1   clear break with the U.S. Government's prior use of Section

2   951, namely, the first time the statute ever in its current

3   form has been applied to a foreign government representative

4   openly working as such in the United States.

5           This is a quote from the defense:

6           "Indeed, since the Section 951(d)(2) exemption was

7   added, no reported case has been brought against a foreign

8   government official who has held himself out as such.  Instead,

9   prior indictments have charged privately-employed individuals

10  surreptitiously working for foreign governments."

11          A quote from the defense:  "The glaring absence of any

12  precedence for the theory of prosecution here shows the fair

13  notice problem."

14          The government's response, in summary, is this:

15          As charged in the indictment, Buryakov was acting as a

16  covert Russian spy embedded at a bank in Manhattan, a bank that

17  by Buryakov's own account, is not an arm or agency of the

18  Russian government, but has a separate and independent

19  corporate existence that is well-recognized under U.S. law.

20  That's citing, again, the letter that I cited a few minutes ago

21  dated May 14, 2005 from the defense.

22          Throughout the period of the charged offenses,

23  Mr. Buryakov was reporting on his intelligence-gathering

24  activities not to his superiors in the New York bank, but to a

25  team of Russian spies -- this all comes from the government's

(212) 805-0300

F7TVBURA

1    submission -- but to a team of Russian spies operating in the
2    United States under the cover of their consular posts.
3    Mr. Buryakov regularly passed the intelligence he gathered to
4    other spies during covert meetings with his co-conspirators at
5    locations outside the New York bank.
6            In addition, Mr. Buryakov and his co-conspirators
7    routinely met and discussed the efforts to collect and to take
8    information from unsuspecting sources of intelligence in the
9    United States.
10           Among other things -- this is all from the
11    government's submission -- Mr. Buryakov's co-conspirators
12    specifically discussed Buryakov's past efforts to hide his true
13    job, being a spy for the Russian Federation, from some of his
14    supervisors at a branch of VEB outside of Russia and the United
15    States.
16           Given the substance and nature of these allegations,
17    according to the government, Buryakov cannot credibly claim
18    that he was unaware that he might be held criminally
19    responsible for his misconduct.
20           In determining whether or not a statute satisfies the
21    fair notice prong -- this is a quote from a Second Circuit
22    decision -- we ask whether the statute, either standing alone
23    or as construed, made it reasonably clear that at the relevant
24    time that the defendant's conduct was criminal.  The cite is
25    U.S. v. Rosen, 716 F.3d, 691, which is a Second Circuit case

(212) 805-0300

F7TVBURA

1    from 2013.

2          The motion to dismiss on due process grounds is,

3    therefore, respectfully denied.

4          The statute provided clear notice to the defendant of

5    what conduct was prohibited, and the indictment clearly sets

6    forth that the defendant violated that statute.

7          Another cite is U.S. v. Lindauer, 2004 Westlaw

8    2813168, a Southern District case from 2004.

9          And the last branch of the motion to dismiss has to do

10   with vagueness.  It is related, as I said, to the due process

11   branch, but it's briefed separately.

12         Defense counsel argues that applying Section 951 to

13   Mr. Buryakov would render the law unconstitutionally vague as

14   applied because there would be no meaningful standards to guide

15   application of Section 951 to other foreign officials like

16   Mr. Buryakov.  Additionally, the defense states that to the

17   extent the term "publicly-acknowledged and sponsored official"

18   is ambiguous, that ambiguity should be resolved in favor of

19   lenity here, where there is connection between the first branch

20   of the motion and the vagueness issue.

21         Defense counsel argues further that "There are

22   potentially thousands of individuals in the United States like

23   Mr. Buryakov.  Persons openly working in representative

24   capacities for foreign government agencies and

25   instrumentalities, but in nonconsular, nondiplomatic posts,

(212) 805-0300

61

F7TVBURA

1    these persons all would be agents of a foreign government under

2    951(a).  And if Section 951(d)(2) does not provide them with a

3    safe harbor, they would be vulnerable to prosecution for

4    failing to register.  The government could pick and choose whom

5    to address and prosecute based on arbitrary criteria such as

6    nationality or country of origin.

7         And finally from that quote from the defense:  "Such

8    uncabined discretion is one of the dangers that the vagueness

9    doctrine prevents."  Defense motion at page 19.

10         The government responds that "Buryakov cannot

11   demonstrate that Section 951 is vague as applied to him.

12   Section 951 and related statutes and regulations outline in

13   detail the conduct sought to be proscribed."  That's the

14   government response at page 20.

15         The government also states that "In this case the

16   conduct charged in the indictment is clearly proscribed by the

17   statute.  The indictment alleges that Buryakov knowingly acted

18   in the United States as an agent of the Russian Federation, and

19   specifically at the direction of foreign officials in the

20   United States who were Russian intelligence agents, and that he

21   conspired to do the same.

