UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

EVGENY BURYAKOV,

                Defendant.

15 CR. 73 (RMB)

# DEFENDANT EVGENY BURYAKOV'S
# SENTENCING MEMORANDUM

Scott Hershman
Daniel Levin
Owen C. Pell
Gregory G. Little
Kimberly A. Haviv
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Tel.: (212) 819-8200
Fax: (212) 354-8113

*Attorneys for Evgeny Buryakov*

May 11, 2016

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

THE PLEA AGREEMENT AND UNDERLYING FACTS........................................................2

ARGUMENT ..................................................................................................................................2

    I.    THE AGREED SENTENCE IS MORE THAN SUFFICIENT ...............................2

        1.    The Section 3553 Factors Are More Than Satisfied By the Agreed Sentence. ........................................................................................................ 3

        2.    The Agreed Sentence Is Higher than in Other Cases Relating To Conspiracy To Violate Section 951 Involving More Serious Conduct. ...... 6

        3.    The Agreed Sentence Is More Than Sufficient Given the Serious Doubts About the Government's More Serious Allegations. ...................... 8

        4.    Redacted ........................................................................................................ 11

    II.    NO FINE SHOULD BE IMPOSED .....................................................................14

CONCLUSION.............................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gaind v. United States*, 871 F. Supp. 186 (S.D.N.Y. 1994) ..................................................... 15

*United States v. Al-Awadi*, 07-cr-20314 (E.D. Mich.) ............................................................... 7

*United States v. Alvarez*, 05-cr-20943 (S.D. Fla.) ..................................................................... 8

*United States v. Alvarez*, 506 F. Supp. 2d 1285 (S.D. Fla. 2007) .............................................. 7

*United States v. Amirnazmi*, 2:08-cr-00429 (E.D. Pa.) .............................................................. 8

*United States v. Aquino*, 05-cr-719 (D.N.J.) .............................................................................. 8

*United States v. Campa*, 529 F.3d 980 (11th Cir. 2008) ............................................................ 7

*United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) ........................................................... 8

*United States v. Hernandez*, 98-cr-721 (S.D. Fla.) .................................................................... 7

*United States v. Kang*, 1:08-cr-00210 (E.D. Va.) ...................................................................... 6

*United States v. Kimbrough*, 128 S. Ct. 558 (2007) ............................................................. 3, 6

*United States v. Maionica*, 1:07-cr-20999 (S.D. Fla.) ............................................................... 6

*United States v. Mak*, 8:05-cr-00293 (C.D. Cal.) ................................................................. 7, 8

*United States v. Marquez*, 941 F.2d 60 (2d Cir. 1991) ............................................................ 15

*United States v. Nicholson*, 3:09-00040 (D. Or.) ...................................................................... 8

*United States v. Shemami*, 1:07-cr-20160 (E.D. Mich.) ............................................................ 8

*United States v. Souied*, 1:11-cr-00494 (E.D. Va.) .................................................................... 7

*United States v. Vincent*, 05-cr-00059 (S.D.N.Y.) ................................................................ 7, 8

**STATUTES AND RULES**

18 U.S.C. § 951 .................................................................................................................. passim

18 U.S.C. § 3553 ................................................................................................................ passim

18 U.S.C. § 3572.................................................................................................................14

28 U.S.C. § 371............................................................................................................. passim

50 U.S.C. §§ 170.................................................................................................................5

Fed. R. Crim. P. 32 ...........................................................................................................11

U.S.S.G. § 2X1 ...................................................................................................................2

U.S.S.G. § 2X5 ...................................................................................................................2

U.S.S.G. § 5E1.................................................................................................................15

## MISCELLANEOUS

Department of Justice Press Release, Mar. 11, 2016 .........................................................4

# **PRELIMINARY STATEMENT**

Defendant has pled guilty to conspiracy to act as an unregistered agent in the United States under 28 U.S.C. § 371. The parties agree that there is no applicable or analogous sentencing guideline, and the parties have agreed that a 30-month sentence (the "Agreed Sentence") is appropriate. The Agreed Sentence is more than sufficient (Point I) because:

- It is fully supported by the sentencing factors under 18 U.S.C. § 3553, which govern in the absence of an applicable sentencing guideline.

