

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

May 18, 2016

By ECF and Hand Delivery
Honorable Richard M. Berman
United States District Judge
Southern District Of New York
500 Pearl Street
New York, NY 10007

      Re:    United States v. Evgeny Buryakov, a/k/a "Zhenya,"
               S1 15 Cr. 73 (RMB)

Dear Judge Berman:

      The Government submits this letter in advance of the sentencing of the defendant, which is scheduled for May 25, 2016, and in response to the defendant's sentencing submission.

## I. A 30-Month Sentence is Appropriate

      As an initial matter, the Government emphasizes that the parties agreed in the plea agreement that, under the Guidelines and 18 U.S.C. § 3553(a), a 30-month term of imprisonment is the appropriate sentence for the defendant. The parties also "agree[d] not to seek a sentence other than the Stipulated Sentence [of 30 months' imprisonment], or suggest in any way that the Probation Office or the Court consider a sentence other than the Stipulated Sentence." The Government therefore respectfully requests that the Court impose the sentence agreed upon by the parties.

      To be sure, the 30-month sentence that the parties stipulated to is appropriate here. Such a sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing outlined in 18 U.S.C. § 3553(a) and is in line with the sentences in other prosecutions charging substantive violations of 18 U.S.C. § 951 and/or conspiracies to violate that statute. Accordingly, the Government agrees with the defendant that this sentence "should be accepted by the Court." Defendant Evgeny Buryakov's Sentencing Memorandum, dated May 11, 2016 ("Def. Mem.") at 6.

In light of the agreed-upon sentence, the Government had expected to write little more than the above in this sentencing submission. However, the defendant, while asking the Court to accept the agreed-upon sentence, at the same time has devoted a significant portion of his sentencing submission to a claim that the agreed-upon sentence is "*more than* sufficient under 18 U.S.C. § 3553." Def. Mem. at 11 (emphasis added); *see also id.* at 8-11. The defendant rests this claim on his argument that there are doubts about the Government's more serious factual allegations, *id.* at 8, an argument he bases on "the pleading history of this case" and the discovery, *id.* at 9. Similarly, in the next section of his submission, the defendant both states that the agreed-upon sentence "should be respected," *id.* at 13, and assures the Court that "under Federal Rule 32(i)(3)(B), the Court need not resolve the disputed facts in the PSR" because the Court has his plea and allocution, Def. Mem. at 11, but nonetheless urges the Court not to accept the facts in the PSR, which, he says, "makes no reference to the Superseding Indictment" or to what he claims were "significant changes in the Government's case that occurred as the evidence was revealed and analyzed," *id.* These arguments are meritless and, in part, premised on factual misrepresentations. Indeed, these arguments, through which the defendant attempts to minimize the seriousness of his offense conduct and during which he resorts to false statements in an attempt to do so, while at the same time devoting not a word in his submission to any expression of remorse or contrition for his crime, serve only to show that the agreed-upon sentence is fully warranted.

## II. The Defendant Engaged in Serious Misconduct by Acting as an Agent of Russian Intelligence

The defendant claims that while the initial indictment and complaint "presented [him] as an alleged agent of the Russian intelligence service (the SVR) who engaged in spying over an extended period of time in the United States," Def. Mem. at 9, that portrayal is wrong, purportedly because of the absence of any reference to the SVR in the superseding indictment, because "the Government came to realize that the allegations of espionage tradecraft were false," and because "[t]he single overt act which [the defendant] admitted, and the Government accepted as his criminal conduct, occurred on May 21, 2013," *id.* at 9-10.

The Government will not recite here all of the evidence that it would have put before a jury and the Court during a lengthy trial to show that the defendant was an agent of the SVR, who worked for Russia's foreign intelligence agency over an extended period of time in the United States. A few examples, which are explained in greater detail in the March 29, 2016 letter from the Government to the Probation Office attached as Exhibit A, will suffice.

As an initial matter, the defendant admitted to conspiring with co-defendant Igor Sporyshev to act as an agent of the Russian Federation in the United States. There can be no serious question that Sporyshev was an SVR agent. Sporyshev was repeatedly recorded inside the SVR's New York office discussing, among other things, his employment in "our SVR," his "cover" job in the United States, the arrest of ten SVR agents in 2010, and his recruitment of sources in the United States. *See* Complaint ¶¶ 22-34 (Dkt. No. 1). Even the defendant acknowledges that paragraphs of the PSR that provide information about the SVR and its

operations "may have been relevant to" Sporyshev and the defendant's other charged co-conspirator, Victor Podobnyy. Declaration of Scott Hershman in Support of Defendant's Sentencing Memorandum, dated May 11, 2016, Ex. C at 2.