22         "The indictment and the underlying complaint outline

23   in detail the actions Buryakov took on behalf of the Russian

24   Federation, all while ostensibly working as a banker in New

25   York for the New York bank."  Government response at page 21.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1           "The void for vagueness doctrine that we are here

2   considering derives from the constitutional guarantee of due

3   process, hence related to the section immediately before this

4   one, which requires that a penal statute define a criminal

5   offense with sufficient definiteness that ordinary people can

6   understand what conduct is prohibited and in a manner that does

7   not encourage arbitrary and discriminatory enforcement."  The

8   source of that remark is Mannix v. Phillips, 619 F.3d 187, a

9   Second Circuit case from 2010.

10          "Although the doctrine focuses both on actual notice

11   to citizens and arbitrary enforcement, we have recognized

12   recently that the more important aspect of the vagueness

13   doctrine is not actual notice, but the other principal element

14   of the doctrine, the requirement that a legislature establish

15   minimal guidelines to government law enforcement."  The cite is

16   Kolender v. Lawson, 461 U.S. 352, a 1983 Supreme Court case.

17          The statute here is not vague as applied to

18   Mr. Buryakov; it clearly defines what conduct is prohibited,

19   and the indictment clearly sets forth that the defendant

20   violated this statute.  As I started the proceeding this

21   morning saying there is no finding that that is so, the

22   defendant remains subject and able to enjoy the presumption of

23   innocence unless and until a jury determines that he was

24   guilty.

25          Defense acknowledges that the void for vagueness

(212) 805-0300

63

F7TVBURA

1    challenge to 951 has been rejected by several federal courts,

2    although not necessarily in exactly the same context as is

3    presented here.  They do that at defense motion page 19 and

4    footnote 12.  The cite is United States v. Duran, 596 F.3d

5    1282, it's an Eleventh Circuit case from 2010, where this quote

6    is found:  "Section 951 plainly and concretely identifies the

7    conduct which constitutes its violation, and the statute

8    language is clear and unambiguous."  See also United States v.

9    Truong, 629 F.2d 908, a Fourth Circuit case from 1980.  And

10   also I refer you to United States v. Lindauer again, the 2004

11   case at Westlaw 2813168 from the Southern District, 2004.

12           Consequently, the motion to dismiss on grounds of

13   vagueness is also denied, respectfully.

14           So that leave us then with the motion for a bill of

15   particulars.

16           As I mentioned this morning, it is not my intention to

17   resolve that aspect of the motion at this time, and perhaps I

18   won't need to, because I am directing the parties to meet and

19   confer and see if they cannot resolve all of the issues which

20   are presented in defendant's motion.

21           Hold on for one second.

22           (Pause)

23           THE COURT:  So here's what I'm going to do:  I'm going

24   to schedule a further conference for September 2 at 2 p.m.  And

25   that essentially would presume that you're able to meet and

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

64

F7TVBURA

1    confer to continue the progress of the case until then.  If

2    there were some problem that came up in the meantime that

3    required court attention, you'll let me know by correspondence,

4    I'm sure.

5             MR. HERSHMAN:  Your Honor, September 2nd is for what

6    purpose?

7             THE COURT:  Status conference.  Just to see --

8    September 2nd.

9             MR. HERSHMAN:  I think that's a little long for us, if

10   we are not able to get access to the material.

11            THE COURT:  What I'm trying to say is that in setting

12   that date aside assumes that you are able to work things out.

13   In the event that you aren't, then I probably will hear from

14   you by correspondence and we'll see what I can do for you

15   sooner than that.

16            MR. HERSHMAN:  We are interested in setting a trial

17   date.

18            THE COURT:  I can do that right now.

19            MR. HERSHMAN:  Okay.

20            THE COURT:  When do you want to go to trial?

21            MR. HERSHMAN:  Sometime in November or December.

22            MS. SKOTKO:  Your Honor, sorry.

23            Could we have a moment to just confer?

24            (Pause)

25            MR. HERSHMAN:  One second, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

```
 1              (Pause)
 2              MR. HERSHMAN:  So, your Honor, I think, having had the
 3     opportunity to confer with the government, what we would
 4     suggest is an earlier conference date, status conference date,
 5     maybe two weeks from now, during which interim point we will
 6     discuss the various issues that we need to discuss, which
 7     include the meet-and-confer on the discovery, but also any
 8     potential issues that may arise here and other issues relating
 9     to classified material.
10              THE COURT:  No, I still prefer to keep the schedule
11     that I set, which is September 2, because I think that the
12     defendant has a right to the government's assistance with
13     respect to the discovery.  I think if you talk together in good
14     faith, you will resolve virtually all of those issues.
15              So it's only in the event that you can't that we may
16     have to go to plan B.  But, for now, I'm going to have the
17     status conference on September 2 at 2 p.m.; the trial is on
18     December 7, 2015, at 9 a.m.  There will be a final pretrial
19     conference on December 1, 2015, at noon.
20              And here is the pretrial submission schedule:
21              First of all, the documents I'm about to describe will
22     be due on November 6, and they are as follows:  First, joint
23     jury instructions.  And I want to come back to that and talk
24     about how we do that.  The joint verdict sheet, a one-sentence
25     statement of the case and a one-sentence statement of the
```

(212) 805-0300

66

F7TVBURA

1   defense.  That's for purposes of the voir dire.