    o It is well within the range of sentences in other similar cases—and, indeed, is above the sentence imposed in cases involving more serious conduct.

    o While there is disagreement over what the evidence would show, the Agreed Sentence is appropriate even assuming, arguendo, the Government's most serious factual allegations—namely that Defendant was an SVR agent, which Defendant denies. Significantly, there are no allegations that Defendant possessed or passed any classified information, trade secrets, or indeed any information that was not publicly available. Nor is there any allegation that Defendant sought to recruit agents or others to act against the United States, or put anyone at risk.

    o Defendant has no prior criminal history and there is no risk of Defendant committing further crimes in the United States as he will be deported immediately following his sentence.

    o The Government is perhaps uniquely situated to evaluate the adequacy of the Agreed Sentence in terms of deterring other such conduct, avoiding potential retaliation against U.S. citizens overseas, and similar considerations, and its judgment should be deferred to. The Government indicated that the Agreed Sentence was approved both within the U.S Attorney's Office and at the Department of Justice in Washington, D.C., and thus reflects the considered judgment of the Attorney General's designees—of particular importance given that the crime here is failure to register with the Attorney General.

- To the extent the facts are less serious than the Government has asserted (as Defendant maintains and as shown by the Superseding Indictment) the Agreed Sentence is more than sufficient.

Finally, no fine should be imposed because (i) as the Government has conceded, there is no basis for restitution here; and (ii) Mr. Buryakov has no resources with which to pay a fine and no future earning capacity in the United States. (Point II)

1

**THE PLEA AGREEMENT AND UNDERLYING FACTS**

On March 11, 2016, the Court accepted Mr. Buryakov's plea of guilty to Count One of the Superseding Indictment. (Mar. 11, 2016 Hr'g Tr., 24:3-20 [Dkt. 141]) That guilty plea was based on a plea agreement between the United States and Mr. Buryakov dated March 9, 2016 (the "Plea Agreement"). *See* Declaration of Scott Hershman, dated May 11, 2016 ("Hershman Decl."), ¶ 2, Ex. A. The parties agreed that (i) the appropriate sentence is 30 months (with no period of supervised release); and (ii) that, "after determining the defendant's ability to pay, the Court may impose a fine" in the range of $10,000 to $100,000. Plea Agreement at 2.[1]

In terms of the underlying conduct, while there are disagreements, as discussed below, even assuming arguendo the Government's most serious allegations in the Complaint [Dkt. 1], Original Indictment [Dkt. 10] or Superseding Indictment [Dkt. 118], there is no claim that Defendant ever possessed or transmitted any classified information or trade secrets, ever sought to recruit anyone to act as an agent, or ever acted in a manner that put anyone at any risk.

**ARGUMENT**

**I.  THE AGREED SENTENCE IS MORE THAN SUFFICIENT**

Mr. Buryakov pled guilty to conspiring to violate 18 U.S.C. § 951 in violation of Section 371. Under the Sentencing Guidelines for Section 371, the guidelines for Section 951 govern. U.S.S.G. § 2X1.1(a). Section 951 is not covered by an expressly promulgated guideline, and the parties agreed that there is no analogous guideline. Accordingly, the provisions of 18 U.S.C. § 3553 apply. U.S.S.G. § 2X5.1.

---

[1] The maximum sentence for Count One is a term of imprisonment of five years, a maximum term of supervised release of three years, a maximum fine of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. Under the Plea Agreement, the United States will move to dismiss the remaining count of the Superseding Indictment at the time of sentencing. Plea Agreement at 1.

2

Section 3553(a) sets forth the criteria that generally apply to analyzing the sufficiency of a sentence, and lists factors including the nature of the offense, the history and characteristics of the defendant, the ranges of available sentences, as well as deterrence, just punishment, incapacitation, rehabilitation and restitution. 18 U.S.C. § 3553(a)(1)-(2); *see United States v. Kimbrough*, 128 S. Ct. 558, 570 (2007). Absent an applicable guideline range—as in this case—the Court should not impose a sentence greater than that agreed to by the parties where, as here, it falls within the range of sentences applied in similar cases, and otherwise satisfies the factors set forth in 18 U.S.C. § 3553.