Repeatedly, and over a significant period of time, the defendant responded to taskings from Sporyshev. In addition to providing questions for the New York Stock Exchange that Sporyshev wanted in May 2013, the defendant did research on the effect of economic sanctions on Russia for Sporyshev in March 2014, and, during May 2013, did research for Sporyshev on critical infrastructure in New York. *See* Ex. A at ¶¶ 36-38, 43-46. The defendant's research included Internet searches for "NYC Homeland Security"; "New York City integrated security system for critical infrastructure"; "New York City critical infrastructure"; and "NYC office of emergency management," subjects that plainly would be of interest to the SVR. *See id.* ¶¶ 37-38.

The defendant also made at least one proposal to Sporyshev with respect to actions that the SVR should take. Having gathered information, both in person and through the Internet, about the plans of the Canadian company Bombardier to build airplanes in Russia, the defendant proposed that the SVR use its Active Measures Directorate to overcome the resistance of Canadian unions to placing Bombardier manufacturing facilities in Russia. *See id.* ¶¶ 30-35.

The defendant also took direction from Sporyshev about with whom he should meet in the United States while gathering information of value to Russia. When the defendant was gathering Treasury Department information during the second half of 2014 from a Federal Bureau of Investigation ("FBI") undercover employee, in particular documents marked "Internal Treasury Use Only" and "FOUO" (For Official Use Only), he consulted with Sporyshev, who warned him that dealing with the undercover might be a "trap" but authorized him to meet the undercover so he could make his own assessment. *See id.* ¶¶ 47-51.

Moreover, the defendant's co-conspirator Podobnyy expressly described the defendant as an employee of the SVR. *See id*. ¶¶ 27-29. Podobnyy did so while talking to Sporyshev in the SVR's New York office, where both Podobnyy and Sporyshev thought they could speak in confidence. And the defendant's research into topics such as the budgets of U.S. government agencies (including the FBI, the Department of Defense, and the Department of Homeland Security), a New York City Police Department counterterrorism program, classified information, and "human intelligence enabling" is entirely consistent with his role as someone who was working for the SVR. *See id*. ¶¶ 52-54.

So too is the defendant's conduct more generally, which, despite his claim to the contrary, *see* Def. Mem. at 10, did reflect espionage tradecraft. Again, the Government will not recite here all the evidence it would have put before a jury and the Court at trial. A few examples will suffice.

The defendant typically met with Sporyshev in person in places where they felt less vulnerable to electronic surveillance, such as in their vehicles, in their residences, and, when in

Manhattan, outdoors. *See* Ex. A ¶ 19. And they almost never discussed their SVR work over the telephone or via email and almost never discussed substantive issues other than in person. *See id.*

For example, a January 29, 2013 recording of Sporyshev and Podobnyy obtained from the SVR's New York office revealed that they received a telegram from Moscow Center requiring them to gather information and write a response. At the end of Sporyshev and Podobnyy's conversation about this assignment, Sporyshev told Podobnyy that Podobnyy and the defendant ("Zhenya") would write the response and noted that he (Sporyshev) needed to meet the defendant "anyway to take yet another list." The same day, Sporyshev called the defendant to say that he was taking a walk. The defendant responded by saying he was still at work, and Sporyshev and the defendant then engaged in an exchange that makes it clear that they both viewed it as operationally preferable for Sporyshev to walk for ten or fifteen minutes on a winter day to meet Buryakov in person, supposedly to give Buryakov a list of products to be purchased, rather than simply describing the "products" over the phone or sending the "list" to Buryakov by email or fax. *See id.* ¶ 19(a). Similarly, on October 10, 2013, Sporyshev told the defendant on the phone that he had a question for him, but then invited himself to the defendant's house rather than discussing the matter on the phone ("I have a question. I will stop by in about half an hour."). *See id.* ¶ 19(b).

The investigation also revealed that the defendant, consistent with his intelligence-gathering role, took steps to hide his identity and make his activity in the United States more difficult to trace when communicating with people other than Sporyshev. Specifically, in February 2012, the defendant opened an email account using the pseudonym "John Johnson." The defendant used that email account for several months to communicate with—and obtain information about economic and political issues in Russia and other parts of the world from—an employee of a global financial services firm in New York City, until that employee left the United States. *See id.* ¶ 20.