2   Hypothetically, you could say, The government contends AB, and

3   the defendant responds.  A list of names and places that may

4   come up in the trial also for purposes of the voir dire.  And

5   motions in limine.

6            So each side, one motion, although it obviously may

7   have different branches to it, but one document which contains

8   whatever you have to assert by way of motion in limine.  And

9   those are, both for the government and the defense, due on

10  November 6.

11           And on November 13, any responses to motions in limine

12  that may have been served.

13           Now, back to the joint jury instructions.

14           So in a criminal case I ask the government to do the

15  first draft of the jury instructions at least two weeks before

16  they're due.  On November 6 they should be presented to the

17  defense.  The defense has the opportunity then to review the

18  instructions, to accept or adopt any instructions that it's

19  comfortable with.  As to any instruction that it has an

20  objection to, on the same disk, or however it's presented to

21  you, to note briefly your legal objection, and then the

22  instruction that you would prefer to have in place of the

23  government's instructions.  So there I have it in one document,

24  both sides' position.

25           Christine will give you a sample set of jury

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F7TVBURA

1   instructions.  I would ask the government and the defense to

2   use as many of the so-called boilerplate instructions as I

3   typically do use, and for all of you then to focus your

4   attention on the substantive charges that relate to this case.

5        And the same is true of the joint verdict sheet.  The

6   government does the first draft, gives that to the defense, and

7   the defense would either say yes or no or what they would say

8   differently.  And that also would be presented with the defense

9   package as a joint enterprise with the government on November

10  6.

11       So I think that's about as quick as I can give you,

12  but I think you probably need that time to get ready for trial.

13  I'm happy to accommodate you on December 7.

14       Just as a heads up, I think the end of the month I'm

15  going to be away between Christmas Day and January 1st.

16  Perhaps we wouldn't have trial then anyway, if the trial was

17  still ongoing.  But just so you know for scheduling purposes,

18  I'm planning to be away for that -- it's a little less than a

19  week, I think.

20       So anybody have any questions?  No?

21       MS. SKOTKO:  Yes, your Honor, just to flag this for

22  your Honor's attention.

23       We are still in the process of determining whether

24  there will be any motions pursuant to the Classified

25  Information Procedure Act.  If we anticipate that there might

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

68

F7TVBURA

1    be something under Section 4 or any other sections, I would

2    suggest that perhaps we could write to the Court and defense

3    counsel and propose a schedule for the filing of those motions.

4            THE COURT:  So it's always best if you could meet and

5    confer, and jointly then you could send me a letter and say

6    this is what you propose, and they either agree or disagree.

7    It could all be contained in the same letter.  You could

8    represent them or they could represent you.  Probably it's

9    something you might do.

10           MS. SKOTKO:  Yes, your Honor.

11           And just to clarify, pursuant to the schedule, there

12   are no further motion practice --

13           THE COURT:  That's it.

14           So if I don't hear anything from you, I'll see you on

15   September 2nd.  If I do, then we'll go to plan B, which is yet

16   to be devised.

17           All right.  Great.  Nice to see you.

18           Thanks very much.

19           (Pause)

20           THE COURT:  Please be seated, everybody.

21           I forgot to ask at the close of the earlier proceeding

22   two minutes or so ago whether there was a speedy trial issue or

23   application that would take us to December 7, 2015, which is

24   the trial date.

25           MS. SKOTKO:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

69

F7TVBURA

1            I apologize, that was my omission.

2            The government would respectfully request that time be

3    excluded through December 7th, which is the commencement of the

4    trial, to give the parties an opportunity to -- specifically

5    for the defense to review discovery and to prepare for trial.

6            THE COURT:  I'm going to find under 18 United States

7    Code, Section 3161, that the request for adjournment is

8    appropriate and warrants exclusion of the adjourned time from

9    speedy trial calculations.

10           I further find that the exclusion is designed to

11   prevent any possible miscarriage of justice, to facilitate

12   these proceedings, including preparation for trial, and to

13   guarantee effective representation of and preparation by

14   counsel for both parties.  Thus, the need for exclusion and the

15   ends of justice outweigh the interests of the public and the

16   defendant in a speedy trial, pursuant to 18 U.S.C., Section

17   3161(h)(7)(A) and (B).

18           And just to reiterate -- I think we made the point

19   before -- between now and the trial date, apart from what is

20   scheduled to be filed, if anybody is entertaining some other

21   form of filing, that would have to be preceded by a letter to

22   the Court explaining what that is, and then we'll take the next

23   step.  Okay?

24           Great.  Thanks very much.

25                               *    *    *

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300