1. **The Section 3553 Factors Are More Than Satisfied By the Agreed Sentence.**

The Agreed Sentence more than adequately reflects the serious nature of the foreign agent registration statute. *See* 18 U.S.C. § 3553(a)(2)(A). The Agreed Sentence, for a Defendant with no criminal history, would be an appropriate sentence under the Sentencing Guidelines for a defendant with an offense level up to 22 (less 3 points for acceptance of responsibility and criminal history I), which could include offenses such as: involuntary manslaughter involving reckless conduct; aggravated assault involving permanent of life threatening bodily injury; obstructing federal officers using a dangerous weapon and inflicting bodily injury; abusive sexual conduct; stalking or domestic violence involving weapons; fraud of up to $2.49 million; extortion involving express threat of death and other such serious crimes. That Defendant's conduct nowhere approached these types of criminal conduct underscores the seriousness of the Agreed Sentence.

In addition, in agreeing to the Agreed Sentence, the Government obviously concluded that it is sufficient to deter other foreign government agency employees operating in the United States from engaging in similar activity, even assuming the Government's view of the facts

3

alleged. *See* 18 U.S.C. § 3553(a)(2)(B). Indeed, both the U.S. Attorney for the Southern District of New York and the Assistant Attorney General for the National Security Division of the U.S. Department of Justice (who oversees all counter-intelligence cases nationally) praised the result in this case in a press release, lauding Mr. Buryakov's plea as demonstrating that such activities will be identified and prosecuted.[2]

In addition, as shown below, the Agreed Sentence falls well within the sentencing range for other cases involving violations of Sections 951 and 371 that were resolved by plea—and, indeed, is greater than in other cases involving more serious conduct. As such, accepting the Agreed Sentence would avoid creating disparities among defendants who have pled guilty to similar offenses. *See* 18 U.S.C. § 3553(a)(6). Moreover, given that it is assured that Defendant will be deported from the United States upon his release (and will not be readmitted), the Agreed Sentence protects the public from any further activities by the Defendant. *See* 18 U.S.C. § 3553(a)(2)(C).

The nature and circumstances of the offense and the history and characteristics of the Defendant also support the Agreed Sentence. *See* 18 U.S.C. § 3553(a)(1). Mr. Buryakov is 41 years old, and has worked for VEB, a Russian government-owned economic development

---

[2] *See* Department of Justice Press Release dated Mar. 11, 2016, https://www.justice.gov/usao-sdny/pr/evgeny-buryakov-pleads-guilty-manhattan-federal-court-connection-conspiracy-work (last accessed May 11, 2016). Indeed, with respect to Mr. Buryakov, the Agreed Sentence will be even harsher than it would be for a U.S. defendant under the same circumstances. First, given his immigration status, Mr. Buryakov's detention actually will be the Agreed Sentence plus any additional time in INS detention as he is processed for deportation—a process that can take months. Second, Mr. Buryakov will not be eligible to spend the last six months of his sentence in a halfway-house preparing for reintegration into society, such that his entire sentence will be served in federal prison. Third, as a foreigner, Mr. Buryakov will not be eligible for a minimum security assignment, notwithstanding that he has no prior criminal history and has not pled to a crime involving violence or the threat of violence. In assessing how this sentence compares with other similar cases the Court should take this into account, which further supports the Agreed Sentence.

Americas 91200600

institution since 2002, i.e., long before he came to the United States. He has been married for 17 years, has two young children (aged 7 and 10), and has two parents living in Russia.[3] (Draft Presentence Report dated April 21, 2016 ("PSR") ¶¶ 58, 61)[4] Defendant came to the United States in 2010 to work for VEB (*id.* at ¶ 61), and, per his counsel's visa application letters, his stated duties included establishing and maintaining "high-level contacts" with U.S. EXIMBANK in support of a VEB-EXIMBANK agreement to jointly develop project finance transactions (i.e., legal commercial transactions). Significantly, Mr. Buryakov then did not do anything that the Government sought to charge as espionage (including economic crimes or crimes relating to U.S. economic sanctions under the IEEPA, 50 U.S.C. §§ 1707-1707). There also are no victims to whom restitution is owed (*see* 18 U.S.C. § 3553(a)(7)), nor is there any evidence that the Defendant ever posed any threat to the community (*see* 18 U.S.C. § 3553(a)(2)(C)). To the contrary, Mr. Buryakov's work history confirms that he worked in the area of economic development for many years before coming to the United States, and that he has no prior criminal history, no drug or alcohol abuse and no adverse mental condition. (PSR ¶¶ 51-56, 64-69) Furthermore, Defendant has had no disciplinary sanctions in over a year of detention, further demonstrating that he poses no ongoing danger. (PSR ¶ 7)