The defendant's argument that the Court should conclude that the Government was not going to prove the defendant's use of espionage tradecraft because the case agent who swore to the allegations in the Complaint was allegedly "deleted from the case," Def. Mem. at 12, is both wrong and based on false statements. The defendant reaches this conclusion based on his assertion that "the Government announced in its pre-trial filings that the case agent would not be appearing at trial." Def. Mem. at 12. There was no such announcement. To the contrary, the Government intended throughout to call the case agent as a fact witness at trial, and never suggested otherwise.[1] The defendant rests his claim not on a citation to anything the Government wrote or said, but on a citation to his own argument in a prior filing. *Id.* (citing

---

[1] While proposed *voir dire* will sometimes list all fact witnesses, in this case the proposed *voir dire* listed only five individuals who "may be mentioned during the trial, or who may be witnesses in this case" and expressly noted that "[t]he parties' witness lists are not finalized, and the parties anticipate supplementing this list prior to trial." Joint Proposed Examination of Prospective Jurors, dated March 1, 2016, at 12 & n.1.

May 18, 2016

defendant's application for pretrial release). In that prior filing the defendant claimed that the Government abandoned the case agent because the Government identified for trial "two new 'experts,'" suggesting that the case agent had been identified as an expert and replaced. *See* Defendant Evgeny Buryakov's Application For Pretrial Release, dated March 7, 2016, at 5-7. That, too, is a false claim. The Government never identified the case agent as an expert witness, or replaced him with a "new" expert. Rather, consistent with the Second Circuit's advice, the Government identified as experts two other individuals who were not fact witnesses. *See United States* v. *Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003) ("[W]hen a fact witness or a case agent also functions as an expert for the government, the government confers upon him '[t]he aura of special reliability and trustworthiness surrounding expert testimony, which ought to caution its use.'" (quoting *United States* v. *Young*, 745 F.2d 733, 766 (2d Cir. 1984) (Newman, J., concurring))).

The defendant's speculation that the differences between the initial and superseding indictments reflect the Government's doubt about allegations in prior charging documents about the SVR, the defendant's status as an agent of the SVR and his use of tradecraft is similarly baseless. *See* Def. Mem. at 9. As the Government explained when the defendant made similar claims during the arraignment on the superseding indictment: "The filing of an indictment like the S1 in this case that simply tracks the statutory language as the parties prepare for trial is a frequent and common practice in this district. Our position is that defense counsel has read far too much into the differences between the underlying indictment and this document. The complaint in this case still stands. Our theory of the case as it related to the relevance of the S[V]R has [n]ot changed." Transcript, Mar. 3, 2016 Conf., at 7.

In sum, the defendant's arguments about the seriousness of his conduct are meritless. His decision to make those meritless arguments, while at the same time expressing no remorse at all for the crime to which he has pled guilty, sheds light on "the characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The agreed-upon sentence is fully warranted and should be imposed.

### III.  A Fine Should Be Imposed

The Sentencing Guidelines provide that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). While the defendant has claimed that he "has no capacity now or in the future to pay any fine that might be imposed," Def. Mem. at 15, that claim, especially with respect to the future, is hard to credit. The defendant is a college graduate who worked as a banker until his arrest, earning a monthly salary of $17,000, or $204,000 per year. PSR ¶¶ 71, 73. If the agreed-upon sentence is imposed, he will be 42 years old when he is released from prison, presumably with decades of earning potential ahead of him. The defendant has not established that he is "not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). Accordingly, a fine should be imposed.

## IV. An Order of Judicial Removal is Appropriate

The Government also expects, based on conversations with defense counsel, that the parties will jointly request at sentencing that the Court enter a Judicial Order of Removal against the defendant, pursuant to Title 8, United States Code, Section 1228(c), to facilitate the removal of the defendant from the United States to the Russian Federation upon completion of the incarcerative portion of his sentence. Accordingly, attached as Exhibits B through F, respectively, are: (i) a Notice of Intent to Request Judicial Removal; (ii) Factual Allegations in Support of Judicial Removal; (iii) the Concurrence of United States Immigration and Customs Enforcement; (iv) an unsigned copy of the Defendant's Plea Statement in Support of Judicial Removal, which the Government anticipates that the defendant will sign prior to sentencing; and (v) a proposed Order of Judicial Removal.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Emil J. Bove III
Brendan F. Quigley
Stephen J. Ritchin
Assistant United States Attorneys
(212) 637-2444/2190/2503

Enclosures

Cc: Defense Counsel
(Via ECF)