Accordingly, under 18 U.S.C. § 3553(a), the Agreed Sentence adequately balances "the nature and circumstances of the offense and the history and characteristics of the defendant." Moreover, that sentence otherwise accomplishes "the traditional goals of sentencing" by reflecting the seriousness of the offense, and by promoting respect for the law, including by

---

[3] Letters of support from Defendant's wife, children, and parents, and from his parish priest from when he worked in South Africa, are attached to this memorandum as Exhibits 1-4.

[4] As noted below, the PSR is not yet in final form and is being filed under seal, but these personal facts regarding Mr. Buryakov are not disputed. *See infra* at 11.

5

providing "just punishment." *See Kimbrough*, 128 S. Ct. at 570. Accordingly, the Agreed Sentence should be accepted by the Court.

### 2. The Agreed Sentence Is Higher than in Other Cases Relating To Conspiracy To Violate Section 951 Involving More Serious Conduct.

Defendant has identified from publicly available sentencing data 31 instances in which defendants pled to violating Section 951 and/or a related offense (e.g., conspiracy or aiding and abetting with respect to a Section 951 violation) or were convicted following trial of violating Section 951 and/or a related offense.

With regard to guilty pleas (19 defendants), the sentences imposed range from probation to 84 months. Thus, the Agreed Sentence falls well within the range for Section 951-related offenses resolved by plea[5] and is more than sufficient considering the nature of Defendant's conduct—which involved no transfer of classified information or trade/technological secrets, no attempt at recruiting agents, and no conduct that would put others at risk (e.g., by collecting information on dissidents from other nations, as occurred in a number of cases).

The Agreed Sentence is greater than sentences in a number of Section 951 cases involving more serious conduct, including cases involving the taking of classified data (which of course was not present here):

- In *United States v. Kang*, 1:08-cr-00210 (E.D. Va.), defendant received 18 months (and no fine) after pleading guilty to aiding and abetting a Section 951 violation in providing a Chinese government official with sensitive U.S. government information including national defense information classified as "secret."

- In *United States v. Maionica*, 1:07-cr-20999 (S.D. Fla.), defendants pleading guilty to Section 951 substantive and conspiracy charges relating to assisting Venezuelan officials in hiding movements of cash out of Venezuela received

---

[5] Convictions following trial (12 defendants) generated sentences in a range of 48-60 months for violations of Section 371, and a range of 48-120 months for violations of Section 951. The higher sentences appear to reflect the lack of acceptance of responsibility as well as the generally more serious nature of the conduct in those cases.

6

sentences of 15-34 months (and fines of $25,000 as to U.S. defendants with resources).

- In *United States v. Al-Awadi*, 07-cr-20314 (E.D. Mich.), a defendant who pled guilty to reporting to Iraqi intelligence about Iraqi opposition groups in the United States and Canada was sentenced to 18 months in prison (with no fine).

- In *United States v. Souied*, 1:11-cr-00494 (E.D. Va.), defendant conducted surveillance on dissidents for the Syrian government, and was sentenced to 18 months in prison upon his guilty plea (with no fine).

- In *United States v. Vincent*, 05-cr-00059 (S.D.N.Y.), the defendants bribed UN officials in order to avoid the Iraqi oil embargo. One defendant who pled guilty received 36 months of probation and a fine of $300,000—which directly related to the bribes paid.

Pleas (or convictions following trial) that have resulted in longer sentences have involved considerably more serious conduct than Mr. Buryakov's conduct here:

- In *United States v. Mak*, 8:05-cr-00293 (C.D. Cal.), a defendant pleading guilty to violating Section 951 with respect to the theft of sensitive military technology for China was sentenced to 36 months in prison (and no fine) and another defendant convicted under Section 951 was sentenced to 120 months in prison and a $10,000 fine.

- In *United States v. Campa*, 529 F.3d 980 (11th Cir. 2008), the defendants acted as secret agents of the Cuban intelligence agency for many years and engaged in numerous illegal activities including infiltrating and reporting to the Cuban government on anti-Castro individuals and groups, attempting to penetrate the Miami offices of the U.S. Southern Command, and providing information to the Cuban government which ultimately led to the Cuban air force shooting down civilian aircraft, killing their crews. Convictions in those cases led to sentences of ten years under Section 951 and five years under Section 371, and plea agreements resulted in sentences ranging from 42-60 months (with no fines).[6]

- Similarly, in *United States v. Alvarez*, 506 F. Supp. 2d 1285 (S.D. Fla. 2007), defendants spied for many years on the Cuban community of South Florida, sending information back to Cuba on individuals and groups opposed to the

---

[6] *See United States v. Hernandez*, 98-cr-721 (S.D. Fla.) (as to convicted defendants Campa, G. Hernandez, Medina, Gonzalez and Guerrero, and pleading defendants Alonso, Santos, Silverio-Santos, N. Hernandez and L. Hernandez).

7

Castro government. Pleas in that case for conspiracy and misprision (relating to Section 951) resulted in sentences of 36 and 60 months (and no fines).[7]

- Other cases arising under Section 951 have involved activities designed to undermine U.S. policies as to other nations. For example, in *United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005), defendant was acting as an agent of Saddam Hussein's regime in Iraq, including by publishing articles in a free newspaper (funded by money defendant received from Iraq) that favored the Iraqi regime. When subpoenaed about his activities, defendant then perjured himself. Upon conviction, he was sentenced to 46 months (with no fine).

- In *United States v. Vincent*, 05-cr-00059 (S.D.N.Y.), described above, the convicted defendant, who had received pay directly from the Iraqi government, was sentenced to 37 months and a $15,000 fine.[8]

- Finally, in *United States v. Nicholson*, 3:09-00040 (D. Or.), a case involving the Russian Federation, a CIA officer and the son of a Russian agent both pled guilty to conspiracy to violate and violations of Section 951 regarding alleged espionage. The CIA agent received a 60 month sentence, and the son of the Russian agent received 60 months of supervised release (both with no fine).

Here, Mr. Buryakov has never been charged with any conduct approaching the cases cited above. As such, based on all of the above cases, and the Government's recommendation based on the circumstances of this case, the Agreed Sentence is more than sufficient.

### 3. The Agreed Sentence Is More Than Sufficient Given the Serious Doubts About the Government's More Serious Allegations.

As the Government has agreed, the Agreed Sentence is sufficient even assuming arguendo the Government's most serious factual allegations. A fortiori the Agreed Sentence is

---

[7] *See United States v. Alvarez*, 05-cr-20943 (S.D. Fla.) (as to defendants C. Alvarez and E. Alvarez).

[8] Cases involving attempts to violate U.S. sanctions and/or charged economic or other espionage, generally led to higher sentences than the Agreed Sentence here. For example, in *United States v. Aquino*, 05-cr-719 (D.N.J.), the defendant pled guilty to possessing classified national defense documents and was sentenced to 46 months (and no fine). In *United States v. Mak*, 8:05-cr-00293 (C.D. Cal.), a defendant pleading guilty to conspiring to export defense goods was sentenced to 120 months (with no fine). In both *United States v. Shemami*, 1:07-cr-20160 (E.D. Mich.) and *United States v. Amirnazmi*, 2:08-cr-00429 (E.D. Pa.), the defendants pled guilty to conspiring to export goods in violation of U.S. sanctions against Iraq and Iran, and were sentenced to 46 and 48 months, respectively. Here, no such charges were asserted against Mr. Buryakov.

8

sufficient to the extent there are doubts about those allegations—and given the pleading history of this case, as well as the discovery, there are indeed doubts about the Government's most serious allegations against Mr. Buryakov.

The Original Indictment and Complaint in this case presented Mr. Buryakov as an alleged agent of the Russian intelligence service (the SVR) who engaged in spying over an extended period of time in the United States. Specifically, the Complaint [Dkt. 1] contained extensive allegations of espionage-related activities by Defendant for the SVR:

- The Government alleged that Defendant is an SVR agent working under non-official cover and collecting intelligence for the SVR in the United States (Complaint ¶¶ 2, 10), and in particular that Defendant works for the "ER" Directorate of the SVR which focuses on economic intelligence (id. ¶ 13).

- The Government alleged that Defendant and co-defendant Igor Sporyshev used "clandestine meetings and communications," including coded messages (id. ¶ 15), that they "engag[ed] in over four dozen brief meetings, several of which involved [Defendant] passing a bag, magazine, or slip of paper to Sporyshev" (id. ¶ 18), and that "[t]hese meetings were nearly always preceded by a short telephone call between [Defendant and Sporyshev], during which one of the men typically told the other that he had an item to give him. Typically, during these telephone calls . . . the item in question was referred to as some non-specific 'ticket,' 'book,' 'list,' or other ordinary item . . . ." (id. ¶ 19). The agent further swore that other than one occasion where they discussed going to a movie – Defendant and Sporyshev "never [were] observed attending, or discussing in any detail, events that would typically require tickets" (id. ¶ 20). The agent also swore "that in these conversations and meetings, [Defendant] and [Sporyshev] "used coded language to signal that they needed to meet, and then met to exchange intelligence information." (id. ¶ 21).

- The Original Indictment [Dkt. 10] used the term "SVR" fifteen times and likewise referred to the alleged use of tradecraft.

The Superseding Indictment [Dkt. 118] then removed <u>any</u> references to the SVR, Defendant's status as an SVR agent, or Defendant's use of tradecraft of any kind (while keeping the same two counts originally charged). Defendant believes that these changes were in response to the evidence and discovery.

9

Specifically, the Government came to realize that the allegations of espionage tradecraft were false: the conversations recorded by the Government were indeed about tickets and books, and Defendant and Sporyshev actually exchanged those items (Defendant was prepared to produce copies of the ticket stubs, receipts and the like to prove this, which materials would have tied into email and text messages which the Government had collected, but ignored). The Government also knew that its surveillance logs refer to frequent counter-surveillance efforts by the two absent defendants—Messrs. Sporyshev and Podobnyy—but contained no references to such counter-surveillance efforts by Defendant. For example, over a two-year period, there is no evidence that Messrs. Sporyshev and Podobnyy ever spoke by cell phone or texted each other—an obvious counter-surveillance measure by which Messrs. Sporyshev and Podobnyy limited their contact to what they thought was the so-called "secret room" (i.e., one without listening devices) at the alleged SVR offices at the Russian Mission in New York. In marked contrast, Sporyshev and Mr. Buryakov spoke or texted hundreds of times—undercutting the idea that Defendant was an SVR agent with whom Sporyshev needed to use counter-surveillance efforts. Indeed, Mr. Buryakov and Sporyshev repeatedly met in the open and did not conceal their meetings. Finally, at the change of plea, Mr. Buryakov did not admit any conduct relating to the SVR and the Government did not refer to any such conduct.

The single overt act which Mr. Buryakov admitted, and the Government accepted as his criminal conduct, occurred on May 21, 2013. At that time, Sporyshev called Mr. Buryakov and asked him for help in devising questions for the Russian government news agency (ITAR-TASS) regarding the New York Stock Exchange ("NYSE"). In asking for assistance, Sporyshev said that he called Mr. Buryakov because he was "a banker." About fifteen minutes later, Mr. Buryakov called Sporyshev and suggested three questions regarding the NYSE, all of which

10

related to high-frequency trading, then a source of significant media attention and a widely-discussed issue in the market. At his change of plea hearing, Mr. Buryakov admitted to doing this act at Sporyshev's direction, and without having provided notification as an agent of the Russian Federation to the Attorney General.

Given that the Government has agreed that the Agreed Sentence is appropriate even for the far more serious conduct it has alleged, to the extent there is any doubt about the Government's more serious allegations, and given the nature of the one overt act admitted, it is clear that the Agreed Sentence is more than sufficient under 18 U.S.C. § 3553.

4. **Redacted**

Defendant received the Probation Office's draft Presentence Report (the PSR) on April 26, 2016, and timely submitted his objections to the draft PSR to the Probation Office on May 10, 2016. The draft PSR and Defendant's objections thereto are attached as Exhibits B and C, respectively, to the Hershman Declaration. As this Sentencing Memorandum is due to the Court prior to the issuance of the final PSR, Defendant is responding to the PSR as it exists today, and has filed Exhibits B and C under seal.

**Redacted**

Redacted

Americas 91200600

Redacted

## II. NO FINE SHOULD BE IMPOSED

The Plea Agreement provides that, "after determining the defendant's ability to pay, the Court may impose a fine" in the range of $10,000 to $100,000. Plea Agreement at 2. Based on the factors enumerated in 18 U.S.C. § 3572(a), no fine should be imposed by this Court.

*First*, Defendant has no income, earning capacity or financial resources in the United States, and any fine therefore would impose a substantial hardship on Defendant. *See* 18 U.S.C. § 3572(a)(1)-(2).[9] As shown by the Financial Affidavits submitted by Defendant to the federal Probation Office, Defendant has no money in the United States. Defendant is a Russian citizen who was present in the United States under a visa issued with specific regard to his work at VEB, a Russian government-owned economic development institution. Defendant's employment, however, ended with his arrest in January 2015, and "[i]mmigration data reflects Buryakov is not legally in the United States and is currently under removal proceedings." (PSR ¶¶ 63, 73) Moreover, based on the guilty plea in this case, Defendant's visa is now void, and he will be deported back to Russia upon his release from prison, and will not be granted a visa to work (or visit) the United States again.

Furthermore, even in Russia, Defendant's means are limited. The Financial Affidavits show that Defendant owns a 25% interest in the apartment where his wife and two children now live (valued at approximately $50,000), and after his arrest, the contents of his U.S. and Russian bank accounts (totaling approximately $20,000) and the value of his car (approximately $17,000)

---

[9] As the Court is aware, Defendant's legal fees were paid by his employer. If not he would have had to use court-appointed counsel.

14

were used by his wife (who earns very little at her job) to support Defendant's family in Russia.[10] Defendant has of course been unable to work or earn an income in the 16 months since his arrest.

As such, Defendant has no capacity now or in the future to pay any fine that might be imposed and, under these circumstances, the Court should not impose any fine. *See United States v. Marquez*, 941 F.2d 60, 65 (2d Cir. 1991); *see also* U.S.S.G. § 5E1.2(a), (d)-(e) (sentencing guidelines excepting fines where defendant establishes that a fine cannot be paid now and in the future); *Gaind v. United States*, 871 F. Supp. 186, 188 (S.D.N.Y. 1994) (imposing fine based on finding that defendant had significant future earning potential).

*Second*, the offense at issue created no ill-gotten gains for Defendant, caused no injury to anyone in the United States, and no financial gain or motive was alleged with respect to the crime charged. As such, as the Government acknowledged at the March 11 change of plea proceeding (Mar. 11, 2016 Hr'g Tr., 15), there is no basis for restitution nor was any pecuniary loss inflicted upon the public as a result of the offense charged. Moreover, in most cases involving guilty pleas for conspiracy to violate Section 951 no fine has been assessed—and the rare cases where a fine was assessed involved defendants with proven resources and who received money from their illegal activities. This case presents none of those circumstances. Accordingly, there is no basis for using a fine to punish the Defendant or compensate some demonstrable loss. *See* U.S.S.G. § 5E1.1(a); *Gaind*, 871 F. Supp. at 188 (imposing a fine where financial gain was a motive for the crime and environmental damages caused by defendant did impose a substantial cost on the public). Finally, Defendant also has no present or future means

---

[10] As noted above, this Sentencing Memorandum is due to the Court prior to the issuance of the final PSR. Accordingly, for the convenience of the Court, the correspondence with the Probation Office as to Defendant's Financial Affidavits is filed under seal and attached as Exhibit D to the Hershman Decl.

15

to support a fine relating to any costs of imprisonment. Under these circumstances, no fine should be imposed.

## **CONCLUSION**

For the foregoing reasons, the Court should not impose any sentence greater than the Agreed Sentence and should not impose any fine.

Dated:      May 11, 2016
               New York, New York

Respectfully submitted,

WHITE & CASE LLP

*/s/ Scott E. Hershman*
Scott E. Hershman
Daniel Levin
Owen C. Pell
Gregory G. Little
Kimberly A. Haviv
1155 Avenue of the Americas
New York, New York 10036
Tel.: (212) 819-8200
Fax: (212) 354-8113

*Attorneys for Evgeny Buryakov*